IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
(Harrisonburg Division)

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| JONATHAN ALGER, President of | ) | Case No. 5:15-CV-00035 |
| James Madison University, in his | ) | |
| official capacity | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MARK J. WARNER, Sr. Vice | ) | |
| President of Student Affairs and | ) | |
| University Planning, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS**

Official-Capacity Defendants Jonathan R. Alger ("Alger") and Mark J. Warner ("Warner"),[1] by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submit the following memorandum in support of Defendants' Motion to Dismiss the Complaint filed by John Doe.

**I.      INTRODUCTION**

The plaintiff in this action was suspended from James Madison University ("JMU") for five and half years after an appellate board found him "responsible" of sexual misconduct as

---

[1] "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotations omitted). A suit against an individual in his official capacity "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166. In this case, the entity in interest is James Madison University.

defined by JMU's Student Standards of Conduct.[2] He seeks a declaratory judgment stating that the defendants violated his due process rights under the Fourteenth Amendment to the United States Constitution. He also asks this Court to find that JMU violated his due process rights in suspending him, and requests that this Court issue an injunction requiring the named defendants to reinstate the plaintiff as a student at JMU.

The plaintiff's claims should be dismissed for several reasons. The plaintiff's request for declaratory judgment against the defendants should be dismissed because the plaintiff has not pled facts showing that either individual defendant played any substantial role in the plaintiff's suspension. The plaintiff is suing the defendants in their official capacity, utilizing the exception created by *Ex Parte Young*, 209 U.S. 123 (1904). This exception does not extend to declaratory judgments, and the Commonwealth of Virginia and state officials are immune from such declaratory judgments.

The plaintiff likewise has no basis for his claims that he was deprived of a constitutionally protected property or liberty interest. His conclusory allegations that he was deprived of property and liberty interests without more do not satisfy federal pleading standards. Moreover, those claims directly conflict with the overwhelming weight of authority in this circuit.

Even assuming that the plaintiff has a constitutionally protected right, he was afforded adequate due process. He was given notice of the charges against him and an opportunity to respond at a hearing. Indeed, the plaintiff had an opportunity to see all the evidence used against him, and he had a chance to respond. He complains of a single email that he did not receive until December 22, 2014 that was reviewed at the January 8, 2015 hearing. He never raised any

---

[2] The length of the suspension was designed to give Roe an opportunity to graduate prior to the plaintiff's return to JMU.

objection, however, until after the hearing went adversely to him. In short, he is dissatisfied with the outcome of the due process he received and only now complains about that process.

In addition to injunctive relief, the plaintiff is seeking a declaration that his due process rights were violated. The Declaratory Judgment Act, however, is not a vehicle for judicial pronouncements about prior acts; it is designed to guide future conduct. In this case, the alleged harm has been suffered, and the plaintiff is requesting injunctive relief. This Court should not oblige the plaintiff's request to pass judgment on JMU's prior acts when no actual declaratory relief is sought.

Finally, the plaintiff's Complaint is replete with specific factual assertions that demonstrate his clear desire to re-litigate the disciplinary process he underwent at JMU. As this Court is aware, the only questions before the Court are whether he was deprived of a constitutionally protected interest, and if so, did the process that was followed pass constitutional muster. This Court is not an appellate tribunal for JMU's student disciplinary decisions.

## II.    FACTUAL BACKGROUND

### A.    The process followed by JMU in adjudicating the complaint against the plaintiff.

The plaintiff was a freshman at James Madison University ("JMU") in the fall semester of 2014. Compl. ¶ 19. He was assigned to live in the same dormitory as Jane Roe. *Id.* ¶ 20. On the evening of August 22, 2014 and into the early morning of the following day, the plaintiff and Roe were alone in the plaintiff's dormitory room. *Id.* ¶ 22. The plaintiff and Roe had sexual intercourse at that time. *Id.* ¶ 22.

Two months later, on October 24, 2014, Roe made a complaint of sexual misconduct against the plaintiff. *Id.* ¶ 33. Roe complained to a JMU employee that the plaintiff had "forced

3

himself upon" Roe despite her repeatedly stating "No." *See* Ex. 1.[3] The plaintiff was subsequently notified that he was the subject of a charge of sexual misconduct on November 6, 2014. Compl. ¶ 27; *see also* Nov. 6, 2013 email (attached as Ex. 2).[4] That email specifically mentions Roe's name, and notified the plaintiff to have no contact with her. *Id.* ¶ 29; *see also* Ex. 2.

On November 13, 2014, the plaintiff met with the Assistant Director of the Office of Student Accountability and Restorative Practice ("OSARP"). *Id.* ¶ 31. At that meeting, the plaintiff was afforded an opportunity to review the documents supporting the charge against him. *Id.* ¶ 32. The plaintiff described the two documents contained in that file in his Complaint. *Id.* ¶ 3. The documents in the file included an October 24, 2014 report and an October 29, 2014 report, both of which contain typed statements of Roe's allegations of sexual misconduct against the plaintiff.

A hearing on the charge of sexual misconduct was scheduled December 5, 2014. *Id.* ¶ 34. The day before the hearing, the plaintiff was notified of the witnesses who were to be called, and he returned to the OSARP office to review the documents in the file. *Id.* ¶¶ 35-36. The scheduled hearing took place on December 5, 2014. *Id.* ¶ 37. Both the plaintiff and Roe presented testimony and witnesses at the hearing. *Id.* ¶¶ 39-43. The panel deliberated and ultimately determined that the plaintiff was "not responsible" of sexual misconduct. *Id.* ¶ 44. Roe timely appealed that decision on December 10, 2014.[5] *Id.* ¶ 47.

---

[3] "[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc*., 190 F.3d 609, 618 (4th Cir. 1999)). This document was specifically referenced in the Complaint as a document that the plaintiff reviewed on November 13, 2014. Compl. ¶¶ 31-33.
[4] Exhibit 2 is also referenced and discussed in the Complaint. Compl. ¶¶ 27-29.
[5] According to the JMU "Sexual Misconduct Accountability Process" either party has three business days to appeal a decision of the panel. December 5th was a Friday, and Roe's appeal was filed the subsequent Wednesday. A copy

4

On December 12, 2014, the plaintiff was notified that a hearing on Roe's appeal was scheduled for December 18, 2014. *Id.* ¶ 54. The hearing was subsequently rescheduled for January 8, 2015, and his deadline for providing evidence was December 22, 2014. During this period, Roe submitted various statements of witnesses regarding the August 22-23, 2014 encounter. *Id.* ¶¶ 57-62. The plaintiff alleges that he was not provided with a December 17, 2014 statement written by the plaintiff until December 22, 2014. *Id.* ¶ 62. The plaintiff has not alleged, nor could he allege, that he was not provided, prior to December 22nd, the other evidence referenced in paragraphs 57 through 62 of the Complaint. Likewise, the plaintiff has not alleged that he raised any objections to the appeal panel considering Roe's December 17, 2014 statement until now.

The appeal board met on January 8, 2015. *Id.* ¶ 79. The appeal board listened to the recordings of the December 2014 hearing and reviewed the various documents submitted by the parties. *Id*. ¶ 78. The appeal board reversed the decision of the hearing board, and found the plaintiff responsible of sexual misconduct. *Id*. ¶ 79. The Senior Vice President for Student Affairs and University Planning, Mark Warner, affirmed that decision the following day. *Id.* ¶ 82. The plaintiff's punishment, as decided by the appeal board, was a five and half-year suspension from JMU. *Id*. ¶ 79.

Mark Warner and the head of OSARP, Josh Bacon, also met with the plaintiff and his parents following the decision. *Id.* ¶ 87. Despite the plaintiff's request, Warner and Bacon did not agree to overturn the appeal board's decision. *Id.* ¶ 88.

---

of the "Sexual Misconduct Accountability Process" is attached as Exhibit 3. This is a public document that is available online at https://www.jmu.edu/osarp/handbook/OSARP/sexual-misconduct-accountability-process.shtml.

## B. JMU's Sexual Misconduct Accountability Process

JMU's Sexual Misconduct Accountability Process (Ex. 3) governs the process used following a charge of sexual misconduct. All universities receiving federal funds are required to maintain grievance procedures that implement Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq*. *See* 34 C.F.R. § 106.8(b). The required contours of these grievance procedures are detailed in an April 4, 2011, letter issued to universities throughout the country by Russlynn Ali, then Assistant Secretary for Civil Rights for the U.S. Department of Education. *See* Ex. 4 (the "Dear Colleague letter").

In his Complaint, the plaintiff takes issue with JMU policies that conform to the Dear Colleague letter. In paragraph 38 of the Complaint, the plaintiff complains that he was held responsible "using only a 'preponderance of the evidence' standard." That standard is specifically set forth in JMU's Sexual Misconduct Accountability Process and is specifically required by the Dear Colleague letter as the standard for adjudicating claims under Title IX. Ex. 4 at 9.

The plaintiff also complains that the appeal process allowed for the appeal board to overturn the decision of the hearing board. Compl. ¶ 72. JMU's written policies allow for an appeal. *See* Ex. 3. Likewise, the Dear Colleague Letter recommends that the parties be allowed to appeal. Ex. 4 at 12. The Dear Colleague letter also requires that any appeal process must allow for both the accuser and the accused to appeal the findings of the initial decision. *Id.*

## III. STANDARDS UNDER RULE 12(b)(6)

### A. Standard of review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)

(6). "The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint." *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 783 (E.D. Va. 2003). Considering the complaint and its allegations in the light most favorable to the non-moving party, a court must grant a motion to dismiss if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In light of the United States Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the plaintiff's Complaint fails to set forth any facially plausible claims against the defendants. Expanding upon its decision in *Twombly,* 550 U.S. at 570, the Court in *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Not only are legal conclusions not to be accepted as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (*quoting Twombly*, 550 U.S. at 555). This is of particular importance in this case in which many of the allegations are simply recitations of the elements of the cause of action with no actual facts to support those elements. "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

### B. Standard for considering other documents

"Generally, for purposes of evaluating a motion to dismiss under Rule 12(b)(6), the court is limited to a review of the allegations in a complaint." *Robinson v. Ladd Furniture, Inc.*, No. 92-2286, 1993 U.S. App. LEXIS 14252, at *8 (4th Cir. June 14, 1993) (citation omitted).

7

Nevertheless, the Court is permitted to take judicial notice of pleadings filed in the public record. *Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986). Furthermore, non-judicial records outside the complaint may also be considered under Rule 12(b)(6). For example, "the complaint [may also be interpreted to include [] any document which is attached to it as an exhibit or incorporated into it by reference." *Robinson,* 1993 U.S. App. LEXIS 14252 at *8-9 (citation omitted). In that regard, "when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint . . . [and] not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims." *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995); *see also Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006); *Brooks v. Arthur,* 611 F. Supp. 2d 592, 597 (W.D. Va. 2009).

## IV.    ARGUMENT

The Fourteenth Amendment protects against state action that involves a deprivation of "life, liberty, or property, without due process of law . . . [or a denial of] equal protection of the laws." U.S. Const. Amend. XIV, § 1. "[T]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Mfr's Mut'l Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). The plaintiff must demonstrate the deprivation of a protected interest. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428 (1982). If a plaintiff was deprived of a protected interest, the court must consider whether he received the process he was due.[6]

The plaintiff alleges that he was deprived of his property interest in his continued enrollment at JMU, and his liberty interest in his reputation. Compl. ¶¶ 91-92. These conclusory

---

[6] Plaintiff does not allege a substantive due process claim, nor could he. *See Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 720 (4th Cir. 1991) (to establish a substantive due process violation the plaintiff must prove conduct that is so arbitrary and capricious it shocks the conscience.)

allegations, which stand contrary to existing Fourth Circuit precedent, cannot support a section 1983 claim. Moreover, and even assuming that the plaintiff had a protected interest, the process that led to his suspension was sufficient to satisfy the Fourteenth Amendment.

### A. **The plaintiff was not deprived of any cognizable property interest.**

In support of his due process claim, the plaintiff has alleged that he was deprived of a constitutionally protected property interest. "[P]roperty interests are not defined by the Constitution, but stem rather from an independent source such as state law." *Nigro v. Va. Commonwealth Univ. Med. College of Va.*, No. 5:09-CV-00064, 2010 U.S. Dist. LEXIS 56229, *13 (W.D. Va. June 4, 2010) (*citing Board of Regents v. Roth.*, 408 U.S. 564, 577 (1972)). The plaintiff has "failed to allege in his complaint . . . that a state created property interest in continued enrollment at a public education institution exists in Virginia." *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 336 (E.D. Va. 2005). In fact, the plaintiff has not set forth any facts to support his allegation that he had a protected property interest in his "continued education at JMU." Compl. ¶ 91.

In addition to providing no facts to support his allegation of a property interest, the overwhelming weight of authority in Virginia indicates that a party has no property interest in continued enrollment in a public university. While the Supreme Court has not ruled directly on the issue of whether a property interest exists in continuing education, *Abbas v. Woleben*, No. 3:13-CV-147, 2013 U.S. Dist. LEXIS 134446, *19-20 (E.D. Va. Sept. 18, 2013), the Western District of Virginia has conclusively ruled on this issue, finding that a property interest does not exist in continuing enrollment. *See Nigro*, 2010 U.S. Dist. LEXIS 56229, at *15 (finding that the "plaintiff has not pointed to any authority affirmatively establishing that Virginia college students possess a property interest in continuing enrollment."). The Eastern district has

9

followed suit. *See Abbas*, 2013 U.S. Dist. LEXIS 134446, *19-20.[7] The Fourth Circuit has not provided a written opinion on the issue, but affirmed a published district court decision finding that "neither party could cite any Virginia statute or case law that created such a property right." *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 336 (E.D. Va. 2005), *aff'd,* 193 Fed. Appx. 248 (4th Cir. 2006). To date, no court in Virginia has found any protected property interest in continued enrollment in a public university.

The plaintiff is asking this Court to create new law, without pointing to any supporting state law or other authority creating a property interest. In offering only a conclusory allegation that he possessed a property interest, the plaintiff has failed to plausibly "show" he is entitled to relief. *Iqbal*, 556 U.S. at 679. He has provided no basis, legally or factually, for this Court to find that he has a property interest in his continuing education at JMU, and his claim should be dismissed.

### B.     The plaintiff was not deprived of a liberty interest.

The plaintiff also claims that JMU deprived him of his liberty interest in his "good name, reputation, and integrity." Compl. ¶ 92. Again, the plaintiff makes this allegation without factual or legal support.

The Fourth Circuit "has plainly and repeatedly recognized that an injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest." *Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 628 (4th Cir. 2002) (*citing Siegert v. Gilley*, 500 U.S. 226, 233 (1991)). "An individual's liberty interest in his reputation is only sufficient 'to

---

[7] *See also Newby v. Bon Secours St. Francis Family Med. Residency Program*, No. 3:14-CV-459, 2014 U.S. Dist. LEXIS 153970 (E.D. Va. Sept. 22, 2014) (holding that continued placement in a graduate program does not constitute a recognizable property interest under the Fourteenth Amendment); *Nofsinger v. Va. Commonwealth Univ.*, No. 3:12-CV-236, 2012 U.S. Dist. LEXIS 97857 (E.D. Va. July 13, 2012) (holding that pleadings fail to identify a protected property interest and conclusory allegations that plaintiff "had a property interest in continued enrollment" was insufficient); *McCoy v. E. Va. Med. Sch.*, No. 2:11-CV-494, 2012 U.S. Dist. LEXIS 25777 (E.D. Va. Feb. 28, 2012) (noting that "those cases that have actually reached the issue have held that no such property interest exists").

invoke the procedural protection of the Due Process Clause' if combined with 'some more tangible interest[], such as employment.'" *Nigro*, 2010 U.S. Dist. LEXIS 56229, at *19-20 (*citing Paul v. Davis*, 424 U.S. 693, 701 (1976)).

The plaintiff provides no factual distinction in this case to support a departure from *Tigrett's* controlling precedent. Likewise, the plaintiff has not pled any other "tangible interest" that would create a liberty interest. In addition, the defendants are not actively opposing the plaintiff's Motion to Proceed under a Pseudonym and for a Protective Order, thus minimizing any potential harm to the plaintiff's reputation.[8] The plaintiff has failed to show that he suffered a deprivation of a liberty interest.

### C. The plaintiff was afforded due process.

Even assuming that the plaintiff could show that he possessed a property or liberty interest, which he cannot, his claims fail because he was afforded due process. The Fourth Circuit has approved generally, *Henson v. Honor Committee of U. Va.*, 719 F.2d 69, 74 (4th Cir. 1983), as this Court has specifically, of the following explanation of the requirements of due process:

> The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the [University]. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the . . . administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required.

---

[8] The defendants are only requesting that this Court impose restrictions upon the information that the plaintiff and his counsel can provide to third parties as a condition precedent for allowing him the benefit of proceeding anonymously.

> Such a hearing, with the attending publicity and disturbance of college activities might be detrimental to the college's educational atmosphere and impracticable to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college.

*Cobb v. Rector & Visitors of the Univ. of Va.*, 69 F. Supp. 2d 815, 828-29 (W.D. Va. 1999) (*citing Dixon v. Alabama State Bd. of Ed.*, 294 F.2d 150 (5th Cir. 1961)).

JMU met this standard in every way. The plaintiff was given notice of the charges against him. He was notified by letter on November 6, 2014, that he was being charged with sexual misconduct. *See* Ex. 1. As alleged in the Complaint, the plaintiff subsequently met with a JMU administrator on November 13, 2014, and reviewed the charges against him. Compl. ¶¶ 31-33. The plaintiff reviewed documents containing Roe's allegation that the plaintiff "forced himself upon her," and that she claimed to have stated "no" on numerous occasions. *See* Ex. 2. The documents he reviewed also indicated that Roe was intoxicated at the time of the encounter. Compl. ¶ 33.

The plaintiff was given a hearing on December 5, 2014. *Id.* ¶ 37. Roe provided evidence in support of the charge of sexual misconduct, and offered testimony. *Id.* ¶ 39. The plaintiff was then given an opportunity to testify about the relevant events, and he also presented the testimony of his roommate as well. *Id.* ¶ 41. The hearing panel ruled in the plaintiff's favor, finding him "not responsible" of sexual misconduct. *Id.* ¶ 44.

Roe appealed the decision of the hearing panel. *Id.* ¶ 47. In support of her appeal, Roe provided statements of witnesses regarding the August 22-23, 2014 encounter. *Id.* ¶¶ 57-62. Notably, the plaintiff *does not* allege that he did not receive the materials referenced in paragraphs 57 through 62 of the Complaint prior to December 22, 2014, because he cannot in good faith do so. The *only* document that the plaintiff claims to have not seen prior to providing

his written submission to the appeal board is a short December 17, 2014 statement by Roe that was "cut and pasted" into a December 22, 2014 email sent to the plaintiff. Compl. ¶ 62.

That document, which is specifically referenced and described in the Complaint, is attached as Exhibit 5. As the document indicates, the plaintiff was given a day to respond to the statement, though he claims he did not see it prior to the expiration of the time to respond. Compl. ¶ 63. Nowhere in his Complaint, however, does the plaintiff allege that he objected to this statement prior to the January 8, 2015 hearing of the appeal board. More importantly, the plaintiff does not allege that the December 17, 2014 statement contained any new, material information, because it did not. In the December 17, 2014 statement, Roe: 1) complains about the unfairness in the proceeding below; 2) describes evidence that was submitted to the appeal board and plaintiff reviewed; and 3) briefly summarizes her testimony before the hearing panel. *See* Ex. 5. Thus, nothing new was raised in the December 17, 2014 statement, and the plaintiff does not, and cannot, allege otherwise.

In making its decision, the appeal board then considered the written materials of the parties and the "multi-hour recordings" of the initial prior hearing. *Id.* ¶ 78. They were able to hear the plaintiff's side of the story from the original hearing. In every meaningful way, JMU has satisfied due process. As required, the plaintiff was given notice of the charges against him and an opportunity to be heard. *Mallette v. Arlington County Employees' Supplemental Ret. Sys.*, 91 F.3d 630, 640 (4th Cir. 1996) (citing *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 178 (1951)) ("At a minimum, the Constitution requires notice and some opportunity to be heard.").

The process followed by JMU comports with the three-factor balancing test that the Supreme Court set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) and followed in

*Butler v. Rector & Bd. of Visitors of the College of William & Mary*, 121 Fed. Appx. 515, 520 (4th Cir. Va. 2005). Pursuant to that three part test, a court balances:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Butler*, 121 Fed. Appx. at 520 (*citing Mallette*, 91 F.3d at 640). The Fourth Circuit's analysis in *Butler* is instructive.

*Butler* involved a student in the School of Education who was expelled from the College of William & Mary ("W&M"). That student was accused of accosting, threatening, and stalking other students and members of the faculty. *Butler*, 121 Fed. Appx. at 518. The student was given copies of the documents reflecting those allegations. *Id.* Members of the faculty subsequently met to discuss the student's actions and unanimously recommended to the Associate Dean that she be expelled from the program. *Id.* The Associate Dean then asked the Dean of the School of Education to review his decision. *Id.* The Dean met with the student to discuss the faculty recommendation. *Id.* The student acknowledged that she was given an opportunity to tell her side of the story and present evidence in support of her desire and fitness to remain in the program. *Id.* After considering the evidence, the Dean upheld the decision to expel the student from the program. *Id*.

The *Butler* Court upheld the dismissal by the district court of the due process claim brought against W&M. In balancing the three relevant factors, the court noted that the "student's interest in remaining in graduate school is unquestionably high." *Id*. at 520. But the court also noted that W&M's "interest in controlling the integrity of its graduate programs is also high."

14

*Id.* The same analysis applies to the plaintiff's due process claim in this case.[9] The plaintiff would prefer to return to JMU, but JMU has an interest in maintaining a campus free of sexual misconduct. Moreover, JMU unquestionably has an interest in complying with the guidelines issued by the U.S. Department of Education. Failing to follow those guidelines could lead to JMU losing federal funding that would jeopardize JMU's ability to function. Thus, JMU presents a more compelling interest in this case than did W&M in *Butler*.

After considering the first and third *Mathews v. Eldridge* factors, the *Butler* Court focused on the second factor – "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 121 Fed. Appx. at 520. The student in *Butler* argued that she should have been afforded a "trial-like proceeding," much like the plaintiff in this case was afforded. The Fourth Circuit, however, disagreed, instead holding that:

> we find no basis in the law, nor does [the student] provide one, for importing such a requirement into the academic context. [The student] was given notice and an opportunity to respond to all charges against her.

*Id.* Thus, the plaintiff in this case received the additional due process steps that the *Butler* Court found were not even required.

*Butler* compels dismissal in this case. The interest of JMU in maintaining a campus free of sexual misconduct is undeniably greater than W&M's interest in academic integrity. Likewise, the procedural safeguards afforded the plaintiff in this case surpass by far those employed by W&M in *Butler*. Moreover, the punishment in *Butler*, expulsion, was more severe than the suspension the plaintiff received in this case.

---

[9] This argument assumes a protect property or liberty interest, and the defendants do not waive their earlier arguments on this point. Did the decision actually assume it? Or was it not in issue?

### D. The plaintiff's request for declaratory judgment is moot.

Declaratory judgment is not a remedy available to the plaintiff in this case because it is designed to apply prospectively to prevent or mandate reasonably certain, future conduct. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) (quoting *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 240-41 (1937)) (stating that the remedy created by the federal Declaratory Judgment Act applies only to justiciable controversies that are "definite and concrete," not "academic or moot"). Thus, a declaratory judgment is unavailable in situations where, as in this case, "claims and rights asserted have fully matured, and the alleged wrongs have already been suffered." *Trull v. Smolka*, No. 3:08-CV-460, 2008 U.S. Dist. LEXIS 70233 (E.D. Va. Sept. 18, 2008) (*citing Board of Supervisors v. Hylton Enters.*, 216 Va. 582, 585 (1976)).

In this case, the alleged wrong – the suspension of the plaintiff from JMU – has occurred. The parties do not need a declaration to guide "future conduct." Indeed, the plaintiff is seeking specific injunctive relief to address the alleged wrong he claims to have suffered. Thus, a declaratory judgment is wholly superfluous and unnecessary, and the plaintiff's request for a declaration, uncoupled from any demand for legal relief, is improper and should be dismissed.

### V. Conclusion

WHEREFORE, for the foregoing reasons, the defendants respectfully request that this Court dismiss the Complaint in its entirety and with prejudice, and grant such other relief as this Court deems just and appropriate.

Respectfully Submitted,

JONATHAN ALGER &

MARK J. WARNER

By:/s/_____
 Counsel

The Honorable Mark R. Herring
Attorney General of Virginia

Cynthia E. Hudson
Chief Deputy Attorney General

Rhodes B. Ritenour
Deputy Attorney General
Civil Litigation Division

John David Gilbody (VSB No. 42788)*
Assistant Attorney General
Office of the Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-8198
(804) 371-2087 (fax)
jgilbody@oag.state.va.us

*Counsel of Record*

# CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of June, 2015, I filed a copy of the foregoing document using the Court's ECM/ECF filing system, which will send an electronic notification of the same (NEF) to counsel of record for the plaintiff:

W. David Paxton, Esq.
Justin M. Lugar, Esq.
Bradley C. Tobias, Esq.
Gentry Locke
P.O. Box 40013
Roanoke, VA 24022-0013

I further certify that, on this 1st day of June, 2015, I have sent via electronic mail a copy of the foregoing document to the following counsel:

Michael E. Rosman, Esq.
Michelle A. Scott, Esq.
Center for Individual Rights
1233 20th Street, NW
Suite 300
Washington, DC 20036
rosman@cir-usa.org
scott@cir-usa.org
*Counsel for the Plaintiff*

/s/
John David Gilbody (VSB No. 42788)
Assistant Attorney General
Office of the Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-8198
(804) 371-2087 (fax)
jgilbody@oag.state.va.us