IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 5:15-cv-00035 |
| JONATHAN R. ALGER, *et al.*, | ) By: Elizabeth K. Dillon |
| Defendants. | ) United States District Judge |

**MEMORANDUM OPINION**

Plaintiff moves for leave to proceed under the pseudonym "John Doe." For the following reasons, the court holds that his privacy interest outweighs the presumption of openness in judicial proceedings. It will thus grant the motion and enter a protective order prohibiting the use of his real name.

I.  BACKGROUND

In August 2014, Doe enrolled as a freshman at James Madison University (JMU or University) in Harrisonburg, Virginia. Doe alleges that, during his first week on campus, he met and began a sexual relationship with another freshman, "Jane Roe."[1] Later that semester, she filed a charge of sexual misconduct against him, claiming that their first sexual encounter was not consensual. A hearing board found him "not responsible" for the charge, but an appeal board reversed, suspending him through the spring 2020 semester.

Seeking immediate readmission to JMU, Doe brought this case against the University's president, defendant Jonathan Alger, and vice president of student affairs, defendant Mark Warner, in their official capacities under 42 U.S.C. § 1983. Doe claims that the disciplinary

---

[1] Roe's real name is not disclosed in any of the parties' submissions, and, as explained below, the court will enter a protective order prohibiting its use for the remainder of the case.

process by which he was found responsible for sexual misconduct and suspended was deficient and that, as a result, Alger and Warner deprived him of his liberty interest in his good name and of his property interest in his continued enrollment at JMU without due process of law, in violation of the Fourteenth Amendment to the Constitution.[2]

Along with his complaint, Doe filed a motion for leave to proceed under a pseudonym and for a protective order prohibiting the use of his real name or the real names of Roe and the other students involved in the disciplinary process. (Pl.'s Mot. for Leave to Proceed Under Pseudonym 1–2, Dkt. No. 2.) At first, Alger and Warner did not "challenge [Doe's] assertion that anonymity is appropriate" here, but requested that "the parties be forbidden from discussing [the case] with third parties, including the press, during [its] pendency." (Defs.' Resp. to Pl.'s Mot. for Leave to Proceed Under Pseudonym 2, Dkt. No. 12.) But after Doe opposed such a gag order (Pl.'s Reply Mem. in Supp. of Mot. for Leave to Proceed Under Pseudonym 2, Dkt. No. 16), Alger and Warner filed an amended response to the motion, this time arguing that anonymity was not appropriate in this case. (Defs.' Am. Response to Pl.'s Mot. for Leave to Proceed Under Pseudonym 1, Dkt. No. 23.)

II. DISCUSSION

"The ultimate test for deciding if a plaintiff should proceed anonymously is whether he 'has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Doe v. Pittsylvania Cty., Va.*, No. 4:11-cv-43, 2012 U.S. Dist. LEXIS 13618, at *2–3 (W.D. Va. Feb. 3, 2012) (some internal quotation marks omitted) (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)). This presumption of openness is well grounded in our nation's laws. *Id.* at *3. "Courts have long held that the First

---

[2] Alger and Warner responded to Doe's complaint by filing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The court today grants that motion in part and denies it in part in a separate memorandum opinion and order.

2

Amendment protections of freedom of speech and press safeguard the public's right to attend trials, which must be 'open to the public absent an overriding and clearly articulated interest to the contrary.'" *Id.* (quoting *Doe 1 v. Merten*, 219 F.R.D. 387, 390–91 (E.D. Va. 2004)). In fact, "anonymity is not contemplated by the Federal Rules of Civil Procedure." *Id.* Quite the opposite: Rule 10(a) provides that "[t]he title of the complaint must *name* all the parties." Fed. R. Civ. P. 10(a) (emphasis added). The purpose of this rule "is to 'apprise the parties of their opponents and to protect the public's legitimate interest in knowing all the facts and events surrounding court proceedings.'" *Pittsylvania Cty.*, 2012 U.S. Dist. LEXIS 13618, at *3 (quoting *Doe v. Hallock*, 119 F.R.D. 640, 643 n.1 (S.D. Miss. 1987)).

But the presumption of openness is not absolute; anonymity may be appropriate in some cases. "The crucial interests served by open judicial proceedings are not compromised by allowing a party to proceed anonymously." *Id.* at *4. If a plaintiff is granted leave to proceed under a pseudonym, the public is not denied its right to attend the proceedings or inspect the court's opinions and orders on the underlying constitutional issue. *Id.* "'[T]he only thing potentially being shielded from the public is plaintiff's name and any court proceedings or opinions that might be necessary to determine standing.'" *Id.* (quoting *Doe v. Barrow Co.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003)). Still, "it is the exceptional case in which a court allows a party to proceed anonymously." *Id.*

Whether a plaintiff is allowed to proceed anonymously is a decision committed to the sound discretion of the district court. *Id.* at *6. To guide this decision, the Fourth Circuit has provided the following five factors:

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more

3

> critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). Not all of these factors may be relevant to a given case, and there may be others that are. *Id.* At bottom, then, the trial court must "carefully review *all* the circumstances of [the] case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Pittsylvania Cty.*, 2012 U.S. Dist. LEXIS 13618, at *7 (quoting *Frank*, 951 F.2d at 323).

The court concludes that the factors relevant to this case weigh in favor of anonymity.

**A. Specific Sensitive and Personal Interest**

The first *James* factor asks whether the plaintiff has a specific sensitive and personal privacy interest or whether he merely seeks to avoid the annoyance and criticism that comes with litigation. Here, Doe argues, and Alger and Warner concede, that the sexual misconduct for which he was found responsible is sufficiently sensitive and personal to satisfy this factor. (Pl.'s Mot. 4; Defs.' Am. Resp. 2.) The court agrees and thus believes that the first *James* factor tips in favor of anonymity.

**B. Retaliatory Physical or Mental Harm**

The second *James* factor examines whether identification poses a risk of retaliatory physical or mental harm to the plaintiff or innocent non-parties. In this case, Doe claims that if he is not allowed to proceed anonymously, then he will face "a serious risk" of retaliatory physical or mental harm. (Pl.'s Mot. 5.) His identification, he maintains, may subject him to physical or mental "harm at the hands of [Roe's] friends or relatives, as well as other students on campus who may seek to label him a 'rapist.'" (*Id.*) He further argues that his identification "would inevitably result in the identification of [Roe]" and the other students involved in the

disciplinary process.  (*Id.*)  If this were to occur, he submits, "she could well be subjected to very public shaming."  (*Id.*)

Alger and Warner respond that Doe's complaint about possible physical harm is "nonsensical."  (Defs.' Am. Resp. 3.)  They argue that just because Doe would be identified, does not necessarily mean that Roe would be as well.  (*Id.*)  They also claim that his concern about other students on campus subjecting him to physical harm "lacks merit," since he has been banned from campus.  (*Id.*)  Moreover, they contend that "[h]e has not been targeted for violence to date [and] cannot name any individual friend or relative of Roe's who might potentially target him."  (*Id.*)

The court thinks that the second *James* factor also weighs in favor of anonymity, albeit slightly.  Although Doe's identification would not necessarily increase his risk of retaliatory physical or mental harm from Roe's "friends or relatives" (they presumably know his identity already), it would likely increase his risk of such harm from other persons.  This case has received a fair amount of press for a relatively small community, and it stands to reason that there are some persons who would seek to inflict physical or mental harm on Doe if they learned of his real name, especially in light of the ongoing national conversation about sexual misconduct on college campuses.

Further, while Doe's identification would not necessarily lead to Roe's identification, too, it would certainly make it more likely.  Upon learning Doe's identity, persons who know him or know of him may put two and two together and work out Roe's identity.  For the same reason, Doe's identification would also make it more likely that the other students involved in the disciplinary process would be identified.  And just as with Doe's identification, Roe's and the

5

other students' identification would likely increase their risk of retaliatory physical or mental harm.

**C. Ages of Persons Whose Privacy Interests Are Sought to Be Protected**

The third *James* factor considers the ages of the persons whose privacy interests are sought to be protected. In this case, Doe contends that this factor tips in favor of anonymity because he and the other students involved in the disciplinary process were all freshmen between the ages of 18 and 19 at the relevant times. (Pl.'s Mot. 5.) Alger and Warner counter that the factor tips against anonymity because "[Doe] is an adult." (Defs.' Am. Response. 3.)

To be sure, Doe is an adult, and the other students involved in the disciplinary process are also adults. But they are *young* adults and so "may still possess the immaturity of adolescence," as many college students do. *Yacovelli v. Moser*, No. 1:02-cv-596, 2004 U.S. Dist. LEXIS 9152, at *24 (M.D.N.C. May 20, 2014). In fact, if Doe and the other students were just a year or so younger, then only their initials could be used in filings, absent court order directing otherwise. *See* Fed. R. Civ. P. 5.2(a)(3). The court therefore believes that the third *James* factor weighs in favor of anonymity, as well.

**D. Action Against Government or Governmental Activity**

The fourth *James* factor looks at the identity of the defendant in the case and asks whether the plaintiff is pursuing legal action against the government or a private party. "When a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." *Yacovelli*, 2004 U.S. Dist. LEXIS 9152, at *24–25. "Actions against the government do no harm to its reputation, whereas suits filed against private parties may damage

6

their good names and result in economic harm." *Pittsylvania Cty.*, 2012 U.S. Dist. LEXIS 13618, at *10–11.

Here, Doe argues that this factor "does not weigh against anonymity" because the public's interest lies in whether JMU has established "policies and procedures for adjudicating sexual misconduct cases that deny due process to those accused of such offenses," and not in his identity. (Pl.'s Mot. 6.) Alger and Warner respond that the factor does indeed weigh against anonymity because Doe alleges or implies that they and other JMU employees committed wrongdoing. (Defs.' Am. Resp. 4.)

The court does not think that the fourth *James* factor tips in favor of or against anonymity. While Doe is suing Alger and Warner, as opposed to JMU, he sues them only in their official capacities as president and vice president of the University. And though some persons may read Doe's allegations as accusing Alger, Warner, and other JMU employees as committing wrongdoing, others will not. Instead, they will read the allegations as an indictment of the University's disciplinary process itself and not of the persons involved in it. In fact, that is how JMU's spokesperson characterized the allegations when talking to the media about the case in the days after it was filed: "The complaint contains no claims of wrongdoing by either administrator. . . . They are named in this type of case only because they have authority to potentially reinstate the student." (Pl.'s Additional Reply Mem. in Supp. of Mot. for Leave to Proceed Under Pseudonym, Ex. 1 at 3, Dkt. No. 25-1.)

E.  **Risk of Unfairness to Defendant**

The fifth *James* factor examines the risk of unfairness to the defendant from allowing the plaintiff to proceed anonymously. In this case, Doe contends that "[a]nonymity will impose no unfairness on [Alger and Warner]" because they "are fully aware of [his] identity . . . and will

7

not be hampered in any substantive way in their handling of this case given the nature of the claim." (Pl.'s Mot. 6.) Alger and Warner counter that Doe (or, more accurately, his counsel) has spoken to the media about the case and that consequently he should "not be allowed to hide behind the protection of anonymity." (Defs.' Am. Resp. 4.) Doe fires back that while his counsel has indeed talked to the media about the case, he has done so only when asked for comment. (Pl.'s Additional Reply 6–7.) Moreover, Doe notes that JMU's spokesperson has also talked about the case with the media. (*Id.* at 7.)

The court believes that the fifth *James* factor also weighs in favor of anonymity. To begin with, Alger and Warner are fully aware of Doe's identity, and they fail to articulate how they would be prejudiced in their defense of the case if Doe were allowed to proceed anonymously. Further, while Doe's counsel has made some comments about the case to the media, so too has JMU's spokesperson. And, insofar as the court can tell, Doe's counsel has limited his comments just to the positions of the parties in the case. (*See* Pl.'s Additional Reply, Ex. 4 at 3, Dkt. No. 25-4 ("[T]he university's motion 'misstates the basis of our complaint' and 'inaccurately characterizes the law in Virginia.'").)

**F. Irreparable Harm to Plaintiff's Name**

In addition to the *James* factors, Doe argues that there is another factor relevant to this case that weighs in favor of anonymity—irreparable harm to his name. (Pl.'s Mot. 3–4.) Through this litigation, he "seeks . . . to be free of the obligation, when [applying for admission to other schools or for employment], of self-disclosing that he was found guilty of sexual misconduct and suspended from JMU as a result." (*Id.* at 3.) But, he submits, "if he is not permitted to proceed anonymously, he cannot receive this relief in any effective form, for by suing under his own name he could not avoid a more public and damaging form of that same

8

self-disclosure." (*Id.*) Any records check or Internet search would reveal the very information he is now trying to expunge. (*Id.*)

The court agrees with Doe that irreparable harm to his name is a relevant factor here and that it tips in favor of anonymity. If he were not allowed to proceed anonymously, part of the relief he seeks—expungement of his student record—would fall short of making him whole: the cat would have already been let out of the bag.

\* \* \*

After giving equal weight to all of the factors discussed above, the court concludes that Doe's privacy interest outweighs the presumption of openness in judicial proceedings and that he may thus proceed anonymously in this case. The court also finds good cause to protect Roe and the other students involved in the disciplinary proceedings, and so the use of their real names will be prohibited as well.

### III. CONCLUSION

For the foregoing reasons, the court will grant Doe's motion to proceed under a pseudonym and will enter a protective order prohibiting the use of his real name and the real names of Roe and the other students involved in the disciplinary proceedings during this case.

Entered: March 31, 2016.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge