Re:  *John Doe v. Jonathan R. Alger, et al.*
Case No: 5:15-cv-00035-EKD (U. S. District Court, W.D. Va., Harrisonburg Div.)


**Exhibit to Plaintiff's Memorandum in Support
of its Motion for Summary Judgment**


# Attachment E

21499/1/7526978v1

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

JOHN DOE,

Plaintiff,

v.

JONATHAN R. ALGER, President of
James Madison University, in his
official capacity

Case No. 5:15-CV-00035

and

MARK J. WARNER, Sr. Vice
President of Student Affairs and
University Planning, in his
official capacity,

Defendants.

## DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

Defendants, by counsel, state as follows for their objections and responses to Plaintiff's

First Requests for Admission.

## DEFINITIONS AND INSTRUCTIONS

Defendants object to the extent the purported Definitions and Instructions vary from or

change the requirements of the Federal Rules of Civil Procedure. Defendants will comply with

the Federal Rules in responding to the discovery.

## REQUESTS FOR ADMISSION

1.    In the fall of 2013, Plaintiff applied to JMU for admission as a freshman
undergraduate for the school year that was to begin in August 2014.

**RESPONSE:**

Admit.

2. In the spring of 2014, Plaintiff was notified by JMU that he had been accepted for admission as a freshman in August 2014.

**RESPONSE:**

Admit.

3. Between January 1, 1980 and January 1, 2015, JMU never dismissed, suspended, expelled or separated an undergraduate student without good cause.

**OBJECTION:**

Defendants object to this Request on the basis that it is overly broad in time and scope, is unduly burdensome, and on the basis it is vague and ambiguous. Defendants object on the basis that is Request is not reasonably calculated to lead to the discovery of relevant information and is outside the scope of discovery. Defendants object on the basis that "good cause" is not defined.

**RESPONSE:**

Defendants cannot truthfully admit or deny this request on the basis of the above stated objections.

4. The document attached to these Requests as **Exhibit A** is a true and accurate copy of JMU's Policy on Student Rights which was in effect in August 2014, when Plaintiff matriculated.

**RESPONSE:**

Deny.

5. As a condition of its receipt of federal funds, JMU has agreed to adopt fair and impartial processes and procedures to protect the due process rights of students accused of having committed an act of sexual misconduct.

**RESPONSE:**

Defendants admit that James Madison University is a recipient of federal funds. Defendants admit that James Madison University is covered by Title IX of the Education Amendments Of 1972, 20 U.S.C. A§ 1681 Et. Seq. Defendants admit that pursuant to Title IX,

2

James Madison University does not exclude any person from participation in, deny the benefits of, or subject a person to discrimination under any education program or activity on the basis of sex. Defendants admit that James Madison University has adopted fair and impartial processes and procedures applicable to students accused of having committed an act of sexual misconduct. Defendants deny the remainder of the allegations contained in Request Number 5.

6.      On April 6, 2014, Plaintiff paid the deposit required of those who were offered admission and wished to matriculate.

**RESPONSE:**

Defendants admit that a deposit was paid on Plaintiff's behalf after he was offered admission. Defendants lack sufficient information to admit or deny the date on which such deposit was paid. Defendants have made reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny.

7.      In addition to the initial deposit, Plaintiff also timely paid JMU the sum of $9,270 in tuition and fees for the fall semester 2014.

**RESPONSE:**

Defendants admit that tuition and fees for the fall semester 2014 were paid on Plaintiff's behalf. Defendants lack sufficient information to admit or deny the amount of the tuition and fees paid, or whether they were timely paid. Defendants have made reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny.

8.      The tuition paid by Plaintiff was based on the entitlement Plaintiff had as a Virginia resident to receive state support for his college education.

**RESPONSE:**

Defendants admit Plaintiff was a Virginia resident. Defendants admit Plaintiff was charged a tuition rate based on his status as a Virginia resident. Defendants deny the remainder of the allegations contained in Request Number 8.

9.      As of August 20, 2014, Plaintiff entered into a relationship with JMU that entitled him to be enrolled as a student so long as he paid the required fees, remained in good standing academically, otherwise met the requirements for graduation, and complied with JMU's conduct rules.

3

**RESPONSE:**

Defendants admit that Plaintiff enrolled as an undergraduate student at James Madison University in August 2014. Defendants deny the remainder of the allegations contained in Request Number 9.

10.     In June 2014, the Office of Civil Rights of U.S. Department of Education ("OCR") commenced a Title IX investigation of JMU.

**OBJECTION:**

Defendants object to this Request on the basis it is not reasonably calculated to lead to the discovery of relevant information.

**RESPONSE:**

Admit.

11.     On June 28, 2014, Defendant Alger issued a statement on "Student Safety" in an effort to provide reassurance to the new students and their families who were coming for freshmen orientation that JMU was doing "everything in its power to help keep our students safe."

**OBJECTION:**

Defendants object on the basis that Plaintiff has not sufficiently identified or attached the Statement for review.

**RESPONSE:**

Defendants cannot truthfully admit or deny this Request because Plaintiff has neither sufficiently identified nor attached for review, the statement that is the subject of this Request.

4

12.    In August 2014, Defendant Alger appointed a 14-member Title IX Task Force to take a comprehensive look at JMU's efforts to combat sexual assault and to recommend changes as needed.

**RESPONSE:**

Admit.

13.    On August 24, 2014, the JMU campus newspaper, *The Breeze*, published an editorial, "We cannot tolerate a culture of sexual assault at our school," related to the perceived problem that JMU's system provided an inadequate response to claims of sexual assault.

**OBJECTION:**

Defendants object to this Request on the basis it is not reasonably calculated to lead to the discovery of relevant information. Defendants object on the basis *The Breeze* is a student-run newspaper, not under the direction or control of either Defendant or James Madison University. Defendants object on the basis that Plaintiff improperly fails to attach the article to which he references, instead shifting the burden onto the Defendants.

**RESPONSE:**

Defendants admit only that the editorial board of the student-run newspaper, *The Breeze,* published an editorial on August 24, 2014 entitled "We cannot tolerate a culture of sexual assault at our school." *The Breeze* is not under the direction or control of either Defendant or James Madison University. Defendants deny the remainder of the allegations contained in Request Number 13.

14.    On August 27, 2014, in response to criticism leveled against JMU for its actions involving a complaint by Sarah Butters, Defendant Alger posted an article on the new weblog created by the White House, www.NoMore.org, in which he cautioned others to avoid a "rush to judgment and finger-pointing [against JMU] based on incomplete or inaccurate information."

**OBJECTION:**

Defendants object to this Request on the basis it is not reasonably calculated to lead to the discovery of relevant information. Defendants object on the basis that Plaintiff improperly fails to attach the article to which he references, instead shifting the burden onto the Defendants.

5

**RESPONSE:**

Defendants admit only that on August 27, 2014, President Alger posted a guest blog post on www.nomore.org. Defendants deny the remaining allegations contained in Request Number 14.

15.     On December 4, 2014, *The Breeze* repeated its call to action in what it saw as the "stark" difference in how the University of Virginia had responded to the "gang rape" (as reported by *Rolling Stone*) and JMU's ineffective response to Sarah Butters in an op-ed piece entitled, *"JMU shouldn't need a controversy to 'be the change.'"*

**OBJECTION:**

Defendants object to this Request on the basis it is not reasonably calculated to lead to the discovery of relevant information. Defendants object on the basis *The Breeze* is a student-run newspaper, not under the direction or control of either Defendant or James Madison University. Defendants object on the basis that Plaintiff once again improperly fails to attach the article to which he references, instead shifting the burden onto the Defendants.

**RESPONSE:**

Defendants admit only that the editorial board of the student-run newspaper, *The Breeze,* published an editorial on December 4, 2014 entitled "JMU shouldn't need a controversy to 'be the change.'" *The Breeze* is not under the direction or control of either Defendant or James Madison University. Defendants deny the remainder of the allegations contained in Request Number 15.

16.     In August 2014, Plaintiff and Jane Roe enrolled as freshmen at JMU as full time students.

**RESPONSE:**

Admit.

6

17. On November 6, 2014, Plaintiff was sent an email from OSARP notifying him that documentation had been received which had resulted in a charge of "Sexual Misconduct" being brought against him.

**RESPONSE:**

Admit.

18. On November 13, 2014, Plaintiff met with R.J. Ohgren, Assistant Director of OSARP, to receive an explanation of the procedures to be used and Plaintiff's rights as an accused student in connection with the Charge.

**RESPONSE:**

Admit.

19. On November 13, 2014, Plaintiff was provided a copy of his "Rights" as an "Accused Student" facing a sexual misconduct charge, and the document attached to these Requests as **Exhibit B** is a redacted copy of the document provided to and signed by Plaintiff.

**RESPONSE:**

Admit.

20. During this meeting on November 13, 2014, R.J. Ohgren advised Plaintiff to review materials in the OSARP file on which the Charge was based.

**RESPONSE:**

Admit.

21. Also during this meeting, R.J. Ohgren told Plaintiff that he was prohibited from making or receiving copies of any of the materials supporting the Charge.

**RESPONSE:**

Deny.

7

22.     The OSARP file provided to Plaintiff on November 13, 2014 contained only two items: (i) a typed report dated October 24, 2014, prepared by the individuals who served as the Resident Advisor and Hall Director for Plaintiff's dorm, and (ii) a typed report dated October 29, 2014, submitted by JMU's then Title IX Officer for Students.

**RESPONSE**:

Deny.

23.     On December 4, 2014, Wendy Lushbaugh, Associate Director of OSARP, sent an email reminding Plaintiff of the hearing on the Charge the next day at 3:30 p.m. The document attached as **Exhibit C** is a redacted copy of this email notice sent to Plaintiff.

**RESPONSE**:

Admit.

24.     On December 4, 2014, Plaintiff visited the OSARP office and again reviewed the file of materials to be used to support the Charge.

**RESPONSE**:

Admit.

25.     Other than the October 24 and 29 typed reports previously mentioned above, the OSARP file provided to Plaintiff on December 4, 2014 contained only a short handwritten statement by a female student dated December 3, 2014, who claimed to have seen Jane Roe drinking earlier in the night of August 22, 2014.

**RESPONSE**:

Deny.

26.     Other than the statements just described, there were no other documents in the OSARP file.

**RESPONSE**:

Deny.

8

27.     The hearing on the Charge was held on Friday, December 5, 2014, and it began that day at 3:30 p.m.

**RESPONSE:**

Admit.


28.     Dr. Joshua Bacon, the Director of OSARP, chaired a three person panel ("Hearing Panel") which heard and considered the testimony, information and materials presented on the Charge.

**RESPONSE:**

Admit.


29.     The Hearing Panel was asked to decide whether Plaintiff was "responsible" for the Charge by using a "preponderance of the evidence" standard.

**RESPONSE:**

Admit.


30.     The live testimony offered in support of the Charge before the Hearing Panel was provided by Jane Roe, Jane Roe's Resident Advisor and her supervisor, the Hall Director (each of whom provided testimony about their interactions with Jane Roe on October 24), Jane Roe's roommate and Jane Roe's suitemate.

**RESPONSE:**

Admit.


31.     Jane Roe's roommate testified that she did not believe Jane Roe was drunk or incapacitated when she saw Jane Roe in Plaintiff's dorm room shortly after the sexual encounter.

**RESPONSE:**

Deny.

9

32.     The suitemate testified that she had no personal knowledge of what happened on the night in question.

**RESPONSE:**

Admit that the suitemate testified she did not learn of this incident until after the night it occurred. Deny the remainder of the allegations contained in Request Number 32.

33.     Plaintiff testified before the Hearing Panel about the events of the night and early morning in question, and his relationship with Jane Roe. Plaintiff's roommate also testified.

**RESPONSE:**

Admit.

34.     The members of the Hearing Panel asked questions of Plaintiff and Jane Roe, as well as most of the witnesses who testified.

**RESPONSE:**

Admit.

35.     Once all of the evidence was submitted to the Hearing Panel, it excused the witnesses and parties, and deliberated on the information provided.

**RESPONSE:**

Admit.

36.     At approximately 8:30 p.m. on December 5, 2014, Dr. Bacon reported to both parties that the Hearing Panel had determined that Plaintiff was "not responsible" of the alleged sexual misconduct.

**RESPONSE:**

Defendants admit that on December 5, 2014, both parties were informed that the Hearing Panel determined Plaintiff was "not responsible" of the alleged sexual misconduct. Defendants

10

lack sufficient information to admit or deny the time the parties were informed. Defendants have made reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny. Defendants deny the remaining allegations contained in Request Number 36.

37.    The Hearing Panel's determination would have been a final resolution of Jane Roe's Charge against Plaintiff under JMU's rules if Jane Roe had not filed an appeal.

**RESPONSE:**

Admit.

38.    In non-sexual misconduct disciplinary cases, the JMU student bringing the charge of misconduct has no right to file an appeal if he or she is unhappy with the outcome of the hearing and the accused student is found not responsible.

**OBJECTION:**

Defendants object on the basis that this Request is not reasonable calculated to lead to the discovery of relevant information and is outside the scope of permissible discovery.

**RESPONSE:**

Admit.

39.    The exam period for JMU's 2014 fall semester began on Monday, December 8, 2014, and the semester ended on December 12, 2014.

**RESPONSE:**

Admit.

40.    Plaintiff passed all of the classes that he took during the fall semester 2014, and was in good standing academically when the semester ended on December 12, 2014.

**RESPONSE:**

Admit.

11

41.   Plaintiff had pre-registered for five new classes that were set to begin on January 12, 2015, when the spring 2015 semester began, and planned to return to campus the day before to continue his studies.

**RESPONSE:**

Defendants cannot admit or deny the truth of whether Plaintiff "planned to return to campus the day before to continue his studies," as that information is subjective to the Plaintiff. Defendants lack sufficient information to admit or deny whether plaintiff had pre-registered for five new classes that were set to begin on January 12, 2015. Defendants have made reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny.

42.   JMU employees encouraged Jane Roe to file an Appeal of the December 5, 2014 decision.

**RESPONSE:**

Deny.

43.   The document attached to these Requests as **Exhibit D** is a redacted copy of Jane Roe's Appeal filed on December 10, 2014.

**RESPONSE:**

Admit.

44.   In support of her Appeal, Jane Roe submitted a typed statement dated December 10, 2014, from the student who had served as her "support person" during the original hearing.

**RESPONSE:**

Admit.

12

45.     JMU's policies and procedures for the resolution of complaints of sexual misconduct did not allow Jane Roe's "support person" to testify at the December 5, 2014 hearing.

**RESPONSE:**

Admit.


46.     The "support person's" typed statement submitted as new evidence stated that the "support person" had been with Jane Roe earlier in the evening of August 22, and that Jane Roe, Jane Roe's roommate, and the "support person" had been out drinking but left Jane Roe at a party.

**RESPONSE:**

Admit.


47.     The "support person's" statement acknowledged that she did not know what occurred after she left Jane Roe alone at the party, and offered no information about Plaintiff or the sexual encounter.

**RESPONSE:**

Admit.


48.     Because she did not testify before the Hearing Panel, the "support person" was never questioned by Plaintiff, the Hearing Panel, or the Appeal Board.

**RESPONSE:**

Admit.


49.     On Thursday, December 11, 2014, Plaintiff received a call from Mr. Ohgren who advised him that Jane Roe had filed an appeal that would be heard on December 18. He also advised Plaintiff that the OSARP office was closing early the next day since Friday was the end of the semester.

**RESPONSE:**

13

Defendants admit that Plaintiff spoke with Mr. Ohgren regarding Jane Roe's appeal and that the appeal would be heard on December 18, 2014. Defendants lack sufficient information to admit or deny the remaining allegations contained in Request Number 49. Defendants have made reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny.

50.     Plaintiff went to the OSARP office during the afternoon of December 11, 2014, to view the Appeal file.

**RESPONSE:**

Defendants admit that Plaintiff went to the OSARP office and viewed the Appeal File. Defendants lack sufficient information to admit or deny whether Plaintiff went to the OSARP office and viewed the file on December 11, 2014. Defendants have made reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny.

51.     The Appeal file provided to Plaintiff for review on December 11, 2014, consisted only of the official JMU appeal form signed by Jane Roe, Jane Roe's short handwritten statement, and the typed statement (described above) by the "support person."

**RESPONSE:**

Defendants lack sufficient information to admit or deny whether Plaintiff went to the OSARP office and viewed the file on December 11, 2014. Defendants have made reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny. Defendants deny the remaining allegations in Request Number 51.

52.     Plaintiff was not allowed to make or receive copies of any of the documents in the Appeal file.

**RESPONSE:**

Defendants admit that Plaintiff was not permitted to make copies. Defendants deny that Plaintiff did not receive copies to review.

14

53.  Plaintiff advised Mr. Ohgren during their meeting on December 11, 2014, that he had two exams the next day and was leaving shortly thereafter on a trip out of state and would have little or no access to a computer for an extended period of time.

**RESPONSE:**

Defendants admit the Plaintiff told Mr. Ohgren he was going on a trip and would have inability to access a computer. Defendants deny the remaining allegations in Request Number 53.

54.  During this meeting on December 11, 2014, Mr. Ohgren informed Plaintiff that he would not be allowed to appear before or attend the meeting of the Appeal Board where the Charge was considered.

**RESPONSE:**

Defendants admit that Plaintiff was informed he would not appear before or attend the Appeal Board meeting. Defendants deny the remaining allegations in Request Number 54.

55.  On December 12, 2014, Mr. Ohgren called Plaintiff to inform him that Jane Roe had been given extra time, until Saturday December 13, 2014 at 5:00 p.m., to submit additional evidence and the Appeal hearing had been postponed.

**RESPONSE:**

Defendants admit that on December 12, 2014, Mr. Ohgren informed Plaintiff that Jane Roe would be submitting an additional piece of evidence for her appeal by 5 p.m. on December 13, 2014, and as a result, Plaintiff would also be given additional time, until December 19, 2014, to respond. Defendants admit that Mr. Ohgren informed Plaintiff the December 18, 2014 appeal review would be postponed. Defendants deny the remaining allegations in Request Number 55.

56.  On December 12, 2014, JMU closed all dorms for undergraduate students, and the dorms remained closed until Sunday, January 11, 2015.

**RESPONSE:**

Admit.

15

57.     OSARP gave Jane Roe a second extension of time to submit information in support of her Appeal by extending the deadline from December 13 to December 15, 2014.

**RESPONSE**:

Defendants admit that Jane Roe submitted additional information in support of her appeal until December 15, 2014 and Plaintiff was then also given an extension of time to respond.


58.     On or about December 15, 2014, Jane Roe presented two additional types of "new evidence" to OSARP.

**RESPONSE**:

Deny.


59.     One type of Jane Roe's "new evidence" consisted of two documents from her suitemate who had previously testified as a University witness at the December 5 hearing.

**RESPONSE**:

Defendants admit that Jane Roe submitted for consideration on appeal two statements by her suitemate, who testified on behalf of Jane Roe at the December 5 hearing. Defendants deny the remaining allegations contained in Request 59.


60.     One document from the suitemate was a typed statement dated December 5, 2014, by the suitemate where she admits again that she did not know anything about what occurred on the night in question, other than what she learned "later in the semester."

**RESPONSE**:

Defendants admit that the suitemate's December 5, 2014 witness statement, attached to her email describing new evidence, states that she learned about the incident later in the semester. Defendants deny the remaining allegations in Request Number 60.


61.     This typed statement by the suitemate contained "new evidence" that she had not testified to at the December 5 Hearing.

**RESPONSE**:

16

Defendants admit that the suitemate's written statements together contained new evidence. Defendants deny the remaining allegations in Request 61.

62.     Neither Plaintiff nor the Hearing Panel had the ability to question her or judge the suitemate's credibility about these issues.

**RESPONSE:**

Deny.

63.     The other document from the suitemate submitted on December 15, 2014, was an undated email which accused Jane Roe's roommate of intentionally providing false information to the Hearing Panel, and concluded by referring to Plaintiff as a "rapist."

**RESPONSE:**

Admit.

64.     The other type of "new evidence" submitted by Jane Roe on December 15, 2014, was a statement and materials from a friend who attended another college.

**RESPONSE:**

Defendants admit that on December 15, 2014, Jane Roe submitted as new evidence a statement and materials from a friend who was not enrolled as a student at James Madison University. Defendants lack sufficient information to admit or deny the truth of whether the individual attended another college. Defendants have made reasonable inquiry and the information they know or can readily obtain is insufficient to enable them to admit or deny.

65.     Jane Roe's friend (referenced above in Request No. 64) provided a voice message recording left by Jane Roe, a short statement and a screenshot from her smartphone which showed the voice message had been left at 11:39 p.m. on Thursday, August 21, 2014.

**RESPONSE:**

Admit.

17

66. No JMU employee who worked in OSARP, none of the members of the Appeal Board, nor either of the Defendants ever spoke to or had any direct communications with Jane Roe's friend referenced above in Request No. 64 at any time prior to January 9, 2015.

**RESPONSE:**

Admit.


67. At 12:03 a.m. on December 17, 2014, Jane Roe submitted a further email to OSARP. The document attached as **Exhibit E** is a redacted copy of this email.

**RESPONSE:**

Defendants admit that Exhibit E is a redacted copy of the described email sent by Jane Roe to her advisor in OSARP. Defendants deny this Request to the extent it infers receipt and review by OSARP at 12:03 a.m. on December 17, 2014.


68. In her December 17, 2014 email, Jane Roe asserted that the new voicemail information supported her claim that she was too drunk to give consent.

**RESPONSE:**

Defendants admit that in the December 17, 2014 email, Jane Roe asserted that the new voicemail information supported her claim that she was intoxicated. Defendants deny the remainder of the allegations in Request Number 68.


69. In concluding her December 17, 2014 email, Jane Roe referred to another "victim" of Plaintiff, as follows: *"It is very important to me that I feel safe and the other victim feels safe on this campus."*

**RESPONSE:**

Defendants admit that her December 17, 2014 email, Jane Roe included the statement, "It is very important to me that I feel safe and the other victim feels safe on this campus." Defendants deny that Jane Roe referred to the other individual as another victim of Plaintiff.


70. On Thursday, December 18, 2014, at 4:42 p.m., OSARP sent an email to Plaintiff providing some of the "new evidence" submitted by Jane Roe, but not all of the information and documents provided to the Appeal Board.

18

**OBJECTION:**

Defendants object on the basis this Request is vague and does not describe what new evidence Plaintiff claims was sent to him, or what information he claims was not provided to him.

**RESPONSE:**

Defendants admit that OSARP sent an email to Plaintiff on Thursday, December 18, 2014 at 4:42 p.m. providing new evidence submitted by Jane Roe. Defendants deny the remainder of the allegations contained in Request 70.

71.     The document attached as **Exhibit F** is a redacted copy of this December 18, 2014 OSARP email without the attachments.

**RESPONSE:**

Defendants admit only that Exhibit F is a redacted copy of a December 18, 2014 email, without its attachments, sent to Plaintiff from OSARP. Defendants deny this Request to the extent it relies on allegations denied in Request 70.

72.     The December 18, 2014 OSARP email sent to Plaintiff did not include **Exhibit E** or its substance.

**RESPONSE:**

Defendants admit that the December 18, 2014 email described above as Exhibit F did not include the content of Exhibit E, as Exhibit E had not yet been received or reviewed in OSARP; Exhibit E was Plaintiff's impact statement not new evidence.

73.     The materials transmitted to Plaintiff as attachments to **Exhibit F** contained no explanation from Jane Roe as to why or how this so-called "new evidence" from her friend referenced above in Request Nos. 64-65 was related to the Charge against Plaintiff.

**RESPONSE:**

Deny.

74.     On December 22, 2014, at 2:31 p.m., as requested by **Exhibit F**, Plaintiff sent an email to OSARP to respond to the Appeal materials he received.

19

**RESPONSE:**

Defendants admit that on December 22, 2014, at 2:30 p.m., Plaintiff sent an email to OSARP to respond to the Appeal materials he received. Defendants deny the remaining allegations in Request Number 74.

75.     In support of his position, Plaintiff did submit a short statement from a JMU student who described the subsequent encounter referenced in paragraph 41 of the Amended Complaint where Jane Roe left Plaintiff's room upset when she found Plaintiff with another female in his room.

**RESPONSE:**

Admit.

76.     On December 22, 2014, after receiving Plaintiff's response, OSARP sent Plaintiff an email which cut and pasted information from Jane Roe's December 17, 2014 email, and told Plaintiff he must respond no later than December 23, 2014 at 5:00 p.m.

**RESPONSE:**

Defendants admit that on December 22, 2014, OSARP sent Plaintiff an email containing the content of Jane Roe's December 17, 2014 email and granted Plaintiff an extension through December 23, 2014 at 5:00 p.m. to finish his response. Defendants deny the remaining allegations in Request Number 76.

77.     The document attached as **Exhibit G** is a redacted copy of the December 22, 2014 OSARP email to Plaintiff regarding Jane Roe's additional Appeal statement.

**RESPONSE:**

Admit.

78.     Neither this email (**Exhibit G**) nor any other communication from OSARP to Plaintiff advised Plaintiff that he had the right to request more time to respond.

**RESPONSE:**

Admit.

20

79.     At some point on or after November 6, 2014 and before January 8, 2015, Jane Roe submitted to OSARP a copy of her typed written "Impact Statement" dated December 5, 2014, a three page statement from a licensed clinical social worker dated December 3, 2014, that describes the impact of alcohol use when also using a specific prescribed medication, and a one page prescription report from CVS.

**RESPONSE**:

Admit.


80.     The documents referenced above in Request No. 79 were additional "new evidence" that was considered by the Appeal Board in the Appeal.

**RESPONSE**:

Deny.


81.     None of the documents referenced in Request No. 79 were provided to Plaintiff before January 15, 2015.

**RESPONSE**:

Deny.


82.     At no time prior to January 15, 2015 was Plaintiff informed of the identity of the three persons appointed to serve on the Appeal Board.

**RESPONSE**:

Admit.


83.     Because Plaintiff was not aware of the identities of the members of the Appeal Board, he was unable to challenge the propriety of any of them sitting on that panel.

**RESPONSE**:

Deny.

21

84.    On more than one occasion, in writing and verbally, JMU employees advised Plaintiff that he had no right to appear before the Appeal Board.

**RESPONSE**:

Deny.


85.    The decision to deny Plaintiff the right to appear before the Appeal Board was made by, with the approval of, or was ratified by the Defendants.

**RESPONSE**:

Deny.


86.    The members of the Appeal Board were not informed that Plaintiff had been given three days to respond to Jane Roe's Appeal.

**RESPONSE**:

Deny.


87.    The members of the Appeal Board were not informed that Plaintiff did not have **Exhibit E** (Jane Roe's December 17, 2014 email) or **Exhibit G** (OSARP December 22, 2014 email) when he submitted his reply to the Appeal.

**RESPONSE**:

Deny.


88.    Defendant Warner began his review of the OSARP file on the Charge against Plaintiff before the Appeal Board convened on January 8, 2015.

**RESPONSE**:

Admit.


89.    Defendant Warner communicated with Defendant Alger regarding the Appeal during the period of December 8, 2014 to January 8, 2015.

22

**RESPONSE:**

Deny.

90.     Under the JMU Sexual Misconduct Policy in place on December 5, 2014, Defendant Warner was to have no direct role in acting on a sexual misconduct charge unless either a hearing panel or appeal board found the student responsible and recommended suspension or expulsion.

**RESPONSE:**

Admit.

91.     Plaintiff and all undergraduate students at JMU were required to be off campus during the period of December 12, 2014 to January 9, 2015.

**RESPONSE:**

Deny.

92.     JMU's spring semester started on January 12, 2015.

**RESPONSE:**

Admit.

93.     The members of Appeal Board for Jane Roe's Appeal had full authority to decide the merits of her Appeal on a *de novo* basis.

**RESPONSE:**

Deny.

94.     On January 8, 2015, the members of the Appeal Board met. They heard no live testimony. The members had before it all of the so-called "new evidence" submitted by Jane Roe, including the items referenced in Request Nos. 64, 65, 67 (**Exhibit E**) and 79.

**RESPONSE:**

23

Defendants admit that the members of the Appeal Board met on January 8, 2015. Defendants admit that the members of the Appeal Board did not hear live testimony. Defendants admit that the Appeal Board members had before it the complete OSARP file, including all evidence submitted by Jane Roe. Defendants deny the remainder of the allegations in Request Number 94.

95. Plaintiff was given no opportunity to appear before the Appeal Board to address the "new evidence" or Jane Roe's Appeal Statement of December 17, 2014.

**RESPONSE:**

Deny.

96. The members of the Appeal Board did not seek to contact Jane Roe's roommate who had been accused by Jane Roe's suitemate of intentionally lying to the Hearing Panel.

**RESPONSE:**

Admit.

97. At the end of its January 8, 2015 meeting, the Appeal Board completed the official JMU Appeal Board form and marked it as a case where the sanction was being "Increased."

**RESPONSE:**

Defendants admit only that at the end of the January 8, 2015 Appeal Board hearing, the Appeal Board completed a form titled "Appeal Action." Defendants deny the remaining allegations contained in Request Number 97.

98. The document attached to these requests as **Exhibit H** is a redacted copy of the from completed by the Appeal Board reflecting its decision on the Charge.

**RESPONSE:**

Admit.

24

99.    The Appeal Board did not record a finding that Plaintiff was "responsible" for sexual misconduct in the Appeal Board form or in any other document.

**RESPONSE:**

Deny.

100.    The Appeal Board provided no reasoning for its decision on the Charge in the Appeal Board form or in any other document.

**RESPONSE:**

Admit.

101.    No one at JMU provided Plaintiff with notice of the Appeal Board's decision prior to Defendant Warner's decision to act on the Appeal and impose the recommended sanction.

**RESPONSE:**

Defendants lack sufficient information to admit or deny the truth of the allegations contained in Request Number 101. Defendants have made reasonable inquiry and the information they know or can readily obtain is insufficient to enable it to admit or deny.

102.    Plaintiff was given no opportunity to appear before Defendant Warner before he acted on the Appeal Board's decision and recommendation.

**RESPONSE:**

Admit.

103.    On Friday January 9, 2015, Defendant Warner affirmed the decision of the Appeal Board and imposed an immediate suspension of Plaintiff, to run through June 2020.

**RESPONSE:**

Defendants admit that On Friday January 9, 2015, Defendant Warner affirmed the decision of the Appeal Board and imposed an immediate suspension of Plaintiff, to run through June 2020.

25

104. The sanction imposed on Plaintiff requires him to reapply for admission at the end of the suspension period if he wants to reenroll at JMU.

**RESPONSE:**

Admit.

105. On or about January 9, 2015, JMU sent an email to Jane Roe informing her that Plaintiff had been found responsible and suspended through June 2020.

**RESPONSE:**

Deny.

106. On January 15, 2015, JMU sent Plaintiff an email containing the "official" decision of the Appeal Board decision on January 8, 2015, and copied 24 different college departments. The document attached as **Exhibit I** is a redacted copy of this email.

**RESPONSE:**

Defendants admit that OSARP sent Plaintiff the email that is identified as Plaintiff's Exhibit I. Defendants deny the remainder of the allegations in this Request.

107. Dr. Warner and Dr. Bacon met with Plaintiff and his parents on January 21, 2015.

**RESPONSE:**

Admit.

108. At this January 21, 2015 meeting, Plaintiff provided information to rebut the "new evidence" provided by Jane Roe and asked that the decision be set aside and that he be permitted to return to JMU.

26

**RESPONSE:**

Defendants admit that Plaintiff asked that the decision be set aside and that he be permitted to return to JMU. Defendants deny the remainder of the allegations in Request 108.

109.    During this January 21, 2015 meeting, Defendant Warner admitted that he may have ruled differently had Plaintiff presented his exculpatory evidence with his appeal response.

**RESPONSE:**

Deny.

110.    As a result of the sanction imposed, Plaintiff was publicly banned from JMU's campus, except for permission granted so he could return for 2-3 hours on February 7, 2015, to retrieve his personal effects from his dorm room.

**RESPONSE:**

Defendants admit that as a result of the sanction imposed, Plaintiff was banned from JMU's campus except to retrieve his personal effects from his dorm room. Defendants deny that Plaintiff was "publically banned."

111.    As a result of the sanction imposed, Plaintiff was not allowed to enroll in the five classes he was preregistered to take at JMU during the spring 2015 semester, or to participate in other educational and training opportunities.

**RESPONSE:**

Defendants admit that as a result of the sanction imposed, Plaintiff was not allowed to participate in other education and training opportunities. Defendants deny the remainder of this request.

112.    The adverse finding and sanction upheld by Defendant Warner is now part of Plaintiff's permanent student record.

**RESPONSE:**

Admit.

27

113.    JMU has a practice of providing information about final disciplinary action taken against its students when a former or suspended student seeks to transfer to a new college or university and JMU receives a request from the other university for such information.

**RESPONSE:**

Deny.

114.    JMU is now required by state law, Va. Code § 23-9.2:18, to place a prominent notation on the academic transcript of any student who has been suspended, permanently dismissed, or has withdrawn while under investigation for an offense involving sexual violence.

**OBJECTION:**

Defendants object on the basis this request is not reasonably calculated to lead to the discovery of relevant information and is outside the scope of permissible discovery.

**RESPONSE:**

Defendants admit that JMU is now required by state law, Va. Code § 23-9.2:18, to place a prominent notation on the academic transcript of any student who has been suspended, permanently dismissed, or has withdrawn while under investigation for an offense involving sexual violence, but only those suspensions, permanent dismissals, or withdrawals occurring on or after July 1, 2015. Defendants deny that this code section applies to Plaintiff and deny that JMU is required to place a notation on his academic transcript as a result of his January 2015 suspension.

115.    The registrar of JMU will comply with this state statute when providing transcripts and educational records of Plaintiff in the future.

**OBJECTION:**

Defendants object on the basis this request is not reasonably calculated to lead to the discovery of relevant information and is outside the scope of permissible discovery.

**RESPONSE:**

28

Defendants deny this Request because the statute cited does not apply to Plaintiff's suspension in this case.

116.    In connection with any request to transfer from one state-funded university in Virginia to another, Plaintiff must in all cases authorize the new university to obtain a copy of his academic transcript from JMU if he seeks admission as a transfer student.

**OBJECTION:**

Defendants object on the basis this Request is confusing and unclear.

**RESPONSE:**

Defendants admit only that Plaintiff must authorize JMU to release his academic transcript to a specific college or university prior to JMU releasing Plaintiff's transcript to such college or university. Defendants deny the remainder of Request 116.

117.    When applying for admission at another Virginia college or university, Plaintiff will be required to complete the Common Application.

**OBJECTION:**

Defendants object on the basis this request is not reasonably calculated to lead to the discovery of relevant information and is outside the scope of permissible discovery. Defendants object as Plaintiff has neither sufficiently identified nor attached the "Common Application" referenced.

**RESPONSE:**

Deny.

118.    The Common Applications asks applicants if they have ever been charged with, or subject to, disciplinary action including suspension or expulsion for any type of misconduct at any college or university that they have previously attended.

**OBJECTION:**

29

Defendants object on the basis this request is not reasonably calculated to lead to the discovery of relevant information and is outside the scope of permissible discovery. Defendants object as Plaintiff has neither sufficiently identified nor attached the "Common Applications" referenced.

**RESPONSE**:

Deny.

119.    Plaintiff will be required to disclose as part of the applications to transfer to new universities or colleges the existence and details of the disciplinary action taken against him at JMU.

**OBJECTION**:

Defendants object on the basis this Request calls for speculation. Defendants further object on the basis this Request is vague and overly broad. Plaintiff has not identified any specific applications or identified the universities or colleges.

**RESPONSE**:

Deny.

120.    In connection with applications for employment in the future, some employers will require Plaintiff to provide a copy of his academic transcript.

**OBJECTION**:

Defendants object on the basis this Request lacks foundation and calls for speculation. Defendants further object on the basis this Request is vague and overly broad.

**RESPONSE**:

Deny.

121.    In connection with applications for employment in the future, some employers will inquire whether Plaintiff was subjected to disciplinary action or was suspended or expelled from colleges or universities he has attended, including JMU.

30

**OBJECTION:**

Defendants object on the basis this Request lacks foundation and calls for speculation. Defendants further object on the basis this Request is vague and overly broad.

**RESPONSE:**

Deny.

31

JONATHAN ALGER
and
MARK J. WARNER

By: _____
Counsel

Mark R. Herring
Attorney General of Virginia

Rhodes B. Ritenour
Deputy Attorney General

Ronald N. Regnery
Senior Assistant Attorney General/Trial Section Chief

Nicholas F. Simopoulos
Assistant Attorney General/Trial Section Unit Manager

Nerissa N. Rouzer (VSB No. 79002)*
Assistant Attorney General
Office of the Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
(804) 786-5746
(804) 371-2087 (fax)
nrouzer@oag.state.va.us
* *Counsel of Record*

32

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of January, 2016, the foregoing was sent via email and

U.S. Mail to:

W. David Paxton (VSB No. 19798)
Bradley C. Tobias (VSB No. 88046)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
Roanoke, VA 24011
(540) 983-9300
paxton@gentrylocke.com

tobias@gentrylocke.com

and by email to:

Michael E. Rosman
Michelle A. Scott
CENTER FOR INDIVIDUAL RIGHTS
1233 20th Street, N.W., Suite 300
Washington, D.C. 20036
(202) 833-8400
rosman@cir-usa.org
scott@cir-usa.org

33