IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

-------------------------------------------------------------------x

JOHN DOE,

      Plaintiff,

v.

                        Case No. 5:15-cv-00035-EKD

JONATHAN R. ALGER, President of James Madison
University, sued in his official capacity, and

MARK J. WARNER, Senior Vice President of Student
Affairs for James Madison University, sued in his
official capacity,

      Defendants,

-------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM REGARDING REMEDIES

Pursuant to this Court's Order (Dkt. No. 154), Plaintiff John Doe ("Plaintiff") submits this

Memorandum and Six (6) Exhibits in support his request for equitable relief. In this case the

Court has held the Defendants violated Plaintiff's constitutional right to due process when he was

"expelled" as a student from James Madison University, a state-supported university ("JMU"), for

sexual misconduct. Dkt. No. 153 (Mem. Op., at 24, n. 12)

## INTRODUCTORY STATEMENT

Courts universally recognize the significant adverse impact that a suspension or expulsion

has on a student.[1] This is especially true when the disciplinary action taken is based on a finding

---

[1] *See Gross v Lopez*, 419 U.S. 565, 575 (1975) (10 day suspension); *Dixon v Ala. State Bd. of Education,* 294 F.2d

21499/1/7866626v5

of sexual misconduct produced by a deeply flawed process found to be fundamentally unfair and constitutionally deficient. In *Doe v Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 614. n.9 (E.D. Va. Feb. 25, 2016) (*Doe v GMU I*), Judge Ellis noted that the likelihood that disciplinary action of this nature will interfere with later opportunities for higher education and employment is "so clear as to almost be a truism."

JMU's actions have caused Plaintiff to live this harsh reality. He was forced to put his life on hold for a significant period of time, to adjust and adapt his educational and career goals at great expense and then to engage in a costly legal battle to vindicate his constitutional rights. The loss of his property interest in continued enrollment affected not only his right to take classes at JMU as an in-state student and to participate in other important university-sanctioned programming, but has had and continues to have a broad and continuing impact on him.

On the late afternoon of January 9, 2015, Plaintiff was getting into the car to drive back to Harrisonburg to start the second semester of his freshman year at JMU when he received a telephone call from JMU notifying him that he had just been suspended for 5 ½ years, "effective immediately." Formal written notice of JMU's decision followed a week later, and it advised him that JMU was taking additional punitive actions against him, specifically that: (i) he was banned from coming onto any part of the JMU campus and threatened with criminal trespass charges if he returned, (ii) he would need to apply and be found eligible for readmission in June, 2020 if he sought to return as a student, (iii) he was required to demonstrate satisfactory completion of

---

150, 157 (5th Cir. 1961); *Henson v Honor Comm. of Univ. of Va.,* 719 F.2d 69, 74 (4th Cir. 1983); *Jones v. Board of Governors of University of North Carolina*, 704 F.2d 713, 716 (4th Cir. 1983). (As the district concluded, "…[the student] will obviously suffer irreparable injury" when she is barred from taking classes and delaying her entry into

2

various remedial classes as a precondition to applying for readmission, and (iv) if readmitted to JMU it would be on the condition that he would be banned from participation in Greek life. Ex. 1 (Dep. Ex. 15).

After spending the next month attempting without success to persuade JMU to overturn its disciplinary action by pointing to the unfairness and flaws in the "appeal" system used to overturn the original decision which had exonerated him, Plaintiff was forced to file this suit to vindicate his constitutional rights. After two years of hard fought litigation, he has won.

The harm to be addressed arises from a situation where Plaintiff, after a full evidentiary hearing, was found "not responsible" for the alleged sexual assault. He was then subjected to a trial *de novo* in the guise of an "appeal" by his accuser, Jane Roe. Noting the "fundamental unfairness" of this so-called appellate process, this Court focused on several key aspects[2] of JMU's disciplinary process:

- The Appeal Board gave no deference to the initial hearing board's decision in Plaintiff's favor and reversed that decision without any explanation, without ever expressly finding Plaintiff responsible for sexual misconduct, and while possibly applying an incorrect standard regarding consent. (A key issue in the underlying case.) Mem. Op. at 13, 26.

- The Appeal Board made its decision without hearing any live testimony, even though a new issue of credibility had arisen. It also considered additional evidence submitted against Plaintiff, some of which was not provided to him until after the final decision was made. *Id*. at 26.

---

the working world).

[2] The Court noted that Plaintiff raised other procedural irregularities, such as the gender balancing criteria used to select members of the Appeal Board and JMU's failure to notify Plaintiff of member's identities so they could be challenged, and ruled it was not necessary to reach these issues given the many other fundamental flaws found to exist. (Dkt. No. 153, Mem. Op. at 25, n.14)

3

21499/1/7866626v5

- Plaintiff was denied any meaningful ability to contest the new claim that Roe's roommate had lied. JMU's policies prohibited Plaintiff from contacting her and this rule was repeatedly reinforced as he was threatened with severe sanctions for its violation. Despite the absence of any check or balance, the Appeal Board simply accepted the unsworn typed statement of Roe's suitemate claiming the roommate had lied without ever hearing from the roommate or questioning the suitemate. *Id*. at 27

- Next, the Plaintiff was given no notice of or chance to respond to a three-page statement written by a licensed clinical social worker regarding effects of mixing Prozac and alcohol that was given to and considered by the Appeal Board. *Id*. at 28.

- Plaintiff lacked any meaningful opportunity to contest or respond to new information contained in Roe's supplemental appeal statement regarding a voice mail message. The Appeal Board mistakenly believed that Plaintiff had received and reviewed this information prior to filing his appeals response. *Id*.

- Last, Defendant Warner affirmed the Appeal Board decision, including its sanction, without any notice to or input from Plaintiff. *Id*. at 15.

The procedural irregularities here are not a few minor technical mistakes that can be fixed by some form of a new disciplinary proceeding. The fundamental flaws in JMU's disciplinary process calls out for meaningful equitable remedies that (a) will come as close as possible to restoring Plaintiff to the position he was in as of December 5, 2014, when he was found not responsible as to Jane Roe's allegation of sexual misconduct, and (b) will establish an incentive for JMU and other public, state funded universities to refrain from violating the due process rights of their students in sexual misconduct proceedings, so that these institutions do not come to believe that blatant constitutional violations can be cured years later simply by providing more or additional process, in other words a "do-over."

4

21499/1/7866626v5

Unfortunately, it is not possible to completely restore Plaintiff to his pre-violation status because much of the damage suffered simply cannot be undone. For example, this Court cannot give Plaintiff back the lost time, or award him compensatory damages due to sovereign immunity principles. Accordingly, based on the Court's December 23, 2016 liability ruling that JMU's disciplinary process violated Plaintiff's constitutional rights when he was "expelled,"[3] Plaintiff submits that the following relief is both appropriate and necessary to do equity and remedy the wrongs Plaintiff has suffered and continues to suffer as a direct consequence of the constitutional violation:

- An order that expressly declares that Defendants, in their official capacities, violated and continue to violate Plaintiff's constitutional right to due process by the disciplinary process used that resulted in his 5 ½ year suspension and his ban from access to campus.

- An order that directs Defendants to vacate the adverse findings and sanction decisions made by Defendant Warner and the Appeal Board in January, 2015 and that directs JMU to grant Plaintiff the right to reinstatement as an undergraduate student in good standing at a time of his chosing.

- An order that directs Defendants to cause a search of all records maintained by JMU to locate documents that reference either the adverse finding of sexual misconduct or the tainted disciplinary action taken against Plaintiff. For example, on January 15, 2015, Defendants caused a letter (Ex. 1 (Dep. Ex. 15)) to be sent by email to 24 departments at JMU notifying them that Plaintiff had been suspended for sexual misconduct through June, 2020 and that Plaintiff was not permitted on campus without prior authorization. Further, in addition to official records maintained in JMU's Office of Student Accountability and Restorative Practices ("OSARP"), Plaintiff learned in April, 2015 that JMU's Office of Residence Life maintains a separate report

---

[3] Plaintiff shall also seek an award of attorney fees and costs once judgment is entered. 42 U.S.C.§1988; Fed.R.Civ.P. 54(d)(2).

21499/1/7866626v5

containing the adverse finding and sanction at issue here as well many specific details of the alleged underlying sexual misconduct. Ex. 2 (Dep. Ex. 8). Upon completion of this search, which should be completed no more than 30 days, the order shall direct Defendants to expunge all such records related to this matter and to report back to the Court when its work has been accomplished. An exception to this expungement order shall be the December 5, 2014 finding of the original hearing panel which JMU shall retain as the final word on Jane Roe's charge against Plaintiff. Ex. 3 (Dep. Ex. 61).

- An order that directs Defendants to vacate and release the no trespass order that was issued against Plaintiff in January, 2015, so that it is clearly established the Plaintiff has the unrestricted right to come onto the JMU campus just like any other member of the public or invited guest. If Plaintiff chooses to re-enroll as a JMU student, then he shall be granted access to all parts of the campus open to any other student.

- A permanent injunction that prohibits Defendants or JMU from allowing any further appeal, or the taking of any other process to reconsider or overturn, the December 5, 2014 decision that found Plaintiff "not responsible" for the sexual assault alleged by Jane Roe, whether or not Plaintiff elects to re-enroll as a JMU student.

- A permanent injunction that prohibits the Defendants, and all other JMU employees with knowledge of Roe's allegations, the disciplinary process used or the tainted disciplinary action taken against Plaintiff, from disclosing any information or documents to a third party that reflect or relate to any disciplinary proceedings involving Plaintiff or Jane Roe. The one exception shall be, if Plaintiff makes a written request for the disclosure of his records, then Defendants, their successors or their designees shall release a copy of the December 5, 2014 "not responsible" finding along with a statement by Defendant Warner or his successor that there are no other records of any disciplinary action taken against Plaintiff by JMU.

- A permanent injunction that prohibits Defendants and other JMU employees who had direct involvement with the disciplinary process against Plaintiff (including those who were deposed in this action) from engaging in or encouraging others to engage in any form of

6

21499/1/7866626v5

retaliation against Plaintiff because of this action, and that disqualifies these individuals from having any involvement in any future disciplinary proceedings initiated against Plaintiff if he elects to re-enroll as a JMU student.

- A permanent injunction that prohibits Defendants or the same JMU employees, <u>if Plaintiff elects not to return to JMU as a student</u>, from processing or conducting any disciplinary proceedings on allegations of sexual misconduct or other alleged violations of JMU policy against Plaintiff asserted by any JMU student for acts that allegedly occurred prior to January 9, 2015. This injunction prevents JMU from changing its policy of not processing charges of misconduct against an individual who is not currently enrolled as a student as it relates to Plaintiff.

There can be no doubt that the cost side of pursuing the vindication of his constitutional right has been extraordinarily heavy. This case, in which there were only a few motions involving discovery disputes and during which the parties' attorney's enjoyed a very cooperative relationship, took a full twelve (12) months to develop the record where cross-motions of summary judgment could be presented on May 19, 2016. From filing of the complaint it took one year, seven months, and twelve days just to establish liability in this case, and to reach this moment where remedies can now be discussed.

Similarly each of the following cases, where sexual misconduct proceedings were challenged (decided after January, 2015) demonstrate that this case is not unique when it comes to litigating campus sexual misconduct cases to the point of a favorable outcome for the accused. In short, these cases take a long time and generate significant costs.

7

21499/1/7866626v5

| Case | Date Filed | Disposition | Length of Case in District Court |
|------|-----------|-------------|----------------------------------|
| *Tanyi v. Appalachian State Univ.*, Case No. 14-cv-170 (W.D. N.C.) | 10/17/2014 | Settled following Motion to Dismiss | Eleven (11) months, five (5) days |
| *Doe v. Salisbury University*, Case No. 14-cv-03853 (W.D.M.D.) | 12/10/2014 | Settled following Motion to Dismiss | One (1) year |
| *Doe v. Washington & Lee Univ.*, Case No. 14-cv-0052 (W.D.V.A.) | 12/13/2014 | Settled following Motion to Dismiss | One (1) year, one (1) month, thirty (30) days |
| *Doe v. George Mason Univ.*, Case No. 15-cv-2009 (W.D.V.A.) | 2/1/2015 | Summary Judgment for the Plaintiff | One year (1), three (3) months and fourteen (14) days |

The substantial costs of litigating these cases make the availability of robust remedy all the more important.[4] As noted below, sovereign immunity and qualified immunity (especially in this relatively unsettled area of the law) almost always bars the wrongfully expelled students from recovering monetary damages. As a result, other than attorney's fees, declaratory or injunctive relief is typically the only relief available to the wrongfully accused student.

If the only injunctive relief a wrongfully accused student can expect to receive after a long and costly litigation is a mere "do-over," then students and their attorneys will be extremely hesitant to bring actions to vindicate their rights even when the due process violations are clear. In most cases, the accused student is engaged in a classic David versus Goliath battle. Such hesitancy will be understandable since the government has far superior resources and has the

---

[4] By way of example, in *Doe v. George Mason*, 2016 U.S. Dist. LEXIS 80947 (E.D. Va. June 21, 2016), after the Court granted equitable remedies only, Plaintiff was also awarded attorney's fees of $277,864.45 and costs of $667.00 for a total award of $278,531.45, in a case with no discovery motions and a total of only four (4) depositions. In this

8

ability to endure long litigation, while a young person needs to avoid putting his/her life on hold during protracted litigation. Given that immunity shields public universities and their employees from monetary damages, to merely limit equitable relief in these cases to a "do-over" will mean that innocent students will continue to be unlawfully expelled and those unlawful expulsions will go unredressed.

## PROCEDURAL HISTORY

Plaintiff filed this action on May 11, 2015, three months after efforts to resolve the issues with JMU without litigation. On July 17, 2015, Plaintiff filed an Amended Complaint to clarify a number of facts (Dkt. No. 30). In response, Defendants renewed their Motion to Dismiss and a Motion for More Definite Statement (Dkt. No. 31, 32). Defendants also elected not to file an Answer to the Amended Complaint while their Motion to Dismiss was pending. Following a hearing on the Motion to Dismiss, the Court entered a Scheduling Order (Dkt. No. 45) which set a three day jury trial date starting June 15, 2016. Two days later (October 7, 2015), Plaintiff served the first set of written discovery requests in order to ascertain Defendants' position regarding the facts since no Answer had been filed.

Counsel for parties worked cooperatively in discovery to minimize disputes, but a number of relevant documents to be produced by Defendants were subject to FERPA protection, and this required extensive motions and multiple hearings with the magistrate judge. Likewise, Plaintiff was required to preserve, collect and produce ESI all at significant time and expense. On

---

case there were fourteen (14) depositions.

21499/1/7866626v5

December 15, 2015, the Court moved back the start of the trial to begin July 6, 2016 (Dkt. No. 64) to accommodate FERPA discovery delays. With the Court's cut-off of discovery set for 95 days prior to trial, the parties then began taking depositions in this case starting on March 1, 2016. Plaintiff took 11 depositions in March. He engaged expert witnesses and on March 7, 2016, disclosed the report for the expert expected to testify at a trial. Defendants took the depositions of Plaintiff and both of his parents, but not the expert.

On March 31, 2016, the Court substantially denied the Defendants' Motion to Dismiss, except as to the liberty interest claim (Dkt. No. 102) and granted Plaintiff's Motion to proceed by pseudonym. (Dkt. No. 100) On April 14, 2016, Defendants for the first time filed their Answer to the Amended Complaint, and four (4) days later (on April 18, 2016) the parties filed cross motions for summary judgment, memoranda and voluminous supporting exhibits. A three hour hearing on the summary judgment motions was held on May 19, 2016. On June 2, 2016, the trial date was pushed back to start on November 16, 2016 (Dkt. No. 131) and thereafter continued indefinitely.

## FACTS RELEVANT TO REMEDIES

The facts underlying this litigation have been set forth in detail in prior papers and the Court's Memorandum Opinion so they will not be repeated here. Rather, only the facts necessary to support the proposed remedy will be outlined.

Plaintiff was accused of sexual misconduct during the first semester of his freshman year at JMU. There was a full evidentiary hearing in which the triers of fact saw, and heard from, live

10

witnesses and asked them questions. After a long hearing and careful deliberation, the panel concluded that Plaintiff was "not responsible." Subsequently, an Appeal Board concluded, without offering reasons, that Plaintiff's (until that point non-existent) sanction should be increased. Dkt. No. 115-2, Request To Admit ("RTA") Nos. 97- 98 & Ex. H. The Appeal Board concluded that there should be a "new sanction" of immediate suspension from JMU "through Spring Semester, 2020." *Id.* On January 9, 2015, Defendant Warner reviewed and summarily affirmed this sanction.

As noted in the Introduction, the Appeal Board recommended and Defendant Warner imposed several additional punishments associated with the increased sanction. First – and somewhat contrary to the notion of a "suspension" – Plaintiff had to reapply for admission if he wanted to enroll after the suspension had been completed. Dkt. No. 115-2, RTA 104. Second, with respect to the Appeal Board's "education" sanction, he was required to "provide documentation" of a "formal" education/counseling program on sexual assault and misconduct. *Id.*, RTA 106 & Ex. I. Third, Plaintiff could not visit the JMU campus without permission from OSARP, and he was told that he would be subject to arrest for trespassing if he did enter the campus without permission. *Id.* In this aspect, students suspended from JMU are in a position worse than the general public. Parts of JMU's campus are generally open to the public and it often hosts events that are open to the public. Ex. 4 (Alger Dep. Tr. 22-26); https://www.jmu.edu/planetarium/star-parties.shtml (advertising monthly "star parties" open to the public) (last accessed on January 11, 2017). Finally, Plaintiff's suspension was imposed "through June 2020." Dkt. No. 115-2, RTA 103.

11

Case 5:15-cv-00035-EKD-JCH Document 160 Filed 01/23/17 Page 11 of 34 Pageid#: 2683

Immediately after being notified of the disciplinary action, Plaintiff and his parents engaged counsel and initiated a dialogue with JMU officials, including Defendant Warner, seeking to rectify the fundamentally unfair process used to arrive at this result. Pl's Memo. in Supp. of Mtn. for Summ. Judgment, Att. C, Decl. of John Doe ¶ 97-98, (Dkt No. 115-26). These efforts involved numerous phone calls, emails, and in-person meetings by Plaintiff and Defendant Warner and Josh Bacon on January 21, 2015. On that same day, counsel for Plaintiff and JMU met to discuss both the underlying facts and the due process shortcomings of the "appeal" process. Ultimately, on February 3, 2015, JMU communicated that the January 9, 2015 decision was final. On February 7, 2015, Plaintiff returned to campus to retrieve his personal belongings from the dorm.

On January 15, 2015, OSARP sent a copy of his "official" suspension letter (Ex. 1, Dep. Ex. 15) by email to 24 different Departments on the JMU campus advising each of them that Plaintiff had been suspended for sexual misconduct and he was not allowed back on campus. The distribution list on this letter was a pre-set list and many of the individuals who received this letter were unknown to Plaintiff and he had no involvement with their departments. Plaintiff also learned later that the Office of Resident Life retained a detailed record of the underlying allegations that now incorporated the subsequent disciplinary actions and finding against him by the Appeal Board.

Plaintiff spent the better part of the first six months in 2015 trying to come to grips with the disruption of his educational and career plans. By mid-summer, 2015, he elected to try and mitigate these losses by restarting his pursuit of a college degree. He applied and was admitted to

12

an out-of-state university as a first semester freshman in August, 2015. By this point, JMU's actions had caused him to lose his entire freshman year; and to fall at least one year behind his peers. He elected to accept this offer of admission and enrolled as a freshman at this out-of-state university in August, 2015.

As a Virginia resident, Plaintiff has been, and continues to be, required to pay out-of-state tuition to attend this university, and this tuition is significantly higher than what he would have paid as an in-state student had he remained at JMU. He is in good standing at this out-of-state university, but the costs of attendance, and not just the tuition differential (but many other costs) have been a significant burden for him to carry.

Plaintiff has recently commenced the spring semester at this out-of-state university which runs through May 12, 2017. Notwithstanding his efforts to mitigate the impact of JMU's unconstitutional actions, Plaintiff still desires to have his right to be reinstated at JMU established so that he will have the right to return to JMU and enroll after the current semester ends. Whether Plaintiff chooses to exercise that right to re-enroll at JMU is his decision to make and will be based on a consideration of all the circumstances that exist at that time.

At this point, more than two years later, counsel for Plaintiff has been informed that neither Jane Roe's former suitemate who accused the roommate of lying at the December 5 hearing, nor the former roommate are enrolled as students at JMU. JMU has no ability to compel these former students to testify in any future hearing on Roe's charge. More important, JMU has not changed its disciplinary policies to allow the Plaintiff to contact either the former roommate or the suitemate, and he too has no ability to compel their attendance.

13

As far as Plaintiff has been able to determine, JMU follows certain procedural rules, which were not at issue in his due process claim, but which now are relevant as the Court considers remedies. Ex. 5 (JMU's Sexual Misconduct Policy, *available at* https://www.jmu.edu/ osarp/handbook/OSARP/sexual-misconduct-accountability-process.shtml). First, JMU's Sexual Misconduct Policy does not impose any statute of limitations for filing a claim. This means that a student can bring a charge of alleged sexual misconduct at any time. The only practical limitation that exists is that if a charge is brought against an individual who is no longer a student at JMU. In that situation it has been JMU's practice to accept, but not process that charge since it has no jurisdiction over the student accused. Ex. 6, (Ehrhart Dep. Tr. at 186). Prior to July 1, 2015, if a student accused of sexual misconduct withdrew from JMU while a charge was pending, but before a determination on the merits of the charge, the disciplinary process was immediately suspended and no further actions were taken. As of July 1, 2015, under Virginia Code Section §23.1-9.2:18, JMU is now required to make a notation on the withdrawing student's permanent academic record that he has withdrawn with a sexual misconduct charge pending against him. Throughout these proceedings JMU has taken the position that this new Virginia statute has no application to the Plaintiff or the proceedings to date because the proceedings were concluded before the effective date of this statute.

After Plaintiff initiated this lawsuit, JMU made several changes to its disciplinary process for resolving allegations of sexual misconduct. *Id.* Plaintiff does not know the exact date when the changes reflected in Ex. 5 were implemented, but JMU has changed the following procedures which Plaintiff challenged in this case: (i) students are given more time to file and respond to an

14

appeal, (ii) JMU now gives the names of Appeal Board members to the student and allows challenges to their service, (iii) in cases alleging "new evidence" as a basis for appeal the accused now has the right to be present and the Appeal Board can hear live evidence. Nonetheless, several provisions which contributed to this Court's finding that due process was denied remain unchanged. Just by way of example:

- The Appeal Board is still not required to give any deference to an initial decision in favor of an accused student when evaluating an appeal by an accuser and is free to make a *de novo* decision.

- The Appeal Board is not required to provide a written explanation of its decision, even if it elects to overturn a favorable ruling for the accused student or to substantially increase the sanction awarded.

- JMU continues to select members to serve on Appeal Board panels by using gender balancing criteria.

Last, all of the key players at JMU involved in the Plaintiff's disciplinary process are still employed by JMU. Defendant Warner continues to serve as the Senior Vice President of Student Affairs, Dr. Josh Bacon has since been promoted to Dean of Students, Wendy Lushbaugh has assumed Bacon's former role as the Director of OSARP, R.J. Ohgren continues to serve at OSARP, and Amy Sirocky-Meck has assumed significant new responsibilities as JMU's Title IX Officer for Students. All of these individuals were deposed during this case, and many of them were openly hostile to the Plaintiff and his challenge to the fairness of the procedures used and the erroneous outcome it produced.

## ARGUMENT

I.     THIS COURT HAS BROAD EQUITABLE POWERS TO REMEDY THE ADVERSE

15

EFFECTS OF THE CONSTITUTIONAL VIOLATION OF PLAINTIFF'S RIGHTS

Section 1983 provides that a person who "subjects, or causes to be subjected" another to a violation of any right secured by the Constitution "shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. Here, Plaintiff's complaint seeks declaratory and injunctive relief and thus calls upon this Court's broad equitable powers to fashion appropriate remedies in light of its ruling on December 23, 2016.

The Supreme Court has repeatedly emphasized, when reviewing equitable decrees fashioned to address constitutional violations, that the principles of practicality and flexibility, rather than a strict adherence to rigid rules must guide the analysis:

> In shaping equity decrees, the trial court is invested with broad discretionary power
> . . . . Moreover, in constitutional adjudication as elsewhere, equitable remedies are
> a special blend of what is necessary, what is fair and what is workable.
> Traditionally, equity has been characterized as a practical flexibility in shaping its
> remedies and by a facility for adjusting and reconciling public and private needs . .
> . . In equity, as nowhere else, courts eschew rigid absolutes and look to the
> practical realities and necessities inescapably involved in reconciling competing
> interests . . . .

*Lemon v. Kurtzman,* 411 U.S. 192, 200-01 (1973) (plurality opinion) (citations and internal quotation marks omitted).

The infringement of constitutional rights affects more than just the interests of parties in litigation; there is also a substantial public interest at stake in these cases. *See*, *e.g. Swann v. Charlotte-Mecklenburg Bd. Of Ed.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *id.* at 15-16 ("The task is to correct, by a balancing of the individual and collective interests, the condition that offends the

16

Constitution.")

The need to consider these "collective interests" is especially true here because the public has a substantial interest in insuring that public universities do not violate due process rights of their students. There is a raging nationwide debate over how best to protect the due process rights of college students accused of sexual misconduct, and this decision is now part of this ongoing discussion.[5] This Court can and should take this collective interest into account when fashioning an appropriate remedy. *See E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 826 (4th Cir. 2004) ("As the Supreme Court has said, courts of equity may go to greater lengths to give relief in furtherance of the public interest than they are accustomed to go when only private interests are involved. (*quoting Va. Ry. Co. v. Sys. Fed'n Mo.* 40, 300 U.S. 515, 52 (1937).")

Here, the denial of due process is a constitutional wrong. Various sanctions and harms have emanated from that wrong, and those harms are the "condition that offends the Constitution." *Swann*, 402 U.S. at 15. In fashioning equitable relief for this constitutional wrong and the harms flowing therefrom, this Court has quite broad powers. *Doe v. George Mason University*, 149 F. Supp. 3d 602, 624 (E.D. Va. Feb. 25, 2016) ("*Doe v. GMU I*") ("[A]s the Fourth Circuit has explained, '[o]ne of the glories of equity jurisprudence is that it is not bound by the strict rules of the common law, but can mold its decree to do justice amid all the vicissitudes and intricacies of life.' Thus, it is clear that a remedy must be shaped to do justice on the specific facts of the instant case.") (*quoting Bowen v. Hockley*, 71 F.2d 781, 786 (4th Cir. 1934)).

II.     THIS COURT MUST ENTER AN ORDER THAT DECLARES ITS FINDINGS

---

[5] *See, e.g.,* K.C. JOHNSON & STUART TAYLOR, JR., THE CAMPUS RAPE FRENZY: THE ATTACK ON DUE PROCESS AT AMERICA'S UNIVERSITIES (January, 2017); ROBERT L SHIBLEY, TWISTING TITLE IX (September, 2016).

21499/1/7866626v5

AGAINST DEFENDANTS, THAT VACATES THE ADVERSE FINDING AND SANCTION WHICH ARE THE PRODUCT OF THE FLAWED PROCESS, THAT GRANTS THE PLAINTIFF THE RIGHT TO BE REINSTATED, THAT EXPUNGES JMU'S RECORDS WHICH REFERENCE THE FLAWED FINDING AND SANCTIONS, AND THAT VACATES THE NO TRESPASS DIRECTIVE.

Given this Court's finding of liability, it is axiomatic that this Court must enter an order that invalidates the unconstitutional adverse finding and suspension and redresses its effects. *Doe v George Mason Univ.,* 179 F. Supp.3d 583, 588 (E.D. Va. Apr. 14, 2016) (*"Doe v GMU II"*) (explaining that an adverse finding and sanctions which result from an unconstitutional act serve no valid purpose and directing their removal imposes no hardship on anyone). Accordingly, to reverse the unconstitutional act and its effect, a Court Order that provides the following relief is required:

(1) declares that the Defendants, in their official capacities, subjected Plaintiff to a disciplinary process and an ongoing suspension that has violated, and continues to violate his right to procedural due process under the Fourteenth Amendment, and enters judgment thereon,

(2) vacates the action taken by the Appeal Board and Defendant Warner,

(3) declares and grants the Plaintiff's reinstatement to JMU without having to meet any of the preconditions imposed by the suspension, and permits his enrollment or withdrawal, at his option, as a student in good standing,[6]

(4) directs Defendants to conduct a prompt search for all records that it maintains which contain a reference to the unconstitutional adverse finding or the suspension and then orders Defendants to expunge those records; and

---

[6] Further if Plaintiff elects to withdraw it shall be deemed to have occurred as of December 12, 2014 when the 2014

18

21499/1/7866626v5

(5) directs Defendants to vacate the "no trespassing" directive issued against Plaintiff on January 15, 2015 so that he shall be permitted to have access to and enter upon the campus like any other member of the public or invited guest.

The Court's Order of December 23, 2016 (Dkt. No. 154), grants the Plaintiff's motion for summary judgment as to liability, but no order of judgment in Plaintiff's favor and against the Defendants Alger and Warner in their official capacities, and no order declaring that Defendants have violated and continue to violate Plaintiff's constitutional right to receive due process, has yet been entered. The request for an order reflecting these actions is more than a formality, it is a requirement under Rule 58 of the Federal Rules of Civil Procedure. It is unclear how Defendants can oppose this requested relief.

Next, there is no dispute that the adverse finding made and the sanctions imposed by Defendant Warner as determined by the Appeal Board in January, 2015 were a direct consequence of the improper appeal procedures used as described above. As noted by Judge Ellis, it is hard to dispute that a court should set aside the adverse finding and sanctions resulting from a constitutional error since this relief has no adverse impact on anyone. *Doe v. GMU I*, 149 F. Supp. 3d at 624-25 (holding that, where plaintiff was expelled for sexual misconduct pursuant to procedures that violated the constitution, "there can be no doubt that it is appropriate here to vacate the decisions of defendants . . . and to order that plaintiff be reinstated as a GMU student in good standing. Indeed, defendants do not appear to contest this.").

Accordingly, to do equity at the most rudimentary level, Defendants must be ordered to

---

fall semester ended at JMU and the notice/disclosure requirements of Va. Code §23.1-9.2:18 shall not apply.

19

vacate the adverse finding and the sanction along with all of its conditions. This means that JMU's "reapplication conditions" (requiring Plaintiff to reapply for admission if he wishes to take classes), its "reeducation condition" (requiring Plaintiff to go through a "formal" education program in sexual assault and misconduct and to submit written evidence of his completion of that program), and its "Greek prohibition" (precluding Plaintiff from "Greek involvement or functions") which were all part and parcel of the suspension JMU imposed, must be vacated. Further it necessarily means that the Court must also declare that Plaintiff has the right to reinstatement as a JMU student without having to meet any of preconditions which were part of unconstitutional suspension. The choice of whether he will re-enroll at JMU as a student in good standing is one that he should be permitted to make given all that has occurred over the past two years. Plaintiff requests that he be given until the later of June 15, 2017, or 45 days from the entry of this Court's order to make this election.

The next form of requested relief addresses the numerous records maintained by JMU that reference the unconstitutional adverse finding and the sanction. It is part of his permanent record, (Dkt. No. 115-2, RTA 112.), but as noted above, these records exist in many other locations within JMU as well. Defendants should be required to search for, collect and then expunge these records that reference flawed appeal, and the unconstitutional adverse finding and sanctions. Once again, Judge Ellis' ruling in *Doe v. GMU II* that "any reference to his . . . expulsion on misconduct grounds must be expunged from his educational records" should be followed here. 179 F. Supp. 3d at 587. If there is doubt about whether this rule should apply here, Judge Ellis's reasoning is instructive:

20

The reason for this is straightforward and not contested by GMU. Simply put, the burden imposed on defendants in this regard is slight, and given the nature of the charges it is important to order a remedy that removes any stain on plaintiff's reputation and allows plaintiff to complete his education at GMU, if he chooses. Nor can reinstatement and expungement be said to disserve the public interest; to the contrary, leaving in place a wrongfully imposed sanction and the record of such is plainly contrary to the public interest.

*Doe v. GMU II,* 179 F. Supp. 3d at 587-588.

The remedy of expungement of records that reflect unconstitutional acts is not a novel one. *See Owner-Operator Independent Driver Ass'n, Inc. v. Dunaski*, 763 F. Supp. 2d 1068, 1083 (D. Minn. 2011) (holding that commercial truck driver was entitled to an expungement of record of an out-of-service order for fatigue following a roadside inspection where procedures related to the order violated due process; "The Court has concluded that [commercial truck driver] did not suffer any damage, but the Court has ordered the expungement of his record.").

To be clear, Plaintiff's request for expungement does not extend to Ex. 3, the record maintained by JMU that reflects the original finding of "not responsible" rendered on December 5, 2014 following a full evidentiary hearing which substantially comported with the requirements of due process. This document, Ex. 3 (Dep. Ex. 61), should continue to be part of Plaintiff's permanent record at JMU, in order that JMU will have an official record that establishes that Plaintiff was vindicated on the allegation that he sexually assaulted Jane Roe. This request ties into the discussion in the next Section that no further disciplinary process should be permitted on Roe's charge.

21

Last, for the reasons already outlined, this Court's Order should also immediately vacate the "no trespass" directive that JMU issued and broadcasted across campus in connection with the unconstitutional sanction. Plaintiff should no longer have any limitation on his right to come onto JMU's campus, use its facilities or attend events held there, just like any other member of the pubic, or as an invited guest.

III.   VARIOUS FORMS OF INJUNCTIVE RELIEF ARE NECESSARY AND APPROPRIATE "TO DO EQUITY" IN THIS CASE.

When a permanent injunction is sought as a form of equitable relief (as here) the Plaintiff must demonstrate: (i) that he has suffered an irreparable harm, (ii) that damages are unavailable or inadequate to compensate him, (iii) that an injunction is warranted based on the balance of hardships between the plaintiff and defendants, and (iv) that the public interest will not be disserved by an injunction. *Doe v. GMU II*, 179 F. Supp. 3d at 587; *see also A Helping Hand, LLC v. Baltimore City*, 355 F. App'x. 773, 775-76 (4th Cir. 2009) (*citing eBay, Inc. v. MercExchange LLC*, 547 U.S. 388, 391 (2006)).

As noted in the Introduction, Plaintiff seeks injunctive relief to address five separate issues. Some of these are quite straight forward and should require little analysis, but others are likely to be contested and Plaintiff will address those concerns. Each of the Plaintiff's requests for injunctive relief easily satisfy the required four factor test. The first two factors (irreparable harm and unavailability of damages) are common to all forms of requested injunctive relief. As such, these two factors will be addressed once in the following paragraphs with the understanding that they apply to all injunctive relief requested. Thereafter, Plaintiff will address the balancing of

22

hardships and demonstrate how they weigh in his favor and how there will be no negative impact on the public's interest for each form of relief.

A.    Irreparable Harm

Plaintiff has plainly suffered irreparable injury.   His constitutional rights were violated, his education was interrupted, he was precluded from continuing to pursue his education at the in-state college of his choice, he was barred from campus and his educational record was marred. *See Jones v. Board of Governor of University of North* Carolina, 704 F.2d 715 (4th Cir. 1983) (student placed on academic probation for cheating through an unconstitutional process "obviously suffered irreparable injury"); *see also Ross v. Meese*, 818 F.2d 1132 (4th Cir. 1987) ("[T]he denial of a constitutional right, if denial is established, constitutes irreparable harm for purposes of equitable jurisdiction."); *Marietta Memorial Hospital v. West Virginia Health Care Authority*, 2016 WL 7363052, *8 (S.D.W.V. Dec. 19, 2016) (granting preliminary injunction against state statute that likely violated the dormant commerce clause; "Where a person's constitutional right will be denied if an action is allowed to continue, an irreparable harm will be established.").

Not surprisingly, in *Doe v. George Mason*, the Court granted various forms of injunctive relief to the student expelled from that university on charges of sexual misconduct where it too found that the university's appeal procedures violated due process.   As Judge Ellis noted, "At the outset, there can be no doubt that plaintiff has suffered an irreparable injury and that he has no adequate remedy at law." *Doe v. GMU II,* 179 F. Supp. 3d at 587.

B.    Damages Are Not Available

23

21499/1/7866626v5

Although Plaintiff suffered significant emotional distress as a result of JMU's actions, and has been forced to pursue his education at a much more expensive institution, he cannot obtain damages from Defendants because of sovereign immunity principles. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991) (holding that "the inability to obtain damages from the State in a § 1983 action reduces the showing necessary to establish irreparable harm."); *Doe v. GMU II*, 179 F. Supp. 3d at 587 ("And with regard to damages, no such remedy exists in light of the ruling that defendants are entitled to qualified immunity."); *O'Brien v. Appomatox County*, 213 F. Supp. 2d 627 (W.D. Va. 2002) (granting a preliminary injunction and finding irreparable harm where economic injury resulted from the inability to use banned fertilizers and monetary damages would not be available from a county defendant given its sovereign immunity). Accordingly, Plaintiff easily satisfies the second requirement to obtain injunctive relief.

C.  Four (4) Forms of Injunctive Relief Requested

Without repeating the detailed specifics of the injunctive relief sought (*see* pages 5-7 above) three (3) aspects of the injunction are quite modest and should not be contested:

(1)  A prohibition against disclosing information regarding the appeals process, adverse finding and tainted disciplinary sanction at issue in this case;

(2)  A prohibition against Defendants and designated JMU employees from engaging in acts of retaliation actions against the Plaintiff and their disqualification from participation in any further disciplinary proceedings should Plaintiff elect to return to JMU as a student; and

(3)  A prohibition against Defendants allowing the processing or conducting any new

24

disciplinary proceedings against the Plaintiff, if he elects not to return to JMU as a student.

Each of these three injunction requests flow logically and directly from the actions that the Court will certainly take as outlined in Section II above, and thus as explained in Section D, should not be controversial. It is hard to imagine how any of these three forms of relief will impose any hardship on Defendants or negatively impact the pubic interest.

The fourth and principal form of injunctive relief that the Plaintiff requests is that Defendants be prohibited from subjecting him to any further "process" with regard to Roe's allegation of sexual assault. Plaintiff anticipated that Defendants will oppose this request for injunctive relief. If granted the injunction, it will mean that this Court's judgment order will be the final word on this allegation. This precise issue was dealt with in *Doe v. George Mason* and Judge Ellis found, after weighing all of the relevant factors, that there should be no additional "process" on the sexual misconduct charge. The same approach should be taken here as discussed in Section E below.

      D.    Defendants Should Be Enjoined From Disclosing Information Regarding The Disciplinary Proceedings That Have Been Vacated, The Defendants and the Key JMU Employees Should Be Prohibited From Retaliating Against the Plaintiff and Disqualified from Participating in Future Proceedings and From Deviating From JMU's Established Practice of Not Proceeding With Charges Against Individuals Who Are No Longer Students.

Each of these three (3) requests for injunctive relief against the Defendants are quite logical and modest in scope. Since it is certainty that the Court must vacate the tainted adverse actions which resulted from the unconstitutional disciplinary process used, and the expungement of the records relating to those matters will be ordered, it is only logical for an injunction to be

25

issued that prohibits the Defendants from circumventing those actions by disclosing information regarding those very same actions. This type of injunction imposes no hardship on the Defendants nor does it do any disservice to the public interest.

Next, the Court should issue an injunction that prohibits the Defendants who have been found liable, as well as the JMU employees who were deposed in this action and who sought to defend the unconstitutional procedures, from retaliating against the Plaintiff or participating in any future proceedings involving Plaintiff. This request for protection is a logical and natural extension of the orders that the Court will otherwise enter in Section II above. The need for this protection is particularly important given the Court's Order (Dkt. No. 100) that requires the Plaintiff's identity to remain anonymous. It would take very little by any of these individuals (who are likely to be unhappy with the outcome of this case or the publicity that may surround the Court's rulings) to encourage someone to retaliate against Plaintiff by making it known his identity. The need for this protection exists whether he chooses to comes back to JMU as a student or not.

This Court and the parties have gone to great lengths to insure that his identity is protected to minimize the risk of permanently damaging his reputation. This type of injunctive relief merely preserves the status quo. Disqualifying them from future involvement is logical and reduces the risk of retaliation. If these individuals indicate that they have no intent to retaliate against the Plaintiff, then imposing this type of injunction against them will certainly impose no hardship whatsoever. The balance of hardship decidedly weighs in the Plaintiff's favor here. Thus, this requested injunction against retaliation creates no disservice to the public's interest. To the

26

contrary, it reinforces the protection this Court has already granted this Plaintiff by allowing him to proceed as John Doe.

Finally, Defendants should be enjoined from changing JMU's established policy not to proceed with a disciplinary proceeding on sexual misconduct charges against Plaintiff by any JMU student if Plaintiff elects not to re-enroll at JMU as a student. As noted above, JMU has a policy that allows allegations of sexual misconduct to be filed at any time against a student, but if the accused student has withdrawn or withdraws from JMU while those proceedings are pending, then the process is stayed and no disciplinary action can be taken against the withdrawn student. The request by the Plaintiff here is to have the Court enjoin JMU from changing this policy as to him. Further, the Court's injunction must protect Plaintiff from any application of Va. Code §23.1-9.2:18. As with the other requests the balance of hardships on this type of relief weighs decidedly in Plaintiff's favor and there is no disservice to the public. Even after the Court grants the injunction requested in Section E below (prohibiting any further process on Jane Roe's allegation) this relief is still required as to Student A, who has never filed a charge so far, and may change her mind.

E.    This Court Should Enjoin Defendants From Any Further Proceedings on Jane Roe's Charge of Sexual Misconduct

The default remedy when an individual's procedural due process rights are violated is to order reinstatement but to do so without prejudice to the government entity's ability to provide or require a new "hearing" on the underlying claim. *See Furey v. Temple Univ.*, 884 F. Supp. 2d 233, 261 (E.D. PA 2012). As in *Doe v. George Mason*, for the reasons discussed, this "typical" approach, which in effect allows the Defendants to get a second chance to prove its case under

27

new rules, does not "do equity" nor is it the expected or proper remedy given the facts of this case.

The context in which courts allow a government agency to require a new and better "process" (or a "do over") after reinstatement typically occurs only because there had never been a proper adjudication of the merits of the underlying dispute through a process that comports with due process requirements. *See, e.g. Furey,* 884 F.Supp. at 261 (the Court found that the procedures used by the hearing panel that found him responsible were flawed.) On the other hand, where there has been a fair adjudication of the merits of the underlying dispute by an appropriate tribunal, courts have found it appropriate to consider that merit resolution by the earlier tribunal when deciding what relief is due for a procedural due process violation that occurs in subsequent proceedings. *See Shaw v. Gwatney*, 604 F.Supp. 800, 887, n. 6 (E.D. AK. 1985), *aff'd. in part and vacated in part on other grounds*, 795 F. 2d 135 (8th Cir. 1986); *see also Barachkov v. Lucido*, 151 F. Supp. 3d 745 (E.D. Mich. 2015) In other words, the fact this case involves a constitutional deprivation of due process which occurred for the first time on appeal after a legitimate finding in Plaintiff's favor (after a full hearing) means the "default" remedy does not automatically apply.

In addition to these cases, this Court should also consider the analogous situation where courts have refused to remand matters to the government agency to let them correct procedural due process errors because to do so would be futile or would substantially prejudice the aggrieved party. *See, e.g., Rivera v. Sullivan*, 923 F.3d 964, 970 (2d Cir. 1991) (court vacated and reversed the agency decision rather than remanding it, given the strong evidence in the petitioner's favor and the length of time that the litigation had already consumed.) One example is *Va. Metro Net v.*

28

*Bd. of Supervisors*, 984 F. Supp. 966 (E.D. Va. 1988), when the district court vacated and reversed the county's decision to deny the plaintiff a permit to build a cell tower on certain property. The county took more than a year to deny the plaintiff's application and the court found that the untimely denial and its inadequate explanation warranted a refusal to remand the matter for further consideration "given the extensive delay that had already occurred" and the county's failure to abide by federal law by which it was bound. *Id.* at 977. While not directly applicable these "administrative law cases" can inform the Court in fashioning an appropriate equitable remedy here when more than two years have elapsed, there are many problems with a possible new hearing and the flaws in JMU's appeal process were so glaring.

These principles led Judge Ellis in *Doe v. George Mason* to find that equity did not require that the university be given the right to a new hearing on the underlying sexual misconduct charge. There, as here, the constitutional violation occurred only once the "appeal process" was set in motion. Just as in *George Mason*, to permit a new panel to be charged with hearing evidence on Roe's charge of a sexual assault allegedly occurred in August, 2014 does nothing to provide an adequate remedy for the unconstitutional wrong committed by Defendants. Instead, it would only serve to unfairly prejudice the Plaintiff who won his case in a timely hearing held on December 5, 2014. As Judge Ellis noted:

> Nor would a new appeal on the additional panel's finding in favor of the plaintiff remedy the injury plaintiff sustained… simply put the accusations stemming from the [underlying] incident have been fully and fairly resolved in the plaintiff's favor. In fact, defendants violated plaintiff's right to due process by wrongfully depriving him of that victory through a constitutionally defective appeal process. Thus, plaintiff is entitled to have his victory restored. As with plaintiff's reinstatement, it simply cannot be said that restoring plaintiff to his rightful position unduly burdens

29

21499/1/7866626v5

defendants or disserves the public interest.

*Doe v. GMU II*, 179 F. Supp. 3d at 589.

If the analysis and ruling by Judge Ellis on this point is not persuasive alone, the facts of this case warrant relief that declares the December 5, 2014 finding in the Plaintiff's favor is the final word on Jane Roe's allegation.

First, far too much time has passed since the underlying events (August 22-23, 2014) and the initial hearing on December 5, 2014 for the Plaintiff to receive anything close to a "fair" hearing. A request for a new "appeal" at this point would be long past due, even under JMU's new rules which allow an appeal to be filed within seven (7) days of the original decision. Just as in *Doe v. George Mason,* any new request for an appeal by Jane Roe of the December 5, 2014 decision is untimely. 179 F. Supp. 3d at 589 ("the time to initiate a new appeal of the [initial] panel's decision has long since passed.").

Second, a key part of the constitutional flaw in JMU's appeal process involved the so-called "new evidence" where credibility questions were raised. This "new evidence" in the form of an unsworn statement by the suitemate, relates to events that allegedly transpired in August and December 2014. Because of Defendants' intransigence, and the time that it has taken for Plaintiff to obtain justice, memories regarding these issues have long since faded. Just as important, Plaintiff has no ability at this time (just as in December, 2014) to obtain evidence from Jane Roe's former roommate, who was accused of intentionally lying at the initial hearing. Neither of the key witnesses to this credibility issue (roommate and suitemate) are now students at JMU. Neither can be compelled to come to a hearing, if one were to be held. If only the former suitemate chose

30

Case 5:15-cv-00035-EKD-JCH Document 160 Filed 01/23/17 Page 30 of 34 Pageid#: 2702

to appear at a new hearing, Plaintiff would be badly prejudiced by the Appeal Board's failure back in December, 2014 and January, 2015 to obtain evidence that was available at the time. Absent direct and timely testimony by these two key witnesses, how can any "new process" be considered "fair," and absent this "new evidence," how can there can be any proper basis to set aside the original December 5 determination in Plaintiff's favor? In short, a "do-over" hearing will be futile in the absence of the testimony needed to even begin considering whether to overturn the December 5 decision, and highly prejudicial to Plaintiff.

Next, a "do-over" will result in Defendants having to rely upon some of the same tainted procedures and on personnel whose neutrality is reasonably questioned.[7] JMU's disciplinary procedures have been changed, but they still preclude Plaintiff from communicating with either Jane Roe's former roommate or suitemate. This part of JMU's procedures (which limits Plaintiff's ability to defend himself) has now been held to have violated Plaintiff's substantial rights. Next, under JMU's new and improved procedures, the Dean of Students (not Defendant Warner) now reviews and approves any determinations and sanctions imposed by appeals board members. Dr. Joshua Bacon is the current Dean of Students, and Dr. Bacon was heavily involved in all aspects of this case in 2014-15, was designated as JMU's 30(b)(6) representative, and extensively deposed. As Dean he now reports directly to Defendant Warner, the person who he has described as his mentor. Given Defendant Warner and Dr. Bacon's role in the underlying

---

[7] OSARP and its employees still manage the appeal procedures (and, as this Court noted, provided Jane Roe with a number of accommodations). *E.g.*, Dkt. No. 153 at 9 ("The appeal procedures seem to suggest that anything Roe wanted considered by the appeal board should be submitted as part of her written appeal submission. . . . Nonetheless, OSARP allowed Roe to submit additional evidence several times after her initial appeal deadline."). Everyone who works in OSARP is well aware of this case, and this Court's determination. At this point their objectivity and neutrality in managing any subsequent appeal must be reasonably questioned.

31

procedures found to have violated Plaintiff's due process rights, neither is an appropriate person to review any new "do-over" appeal determination. But then who would be, Dr. Alger, JMU's President? This option fares no better.[8]

Accordingly, to condition Plaintiff's right to reinstatement on being subjected to a new hearing on Roe's sexual misconduct charges is not only impractical and highly unfair to the Plaintiff, but it will simply encourage universities to give little concern over how they structure their appeals process. While principles of double jeopardy do not apply to campus disciplinary proceedings, this Court sitting in equity should be guided by many of the same principles of fairness that underlie the double jeopardy doctrine. In *Tanyi v. Appalachian State University*, 2015 U.S. Dist. LEXIS 9557, *16 (W.D.N.C. July 22, 2015), the court held that a university's reversal of a hearing panel's decision in favor of a student accused of sexual misconduct because the university failed to "adequately prove its case against [the student] at the first hearing" stated a procedural due process claim. The *Tanyi* court noted that "[A]lthough the double jeopardy clause does not apply to student disciplinary context, the due process clause in all cases requires 'fundamentally fair procedures.'" 2015 U.S. Dist. LEXIS 9557 at *15. The Court refused to dismiss the due process claim, and the case was settled shortly thereafter. This same notion of "fairness" applies here with equal force.

---

[8] As a Defendant, Dr. Alger has unsuccessfully attempted at every turn to avoid liability and be dismissed as a party. Defendant Alger is hardly an "impartial" person. In short, there is no one at JMU to make this final call on any result from a "do-over" process.

21499/1/7866626v5

After more than two (2) years the Plaintiff deserves a final resolution to Roe's charges.[9]

To subject him to some form of trial *de novo* is certainly highly prejudicial and doing so in any "fair" way is futile. While Defendants may have an interest in maintaining confidence in JMU's processes, those interests pale in comparison to the far more substantial and concrete injury that the Plaintiff will suffer if these charges are allowed to continue and he is subjected to yet another campus proceeding where there is no one who is unbiased in this case. Given the clear finding of no responsibility by the original panel, there is no disservice to the public interest.

Conclusion

For all of the reasons stated, the Plaintiff asks for the various forms of equitable relief set forth above.

Respectfully submitted,

/s/ W. David Paxton
W. David Paxton (VSB No. 19798)
Bradley C. Tobias (VSB No. 88046)
GENTRY LOCKE
P.O. Box 40018
Roanoke, VA 24022-0013

---

[9] It would be particularly inappropriate to permit a new appeal hearing to take place if Plaintiff chooses to withdraw and not to return to JMU as a student. As noted JMU only proceeds with disciplinary hearings against current students. Ex. 6 (Ehrhart Dep. Tr. 184). To allow a new proceeding against Plaintiff as a non-student would be a deviation of policy and viewed as retaliation for commencing this lawsuit, which is a separate violation of the Constitution. *E.g.*, *Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007) (holding that taxpayer stated First Amendment right to petition claim against officials who allegedly retaliated against him for challenging tax assessments; "a private citizen exercises a constitutionally protected First Amendment right *anytime* he or she petitions the government for redress; the petitioning clause of the First Amendment does not pick and choose its causes.") (emphasis in original); *Atkinson v. Taylor*, 316 F.3d 257, 269 (3d Cir. 2003) (holding that prisoner stated claim for violation of First Amendment rights when he alleged that he was subjected to disciplinary actions in retaliation for filing a civil rights suit against prison officials). For the reasons stated above, Plaintiff deserves finality especially if he elects not to come back to JMU.

33

(540) 983-9300
paxton@gentrylocke.com
tobias@gentrylocke.com

Michael E. Rosman
Michelle A. Scott
CENTER FOR INDIVIDUAL RIGHTS
1100 Connecticut Ave., N.W.
Suite 625
Washington, DC 20036
(202) 833-8400
rosman@cir-usa.org
scott@cir-usa.org

## Certificate of Service

I hereby certify that I filed a copy of the foregoing memorandum on January 23, 2017

using the Court's ECF/CM filing system, which will send an electronic notification of the same to

counsel of record for Defendants, Nerissa N. Rouzer and John G. Butler, III of the Office of the

Virginia Attorney General.

*/s/ W. David Paxton*
W. David Paxton (VSB No. 19798)
Bradley C. Tobias (VSB No. 88046)
GENTRY LOCKE
P.O. Box 40018
Roanoke, VA 24022-0013
(540) 983-9300

34