IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

JOHN DOE,

        Plaintiff,

v.

JONATHAN R. ALGER, President of         Case No. 5:15-CV-00035
James Madison University, in his
official capacity,

        and

MARK J. WARNER, Sr. Vice
President of Student Affairs and
University Planning, in his
official capacity,

        Defendants.

## DEFENDANTS' OPENING BRIEF
## ADDRESSING AN APPROPRIATE REMEDY

Defendants, Jonathan R. Alger and Mark J. Warner, in their official capacities ("Defendants"), by counsel, submit the following Opening Brief addressing an appropriate remedy in this action. For the reasons contained herein, Defendants respectfully request that this Court deny Plaintiff's requested injunctive relief, and enter an order permitting Defendants, in their official capacities, and James Madison University ("JMU") to conduct a new, constitutionally adequate appeals hearing on the underlying student conduct charge.

    **I.    PROCEDURAL HISTORY**

On December 23, 2016, the Court entered an Order granting Plaintiff's Motion for Summary Judgment and denying Defendants' Motion for Summary Judgement as to liability.

(Dkt. 154.) The Court ordered further briefing on the issue of remedies, which was not addressed in the parties' cross-motions for summary judgment.[1]

## II. ARGUMENT

In his Amended Complaint, John Doe seeks the equitable remedy of an injunction. Specifically, John Doe seeks an injunction requiring Defendants and JMU to: (1) reinstate Plaintiff and permit him to re-enroll at JMU as a full time student; (2) expunge his records at JMU of any indication of a finding that he committed an act constituting sexual misconduct or was the subject of a disciplinary suspension; and (3) protect him from acts of retaliation by Jane Roe, her friends, or others on the JMU campus. John Doe also seeks an injunction preventing Defendants and JMU from: (1) continuing to enforce any sanctions against him for alleged sexual misconduct arising out of the incidents described in the Complaint; (2) making any notation on Plaintiff's educational or disciplinary records related to the incidents described in the Complaint; and (3) making any disclosure to a third party that any adverse disciplinary action was taken against Plaintiff arising out of the incidents described in the Complaint.

### A. Standard of Review

Plaintiff cannot meet the extraordinary standard required for injunctive relief. This standard is well-settled:

> Injunctive relief is an "extraordinary remedy." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982); Nat'l Audubon Soc'y v. Dep't of Navy, 422 F.3d 174, 201 (4th Cir. 2005). To obtain such relief, a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay, Inc. v.*

---

[1] Defendants do not concede that John Doe's due process rights were violated and do not waive this issue for consideration on appeal. Defendants address the issue of remedy at this stage based on the Court's finding of a due process violation.

2

*MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). Furthermore, "an injunction may not be used for 'punishment or reparations for . . . past violations.'" *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 347 (4th Cir. 2001) (en banc) (alteration in original) (quoting *United States v. Or. State Med. Soc.*, 343 U.S. 326, 333, 72 S. Ct. 690, 96 L. Ed. 978 (1952)).

*A Helping Hand, LLC v. Baltimore Cnty.*, 355 F. App'x 773, 775-76 (4th Cir. 2009).

**B.     The Court should permit Defendants and James Madison University to proceed with a new student conduct appeal hearing within a reasonable time after Plaintiff's re-enrollment as a student.**

In his Amended Complaint, John Doe requests injunctive relief, which includes a request that he be permitted to re-enroll and be reinstated as a full time student at JMU. Should the Court determine that Plaintiff is entitled to injunctive relief in this case, Plaintiff's re-enrollment should result in a new appellate hearing on Jane Roe's charge of sexual misconduct. The Court has ruled that John Doe's procedural due process rights were violated in the appeals portion of his student conduct case. The Court did not rule that Plaintiff's due process rights were violated in the underlying initial hearing of the student conduct case. Although the Due Process Clause guarantees a constitutionally fair proceeding, it does not guarantee a particular result. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1295 (11th Cir. Fla. 2005). Plaintiff seeks an order of re-enrollment without having to endure a new, constitutionally fair appeals hearing. If the Court orders that John Doe be allowed to re-enroll as a student, the appropriate remedy is a new hearing that comports with the requirements of due process.

In support of this position, courts throughout the nation have consistently ordered constitutionally adequate new hearings at colleges and universities that have been found to have violated the due process rights of their students. In a case arising out of disciplinary proceedings for a charge of sexual misconduct, the United States District Court for the District of Rhode Island recently found various procedural errors that affected the sexual misconduct hearing

3

panel's decision. *See John Doe v. Brown University*, 2016 U.S. Dist. LEXIS 132824, C.A. No. 16-017 S (D.R.I. September 28, 2016) (unpublished). In that case, the court ordered that the plaintiff was entitled to a new hearing that remedies the identified errors. *Id*. The court held that nothing in its order prevented the university from re-trying the plaintiff on the same charge, with a new panel, consistent with its internal policies and procedures and in line with the court's findings contained in the order. *Id*. *See also Furey v. Temple Univ.*, 884 F. Supp. 2d 223 (E.D. Pa. 2012) (ordering a university to reinstate the plaintiff as a student if he was not given a new hearing that comported with due process); *Huntsinger v. Idaho State Univ.*, No. 4:14-CV-00237-BLW, 2014 WL 5305573, at *2-3 (D. Idaho Oct. 15, 2014) (in a case involving alleged student academic dishonesty, allowing new hearing to take place and adopting procedures proposed by defendants); *Oladokun v. Ryan*, No. 06 CV 2330 KMW, 2011 WL 4471882, at *3-4 (S.D.N.Y. Sept. 27, 2011) (in a case involving deported Nigerian student accused of falsifying documents on a visa application, noting the court's previous order to reinstate the plaintiff's visa would be inappropriate and ordering a new, constitutionally adequate hearing, when and if the plaintiff returned to the United States and requested a hearing); *Boyd v. State Univ. of New York at Cortland*, 110 A.D.3d 1174, 1176 (N.Y. App. Div. 2013) (remitting a harassment case to the university for the Hearing Panel to provide a statement detailing the factual findings supporting the determinations of guilt with the opportunity for the student to challenge the determination administratively); *Kalinsky v. State Univ. of New York at Binghamton*, 161 A.D.2d 1006, 1008 (N.Y. App. Div. 1990) (concluding that the appropriate remedy for a student accused of plagiarism but denied due process is remittal for a new hearing). Following the courts' reasoning in these cases, the most appropriate remedy in this case is to remit the matter back to JMU for a new, constitutionally adequate appeals panel hearing, should Plaintiff re-enroll.

### i. JMU's current student conduct appeals procedures provide constitutionally adequate process and Plaintiff will receive a fair hearing.

Over the past five and a half years, JMU has worked diligently to ensure its procedures are in line with evolving Title IX guidance from federal regulatory bodies, as well as state government mandates and best practices on this topic. JMU has made the best decisions possible based on the complex guidance it received, the best practices it identified, and the need to protect all of its students in these situations.

Even before the Court's December 23, 2016 ruling in this matter, JMU had already made changes to its student conduct policies and procedures that address the procedural concerns raised by the Court in this case, and JMU continually works to implement appropriate changes to ensure fairness to both parties in these proceedings. (*see* current sexual misconduct case review appeal procedures, attached as Exhibit A.) JMU's primary concern has been and remains the welfare of its students, and JMU will continue to work to make its campus a safe place for students accused of sexual misconduct as well as those who report such allegations.

The Court identified several concerns with the appellate procedures applied in John Doe's student conduct appeal that when combined, the Court found amounted to a denial of due process in this matter. These concerns are as follows:

1. The appeals panel gave no reason for its decision;
2. The appeals panel made no finding of a violation of JMU's policy;
3. The appeals panel did not allow the accused to appear in person before the appeals panel;
4. The appeals panel did not hear any live testimony at the meeting at which it made its decision;
5. The accused was not allowed to confront witnesses or new evidence submitted on appeal;
6. The appeals panel may not have applied the correct standard on the issue of consent; and
7. The appeals panel may have considered evidence that Plaintiff was not given an opportunity to address.

5

(Dkt. 153, pp. 25-28.)

There have already been changes made in JMU's procedures to address these concerns. If the Court permits a new student conduct appeals hearing in this case, the appeals panel will provide a reason for its decision, and it will make an explicit finding concerning which, if any, policies were violated. John Doe will have the opportunity to appear in person before the appeals panel. The parties will have the opportunity to present live witnesses in the appeal, and the appeals panel will have the opportunity to hear live testimony of witnesses and to ask them questions. John Doe will have the opportunity to confront witnesses and new evidence submitted on appeal. The appeals panel will be instructed on the correct standards to apply, and on the relevance of evidence submitted. John Doe will have the opportunity to timely review and respond to all of the evidence submitted on appeal. JMU will bear the burden and expense of selecting and training impartial, objective and unbiased decision-makers from among its employees to serve on the appeals panel.

### ii. Permitting JMU to hold a new hearing that comports with due process is in the best interest of all students involved.

Jane Roe is still a student at JMU. Jane Roe made serious allegations of sexual misconduct against John Doe, which was the subject of the underlying student conduct charge, accountability board hearing, and appeals process. The Department of Education's Office for Civil Rights recommends that schools provide an appeals process in cases involving peer-on-peer sexual harassment or misconduct. (*See* April 4, 2011 Dear Colleague Letter, p. 12.) Accordingly, JMU's student conduct policy provides an appeals process and allows for an appeal by either party in sexual misconduct cases. Jane Roe exercised her right to appeal pursuant to the student conduct policy.

6

Preventing JMU from providing a new hearing that comports with due process is essentially a denial of Jane Roe's right to appeal the initial hearing board finding. It would be inappropriate for the Court to provide a remedy for a violation of John Doe's due process rights that functions to deprive Jane Roe of her rights.

### iii. A new appeals hearing may render moot some of Plaintiff's requested injunctive relief.

Plaintiff's request for injunctive relief to require (1) expungement of his records at JMU of any indication of a finding that he committed an act constituting sexual misconduct or was the subject of a disciplinary suspension, (2) to prevent Defendants from enforcing any sanction against Plaintiff for incidents described in the Complaint, and (3) to prevent Defendants from making any disclosure to a third party that any adverse disciplinary action was taken against Plaintiff arising out of the incident described in the Complaint essentially seeks to prevent Defendants from holding a new hearing. Defendants seek the Court's permission to hold a new appeals hearing if and when Plaintiff re-enrolls at JMU. If that occurs, the current sanction and finding of responsibility will be vacated, expungement of the previous appeal finding will be appropriate, and this requested relief is moot. Defendants cannot predict the outcome of a new hearing, and it is inappropriate to speculate about the result of a new, fair hearing under the university's new procedures. (Current JMU sexual misconduct appeal procedures are attached as Exhibit A.) If Plaintiff is found responsible in a new hearing that comports with due process, there are no grounds for then preventing Defendants and JMU from properly enforcing any sanction imposed as a result of that finding, or from making any necessary disclosure to a third party.

### C. Plaintiff has not alleged any retaliation.

Plaintiff seeks a permanent injunction requiring Defendants and JMU to protect him from acts of retaliation by Jane Roe, her friends, or others on the JMU campus. As stated above, an injunction is an extraordinary remedy. Plaintiff fails to allege any acts or threats of retaliation against him by any individual, including Jane Roe, her friends, or others on the JMU campus. Additionally, the Court has granted Plaintiff permission to proceed in this case under a pseudonym. Plaintiff seeks this extraordinary remedy to prevent acts that are entirely speculative in nature. As such, he cannot demonstrate that a permanent injunction is warranted. If, however, Plaintiff returns as a student and he experiences retaliation, JMU policies and procedures are available to him to pursue student conduct charges for any acts of retaliation in violation of the student code of conduct. The availability of that option further demonstrates that a permanent injunction is not warranted.

### D. Plaintiff's request to prevent Defendants from making any notations on his educational records and/or discipline records fails to meet the standard required for injunctive relief.

Plaintiff seeks to prevent Defendants and JMU from "making any notation on Plaintiff's educational or disciplinary records related to the incidents described in this Complaint." First, based on prior briefing in this matter, Defendants understand one of Plaintiff's main concerns to be the transcript notation requirement set forth in Virginia Code § 23.1-900, and previously in Virginia Code § 23-9.2:15 (repealed). Currently, Plaintiff does not have any notation on his academic transcript pursuant to these statutes, including any notation concerning the allegations in his Complaint or indicating that he was disciplined for sexual misconduct. The transcript notation requirement went into effect after his student case conduct case was adjudicated and

8

completed. Thus, a permanent injunction in this instance is not warranted for an action that has not been taken (i.e. a transcript notation).

If, however, Plaintiff is found responsible following a new sexual misconduct appeal hearing, there could be a notation on his transcript if the finding meets the requirements mandated by Virginia Code § 23.1-900. Consideration of a permanent injunction based on the outcome of a new hearing that has not yet happened in entirely speculative. JMU will be required to comply with the law of the Commonwealth of Virginia in the future, if, after Plaintiff receives a constitutionally adequate hearing, he is found responsible for a violation of the university's policy prohibiting sexual misconduct and is either suspended or expelled, or if he withdraws while under investigation for any such charges. Plaintiff cannot demonstrate an irreparable injury, or that he is without adequate remedy at law for an action in the future that is entirely speculative.

To the extent Plaintiff's requests for injunctive relief encompass requests to expunge any initial charge documentation and the accountability board's finding of "not responsible," Defendants argue that is improper. The reporting student had a right to pursue a student conduct charge based on her allegations of sexual misconduct, and the Court has not found Plaintiff was denied due process during that first hearing. To expunge those records as if they never existed at all is to erase even the charge brought against him by Jane Roe. Had Jane Roe not appealed the initial accountability board finding, the records and underlying finding of "not responsible" by the initial hearing panel would still appropriately exist. The public interest is not served by requiring such action, and leaving those underlying records of the underlying complaint and initial hearing intact does not place an extraordinary hardship on Plaintiff.

9

Case 5:15-cv-00035-EKD-JCH   Document 161   Filed 01/23/17   Page 9 of 13   Pageid#: 2743

**E.   The Court should allow discovery and expert review of Plaintiff's claim for attorneys' fees and costs.**

In his Complaint, John Doe seeks an award of attorneys' fees and costs pursuant to 42 U.S.C. §1988, 28 U.S.C. §1920, and any other appropriate authority. In discovery, Defendants' first Requests for Production of Documents included the following requests:

"16.   Produce all documents concerning the attorneys' fees and costs you claim in this matter, including but not limited to rates, tasks, attorney(s) and/or staff working on each task, the amount of time spent per task, and bills or invoices for costs and legal services rendered."

"17.   Produce all documents relating to attorney fee structures and agreements and retainer agreements for all attorneys' fees and costs you claim in this matter."

"18.   Produce records of all payments made by or on behalf of Plaintiff for any attorneys' fees and costs you claim in this matter."

Although these requests sought relevant information concerning Plaintiff's claim for attorneys' fees and costs, Plaintiff served the following objection to each:

> **Plaintiff objects to this Request because it is overly broad and seeks information protected by the attorney work product doctrine and attorney-client privilege. Plaintiff further objects that this Request seeks information which is not relevant at this stage in the litigation.**

Despite attempts to resolve Plaintiff's objections to this discovery, the responsive documents were never produced to Defendants. Defendants now request the Court order (1) Plaintiff to respond to this discovery request at this point in the litigation, and (2) allow Defendants time after receipt of all responsive documentation to retain an expert to review and provide a report concerning reasonableness of the fees and costs sought by Plaintiff in this matter.

### III. CONCLUSION

Plaintiff has not met the burden to receive any injunctive relief. Should the Court order Defendants to allow Plaintiff to re-enroll, the appropriate remedy is to provide John Doe with a new student conduct appeals hearing that is constitutionally adequate after he re-enrolls as a student at JMU. JMU has amended its student conduct appeals procedures, and the new procedures will provide John Doe with procedural due process in a new hearing. Should the Court allow Plaintiff to re-enroll, Defendants respectfully request this Court enter an order permitting Defendants, in their official capacities, and James Madison University ("JMU") to conduct a new, constitutionally adequate, appellate panel hearing on Jane Roe's student conduct charge against Plaintiff within a reasonable time following JMU's receipt of Plaintiff's Notice of Intention to Enroll, and no later than 60 days after John Doe begins classes following enrollment.

Further, Defendants request that the Court order production of responsive documents regarding attorneys' fees and costs and permit Defendants time for expert review prior to a hearing on any Plaintiff's petition for fees and costs.

JONATHAN R. ALGER
in his official capacity
and
MARK J. WARNER
in his official capacity


 /s/         Nerissa N. Rouzer
Nerissa N. Rouzer (VSB No. 79002)
Assistant Attorney General

John G. Butler, III (VSB 46200)
Assistant Attorney General

Nicholas F. Simopoulos (VSB No. 68664)
Senior Assistant Attorney General/
Trial Section Unit Manager
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 786-5746
(804) 371-2087 (fax)
nrouzer@oag.state.va.us
jgbutler@oag.state.va.us
nsimopoulos@oag.state.va.us
*Counsel for Defendants*


Mark R. Herring
Attorney General of Virginia

# CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for Plaintiff:

W. David Paxton (VSB No. 19798)
Bradley C. Tobias (VSB No. 88046)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
Roanoke, VA 24011
(540) 983-9300
paxton@gentrylocke.com
tobias@gentrylocke.com


Michael E. Rosman
Michelle A. Scott
CENTER FOR INDIVIDUAL RIGHTS
1233 20th Street, N.W., Suite 300
Washington, D.C. 20036
(202) 833-8400
rosman@cir-usa.org
scott@cir-usa.org
*Counsel for the Plaintiff*

/s/ Nerissa N. Rouzer
Nerissa N. Rouzer (VSB No. 79002)
Assistant Attorney General

John G. Butler, III (VSB 46200)
Assistant Attorney General

Nicholas F. Simopoulos (VSB No. 68664)
Assistant Attorney General/Trial Section Unit Manager
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 786-5746
(804) 371-2087 (fax)
nrouzer@oag.state.va.us
jgbutler@oag.state.va.us
nsimopoulos@oag.state.va.us
*Counsel for Defendants*