IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 5:15-cv-00035 |
| v. | ) |
| | ) By: Elizabeth K. Dillon |
| JONATHAN R. ALGER, *et al.*, | ) United States District Judge |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

By memorandum opinion and order entered on December 23, 2016, the court granted summary judgment in plaintiff John Doe's favor as to liability. Specifically, the court ruled that defendants deprived Doe of a property interest—his right to continued enrollment at James Madison University—without due process of law. The court's order required the parties to submit memoranda concerning the appropriate remedy for the violation. That issue has been fully briefed and argued and is now ripe for disposition. Given the court's ruling as to liability, the parties agree on many aspects of the relief to be granted and, at the court's request, have submitted proposed alternative orders (Dkt. No. 172) with their proposed formulations of that relief.[1] Several primary areas of disagreement remain, however, and the court addresses those herein.

I. BACKGROUND

The factual background of this case is set forth in detail in the court's memorandum opinion on the summary judgment motions, and the court will not repeat it here. In short, the

---

[1] Based on the court's own observations of in-court appearances and the written submissions throughout this case, the court commends all counsel for their professionalism in this case. All counsel have ably demonstrated that it is possible to be a fierce advocate for one's own client(s) and, at the same time, to remain respectful and work cooperatively with opposing counsel.

court concluded that Doe did not receive adequate process at the appeal stage of the misconduct charge against him. That finding necessitates certain declaratory and injunctive relief, and the parties agree as to much of the relief to be ordered.[2] For example, the parties agree that the prior finding of responsibility for sexual misconduct, as well as the sanctions imposed as a result of it, should be vacated, and they agree that Doe should be reinstated as an undergraduate student at JMU in good standing. They also agree that Doe should be permitted to elect, on or before June 30, 2017, whether to withdraw as a JMU student in good standing or to re-enroll as a student at JMU. Other relief, on which the parties agree, includes the expungement of certain records and certain injunctive relief to prohibit the disclosure of Doe's identity and the now-vacated finding that he was responsible for sexual misconduct.

There also remain some areas of disagreement. Doe and defendants have proposed different language as to a number of items in their respective proposed orders to the court. With regard to some of those disagreements, the court concludes that they do not require any significant analysis. Instead, they are issues that fall squarely within this court's broad discretion to fashion an equitable remedy. The court will not discuss them further, but will craft the order to reflect its decisions on those issues.[3] There are three issues, however, that merit further discussion. The court will address each in turn, after a brief discussion of the legal standards that inform the court's analysis.

---

[2] By stating that the parties agree, the court acknowledges that defendants do not agree with the court's underlying ruling as to liability and they have not waived their ability to contest that ruling on appeal. The court means only that, given the ruling as to liability, the parties agree that certain remedial relief is appropriate.

[3] These other issues include the breadth of the injunction forbidding certain persons from participating in any future proceeding against Doe as a result of Roe's charge or any other charges; the breadth of the injunctive relief prohibiting disclosure of Doe's identity; the cut-off date for the documents to be expunged; and whether plaintiff is entitled to an injunction prohibiting retaliation by defendants.

II.  DISCUSSION

**A.  General Standards**

In determining the proper remedy for the due process violations here, the court is guided by several overarching principles.  To begin with, the injunctive relief Doe seeks is an equitable remedy, and, in granting equitable relief, the court has "broad" powers, "for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971).  Indeed, "[i]n equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests . . . ." *Lemon v. Kurtzman*, 411 U.S. 192, 200–01 (1973) (plurality opinion).

As with all injunctions, an injunction to remedy a constitutional violation is an "extraordinary remedy" and requires the plaintiff to demonstrate that (1) he has suffered an irreparable injury, (2) damages are unavailable or inadequate to compensate him for that injury, (3) an injunction is warranted based on the balance of hardships between the plaintiff and defendants, and (4) the public interest will not be disserved by an injunction. *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 587 (E.D. Va. 2016) (citations omitted) (hereinafter "*Doe v. GMU*"); *see also eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (applying the same test where "a plaintiff seek[s] a permanent injunction"); *A Helping Hand, LLC v. Baltimore Cty.*, 355 F. App'x 773, 775–76 (4th Cir. 2009) (applying same in reviewing injunctive relief where plaintiff prevailed in a civil rights action).  Defendants concede, as they must, that Doe can establish the first two of these elements.  As to the injunctive relief to which they object, though, defendants dispute that the third and fourth elements are satisfied.  (Defs.' Opp'n to Pl.'s Mem. Remedies 12, Dkt. No. 166.)

## B. Injunction Prohibiting a New Appeal Board Hearing

The first disagreement—and arguably the most important one—concerns whether further proceedings should be permitted as to Roe's charge against Doe. Doe argues that, if he elects to re-enroll as a JMU student, defendants should not be permitted to conduct another appeal board hearing on Jane Roe's misconduct charge against him. Defendants counter that the proper remedy for a violation of due process is a new hearing to receive the process due. They therefore contend that Doe is entitled only to a new appeal board hearing with constitutionally adequate process and that an injunction prohibiting them from conducting that appeal is not an appropriate remedy.

The court has carefully considered the arguments of the parties and the authority on which they rely. As even plaintiff acknowledges (Pl.'s Mem. Remedies 27, Dkt. No. 160), "the typical remedy for a violation of due process in the university disciplinary context is more process." *Doe v. GMU*, 179 F. Supp. 3d at 588 & n.12. Indeed, defendants cite to a number of cases (from both federal and state courts) in which that was the remedy ordered. (Defs.' Opp'n to Pl.'s Mem. Remedies 16–17 (citing, among others, *Doe v. Brown Univ.*, No. 16-cv-017, 2016 WL 5409241 (D.R.I. Sept. 28, 2016); *Furety v. Temple Univ.*, 884 F. Supp. 2d 223 (E.D. Pa. 2012); *Huntsinger v. Idaho State Univ.*, No. 4:114-cv-00237, 2014 WL 5305573, at *2–3 (D. Idaho Oct. 15, 2014)).) Thus, the standard remedy in similar cases is a new hearing that comports with due process. That is true in the employment context as well. *See, e.g.*, *Detweiler v. Va. Dep't of Rehab. Servs.*, 705 F.2d 557, 562 (4th Cir. 1983) (explaining that if the plaintiff—a terminated employee who alleged a due process violation in the hearing afforded him—could prove his allegation, "he should be afforded a rehearing by the panel that comports with the due process clause"). There are exceptions to the general rule, though, and this court recognizes that

it has the broad authority to fashion a different remedy, including the one sought by Doe. But for the reasons discussed herein, the court does not believe the remedy Doe seeks is appropriate.

In support of his request, Doe relies heavily on the decision in *Doe v. GMU*. 179 F. Supp. 3d 583. There, after finding that a college student accused of sexual misconduct had been denied due process, the court granted the plaintiff's request, similar to Doe's here, that the court enjoin the university from pursuing any further hearings against him stemming from that charge. There, like here, the plaintiff had been found not responsible at his initial hearing and the plaintiff admitted that the first hearing satisfied the requirements of due process. *Id.* at 586. But when the accusing student appealed, the university allowed the appeal to proceed, despite the fact that it failed to state an acceptable ground for an appeal under GMU's disciplinary procedures. The defendants then committed additional due process violations in processing both that appeal and another level of review, including *ex parte* meetings with the accusing student. *Id.* After two levels of appeals, the plaintiff was found to have violated the student code of conduct and was expelled. *Id.* The court ruled that the defendants violated plaintiff's right to due process by, among other things, "permitting [the accusing student], without a proper basis in GMU's internal disciplinary procedures, to appeal the finding of no responsibility." *Id.*

As is evident from that factual background, there are significant differences between that case and this one. Most notably, in that case, the court had held that the original appeal was not proper under the university's procedures and should not have been permitted. Thus, the plaintiff should never have been subjected to an appeal in the first place. That factor was noted by the court in enjoining further proceedings against the plaintiff arising from that same incident. *Id.* at 588–89. That crucial distinction sets *Doe v. GMU* apart from this case.

Here, the court has not concluded that allowing the appeal itself was improper. Put differently, the fact that the appeal occurred was not one of the due process violations alleged or found by the court. Instead, the court found violations in the processing of the appeal and in the appeal board's lack of an explanation for its determination. The appropriate remedy for those violations is to allow an appeal to proceed with constitutionally adequate process for Doe.

Doe contends, though, that where there was already one constitutionally adequate hearing, the standard remedy of a new hearing does not apply. (Pl.'s Mem. Remedies 28.) For support, he relies primarily on *Barachkov. v. Lucido*, 151 F. Supp. 3d 745 (E.D. Mich. 2015) and footnote 6 of *Shaw v. Gwatney*, 604 F. Supp. 880 (E.D. Ark. 1985), *vacated in part on other grounds*, 795 F.2d 135 (8th Cir. 1985). Neither case stands for such a broad proposition.

The *Barachkov* court ordered reinstatement of terminated employees, rather than a new hearing, but in that case a jury had already determined that there was no just cause for the termination, and the jury's verdict had been upheld on appeal. 151 F. Supp. 3d at 748–49 (citing *Barachkov v. Davis*, 580 F. App'x 288, 296 (6th Cir. 2014)). In rejecting the defendant's argument that the only remedy for a due process violation is a pre- or post-termination hearing, the court referred repeatedly to the jury's verdict. *Id.* at 755–56. It reasoned that the issue of whether termination was proper had already been conclusively decided in court, so a new hearing was pointless. Here, of course, there has been no judicial determination as to whether Doe was responsible for sexual misconduct. Nor is that issue before the court.

*Shaw* is also not as helpful as Doe suggests. In footnote 6 of *Shaw*, the court stated that, in cases where the merits have been resolved by other tribunals, "courts appropriately consider the resolution of the merits when determining the relief due for any procedural due process violations." *Shaw*, 604 F. Supp. at 887 n.6. At first blush, this seems to support Doe's argument.

6

But in summarizing its own holding, the *Shaw* court made plain that the ultimate decision of whether the plaintiff employee's termination was proper was not a decision for the court:

> In sum, the Court believes that the substantive decision of continued employment for the plaintiff must be left in the hands of those people with the authority and the expertise to make it. Upon reinstatement, the employer may decide to pursue the matter and, after being afforded due process, the employee might, or might not, be terminated. Or, for any number of reasons, the employer could decide not to pursue the matter. In any event, the decision will not be that of the Court. The Court's role will have been properly limited to determining the requirements of due process.

*Id.* at 889. The court is not persuaded that a different result is warranted here. Instead, the decision of whether Doe is responsible for misconduct and, if so, what sanctions should be imposed, "will not be that of the [c]ourt." *See id.*

Doe also challenges whether it is even possible for him to receive a "fair" hearing now. (Pl.'s Mem. Remedies 30.) In particular, he points to the passage of time, the fading of memories, and other practical realities, including that the two key witnesses to the credibility issue (Roe's roommate and her suitemate) are no longer JMU students. (Pl.'s Mem. Remedies 30–31.) If Doe elects to re-enroll at JMU, and if JMU determines that Roe's appeal satisfies the requirements for an appeal, then these facts admittedly may render adjudication of Roe's appeal more difficult. But the court cannot say, based on the information before it, that JMU is incapable of providing constitutionally adequate process for a new appeal hearing. Indeed, JMU has changed a number of its appeal procedures in response to the violations alleged or found in this case. And again, it is not the court's place to decide Roe's appeal.

In his supplemental brief, Doe also argues that the appeal submitted by Roe does not state grounds for an appeal under JMU's new procedures, which the parties agree should govern any new appeal allowed by the court. (Pl.'s Supp. Mem. 4–8, Dkt. No. 171.) That may well be the

7

case. But again, this court's role is not to process or decide Roe's appeal, but to remedy the violations it found with the appeal that was previously given. Accordingly, the court will allow JMU to follow its new procedures and determine whether the appeal is proper under the new policies that the parties agree should apply.

Doe's due process rights were violated, and he should have a remedy. But vindication to Doe, in terms of a final finding of "not responsible," is not this court's to give. As the Eleventh Circuit has explained, "procedural due process does not guarantee a particular result." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1295 (11th Cir. 2005); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992) ("The Due Process Clause 'is not a guarantee against incorrect or ill-advised personnel decisions.'") (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)). Particularly in this context, where Roe herself has certain rights in the processing of her sexual misconduct charge and her appeal, and where defendants and JMU have substantial interests in investigating any student accused of committing sexual misconduct and sanctioning any student found responsible for such misconduct, the court does not believe that equity warrants an injunction prohibiting further proceedings.

## C. Expungement of Documents

The second area of disagreement focuses on the scope and nature of expungement the court should order. The parties agree that certain records relating to the charge against Doe should be expunged, but disagree as to exactly what "expunge" means in this case. Doe argues that it should be defined as "to remove from, erase or destroy a record, document or an entry on a list or in a database." Defendants agree that records should be expunged, but contend that it would violate Virginia law for them to actually destroy certain records that JMU is required to maintain by the Commonwealth of Virginia. Thus, defendants request permission to maintain

8

the documents in a locked office for the time period required for retention for public records in Virginia, pursuant to the Virginia Public Records Act. *See* Va. Code § 42.1-76 *et seq.*; *see also* http://www.lva.virginia.gov/agencies/records/retention.asp (setting forth the retention schedules set by the Library of Virginia) (last visited Apr. 12, 2017). Defendants' counsel represented at the hearing that such records would be internally "sealed" and would not be subject to subpoena or any other disclosure, although counsel did not explain exactly how that would be accomplished.

The court concludes that the destruction of the records is appropriate here. The primary definition of expunge is "[t]o remove from a record, list, or book; to erase or destroy." Black's Law Dictionary 702 (10th ed. 2014). As a practical matter, moreover, it makes little sense to maintain the records in a locked room as opposed to destroying them—their very existence leaves open the possibility of disclosure. Such a possibility could be particularly damaging here, given the great efforts that the parties and the court have taken to protect the identity of those involved in this lawsuit. Furthermore, destruction of those records will assist, insofar as it is possible, to place Doe in the same position he would have occupied had the due process violations not occurred, one of the goals of equitable relief. *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 239 (4th Cir. 2016) (quoting *United States v. Virginia*, 518 U.S. 515, 547 (1996)).

Nor is the court convinced that defendants' "version" of expungement should be ordered so that they may comply with a record retention requirement of the Commonwealth. The authority discussed in Section D *infra* makes plain that this court has broad equitable power to direct a party to take an action that would otherwise be prohibited by state law.

9

For all of these reasons, the court will order the destruction of the documents to be expunged. Such destruction shall occur after the time for appealing from this court's judgment has expired, if no notice of appeal is filed. If a notice of appeal is filed, then the destruction shall be stayed until final resolution of all direct appeals.

**D. Injunction Prohibiting the Operation of Virginia Code § 23.1-900**

Third, Doe requests that the court enjoin defendants, their successors, and JMU from imposing any notation on his academic transcript that might otherwise be required by Virginia Code § 23.1-900 as a result of any action taken on the allegations in Jane Roe's charge against him or by virtue of his withdrawal as a student in good standing.[4] Defendants agree that, if Doe does not re-enroll, then no notation would be appropriate on his transcript. If, however, he re-enrolls and is later determined to have violated the student conduct policy based on Roe's charge against him, then defendants suggest that such a notation might be required and should not be enjoined.

Defendants offer two reasons why the injunction sought by Doe is inappropriate. First, they contend that, because the court cannot know whether Doe will be found responsible following a new sexual misconduct appeal hearing, the injunction would be based on speculation. Second, they argue that Virginia law might require such a notation on Doe's transcript. (Defs.' Opening Br. on Remedy 9, Dkt. No. 161.) The court is not persuaded that these reasons preclude the injunction Doe seeks.

While the court does not know whether Doe will re-enroll or what the finding might ultimately be against him if the appeal is pursued, the court concludes that the relief falls within

---

[4] At its core, the provision requires a "prominent notation on the academic transcript of each student who has been suspended for, has been permanently dismissed for, or withdraws from the institution while under investigation for an offense involving sexual violence [as defined in the statute]." Va. Code § 23.1-900. The statute has been in effect since October 1, 2016.

10

the court's broad powers to remedy the due process violation. The parties agree that the notation requirement went into effect after Doe's misconduct case was decided. Thus, had Doe received a constitutionally adequate appeal process, even if he had been found responsible for misconduct that would otherwise require a notation, no notation would have been placed on his transcript at the time of his suspension. Thus, his request falls squarely within the court's obligation to shape a remedial decree to place the plaintiff "in the position [he] would have occupied in the absence" of the constitutional violation. *N.C. State Conf. of NAACP*, 831 F.3d at 239 (citation omitted).

As to defendants' assertion that they are obligated by law to follow the notation requirement, the court recognizes the ample authority cited in Doe's supplemental memorandum that establishes a federal district court's ability to fashion an equitable remedy and to direct compliance by a party before it, even if following the court's directive would otherwise violate state law. *See, e.g.*, *Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695 (1979) ("It is also clear that [the state agencies], as parties to this litigation, may be ordered to prepare a set of rules that will implement the interpretation of the rights of the parties even if state law withholds from them the power to do so."); *Kirkland v. N.Y. State Dep't of Corr. Servs.*, 628 F.2d 796, 801 (2d Cir. 1980) (affirming district court's remedy of requiring that 250 points be added to the scores of all minorities that took a test, even if it violated state law on the use of civil service exams, and concluding that there was "no need . . . to reach the question of the compatibility of the 250-point addition with the New York Constitution" because "the power of the district court to fashion a remedy is a matter of federal law under the supremacy clause"). Thus, the court's order will enjoin defendants from including any notation

on Doe's transcript pursuant to Virginia Code § 23.1-900 as a result of any outcome stemming from Roe's charge against him.[5]

### III. CONCLUSION

The court will issue a separate order entering judgment in plaintiff's favor and granting the declaratory and injunctive relief the court has determined to be appropriate in this case.

Entered: April 25, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[5] The court recognizes and appreciates the important interests that are served by this statute, and it imposes this aspect of the injunctive relief only after careful consideration. But the remedy here must, as much as possible, place Doe in the place he would have been had there not been any violation of his due process rights. This portion of the remedy is necessary to accomplish that end.