CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

9/27/2018

JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
　　　DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

JOHN DOE,　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )
　　　　　　Plaintiff,　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )　　Civil Action No. 5:15-cv-00035
　　v.　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　 )　　By:　Elizabeth K. Dillon
JONATHAN R. ALGER, *et al.*,　　　　 )　　　　　United States District Judge
　　　　　　　　　　　　　　　　　　 )
　　　　　　Defendants.　　　　　　　 )

**MEMORANDUM OPINION**

In this case, the court entered judgment in John Doe's favor as to liability and granted

him most of the equitable relief he sought.  The case is now before the court on plaintiff's

petition for attorneys' fees, which the court referred to United States Magistrate Judge Joel

Hoppe for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  The magistrate

judge issued a lengthy and detailed report addressing Doe's request for a total award of over $1

million, ultimately recommending that the court award almost $850,000 in fees, expenses, and

costs.  (R. & R., Dkt. No. 190.)

Both Doe and defendants have filed objections to portions of the report (Dkt. Nos. 193,

194), and they have also filed responses to each other's objections (Dkt. Nos. 195, 196).  After

review of the report and the filings by the parties, and having conducted a de novo analysis as to

all issues raised in the parties' objections, the court will adopt in part and reject in part the

magistrate judge's recommendation.  Based on the court's rulings and for the reasons set forth

herein, the court will award Doe $519,271.08 in fees and $41,408.15 in litigation expenses.[1]  The

court will also award $13,500.80 for Doe's bill of costs, which was the total amount Doe sought

and to which there is no objection.  (R. & R. 5 n.3; Defs.' Objs. 6, Dkt. No. 194.)  Thus, the total

amount the court will award is $574,180.03.

## I.  BACKGROUND

### A.  General Factual and Procedural Background

The court discussed much of the factual and procedural background of this case in its

opinion granting summary judgment (Dkt. No. 153), and relies on that background, in addition to

the overview given herein.  This case involves a due process challenge by Doe, a former James

Madison University (JMU) student who was disciplined and suspended from the university after

an investigation and hearing into allegations of sexual misconduct against him asserted by a

fellow student.  Finding the first complaint filed by Doe insufficient to state a claim, the court

granted defendants' motion to dismiss and granted plaintiff leave to amend.  Defendants' second

motion to dismiss was granted in part and denied in part, after the court granted the parties leave

to each submit one additional brief addressing whether Doe had adequately stated a liberty

interest giving rise to due process protections.  In broad terms, the court concluded that Doe had

adequately stated a due process violation with regard to a purported property interest, but not as

to a liberty interest.  At around the same time, Doe also moved to proceed pseudonymously, a

motion that the parties briefed and the court granted.

The parties engaged in discovery while awaiting the court's ruling on the motion to

dismiss.  There was extensive written discovery propounded by Doe, and his attorneys conducted

---

[1]  The original petition had two different amounts sought for expenses, but the actual total based on the itemized list Doe submitted was $41,582.75.  (R. & R. 5 n.2.)  In his reply, Doe asked for an additional $59.17 in expenses.  He also agreed not to seek reimbursement for a meal charge that was lacking documentation, in the amount of $233.77.  Thus, the total amount sought (not including the $233.77 meal charge) is $41,408.15 ($41,582.75 plus $59.17 minus $233.77).  For the reasons discussed herein, the court awards this full amount.

eleven depositions over the course of ten days. Defendants conducted three depositions on one day in March 2016. There was one discovery dispute in the case, but it was resolved by the magistrate judge during a telephone conference without the need for formal briefing. Additionally, as a result of obligations JMU owed to students under the Family Educational Rights and Privacy Act (FERPA), the parties agreed to a process for discovery of FERPA-protected records in which non-party students had the opportunity to object to the release of their education records. Five students objected, and all of those objections were heard in one day. Doe's counsel attended those hearings.

After the close of discovery, the parties briefed and argued cross-motions for summary judgment. By memorandum opinion and order entered on December 23, 2016, the court granted summary judgment in Doe's favor as to liability. Specifically, the court ruled that defendants deprived Doe of a property interest—his right to continued enrollment at JMU—without due process of law as a result of flaws at the appeal stage of the proceedings against him.[2] The court's order required the parties to submit memoranda concerning the appropriate remedy for the violation. The parties were able to agree on many aspects of the relief to be granted. The remaining areas of dispute were briefed by the parties and argued at a hearing. The court granted most of the disputed relief sought by Doe, but did not grant one key aspect of the relief he sought, which was to bar JMU from conducting a new appeal process on the sexual misconduct charge against him if he returned to the school.

## B. The Report on Attorneys' Fees

In his report addressing Doe's request for fees, the magistrate judge considered a number of arguments by the parties, and the court will not rehash them all here. The report summarized

---

[2] The court's conclusion that Doe had a property right in continued enrollment was based on JMU's admissions. (Mem. Op. 19–23, Dkt. No. 153 (discussing significance of admissions in JMU's answer); *id.* at 2 (describing deposition testimony of JMU witnesses).)

his recommendations as to an appropriate lodestar amount as follows:

> To summarize, I find that block billing warrants a 5% reduction of Rosman's and a 20% reduction of Scott's requested hours on the merits, resulting in a reduction to 463.7 and 595.5 hours respectively. I conclude that the records from the merits phases showed evidence of duplication, unnecessary conferencing and reviews, and lost efficiency, and I therefore impose a 10% reduction to all hours worked by the ten attorneys and one paralegal during this period, with the exception of the hours spent on the fee petition and those Paxton and Tobias spent traveling to and from Harrisonburg. Turning to the travel hours, I find that Paxton and Tobias should recover for their time, but at a 50% reduction of their regular hourly rate. I also conclude that, in keeping with [Gentry Locke's] self-imposed reductions, only one attorney should be compensated for travel time to a hearing, and thus I eliminate the four hours requested by Tobias for travel to the remedies hearing on February 22, 2017. Per the Court's calculation, the number of reasonable hours spent after these deductions amounts to 2,767.7 hours, worth a total of $766,953.50. As to preparing and defending the fee petition, I conclude that the hours spent are not entirely reasonable. Therefore, I deem that a 25% reduction is warranted for all hours spent by Paxton, Tobias, Bates, Rosman, and Scott in Phase VII and a 75% reduction is warranted for the hours spent by Paxton, Tobias, Bates, and Rosman in the post-petition phase. As shown in the chart above, *see* Sec. III.A.3.g., the number of reasonable hours spent in the fee petition phase amounts to 105.9 hours, for a total of $28,738 in fees. I then combine the hours awarded for the merits phase and the fee petition phase to get the number of reasonable hours for each attorney or paralegal and then multiply this total by each professional's hourly rate. The results of this endeavor [were set forth in a table, and led to a] lodestar figure of $795,691.50.

(R. & R. 43–44.)

The report did not recommend any reduction in the lodestar amount as the result of any unsuccessful claims or Doe's degree of success. (*Id.* at 44–45.) It recommended an additional award of $53,539.75, consisting of litigation costs under § 1988 and the expenses recoverable under Doe's bill of costs, resulting in a recommendation of an overall award in the amount of $849,231.25. (*Id.* at 46.)

Lastly, the report advised the parties of their right under 28 U.S.C. § 636(b)(1)(C) to file written objections to the proposed findings and recommendations within fourteen days of service of the report. (*Id.*) It further warned that a failure to file timely written objections could waive appellate review. (*Id.*) As noted, both parties timely filed objections.[3]

## C. The Parties' Objections

Defendants object to the award recommended by the report as "manifestly unreasonable when measured by the applicable standards and considerations under the facts and circumstances of this case." (Defs.' Objs. 5–6.) They note that the case was relatively straightforward in terms of subject matter, that no trial occurred, and that "[d]ue process cases in higher education are not novel," (*id.* at 6), although they acknowledge that some of the issues raised in the case, including whether a student has a constitutionally protected property interest in public higher education, had not been addressed by the Fourth Circuit.

Defendants raise three specific objections to the report. First, they object to the recommended lodestar figure on the basis that the number of hours expended was not reasonable. Second, they claim that the report improperly shifted the burden of proof to show the reasonableness of the fees from Doe to defendants. Third, they object to the report's determination that no reduction to the lodestar figure was warranted. Instead, they claim that a number of factors should have resulted in a reduction to the lodestar amount, including the fact that Doe did not succeed in achieving all of the relief he sought.

For his part, Doe also objects to three aspects of the report, although they are more limited in scope than defendants' objections. First, he argues that the report erred in reducing by

_____

[3] Each party notes that the other objects on a ground not raised before the magistrate judge. The court nonetheless addresses those objections because it must do so in order to determine whether Doe has shown that the overall fee award is appropriate and reasonable.

75% the hours expended in preparing reply papers on the fees motion. Second, he objects to the report's recommendation that the court deny him any reimbursement for the cost of meals incurred by the attorneys while traveling. Third, he requests that reasonable prejudgment interest be included with any final award, since a long amount of time has passed since he first made his motion. He does not otherwise object to the report.

## II.  DISCUSSION

**A.  General Standards Governing the Award of Fees**

Title 42 United States Code § 1988 allows a court to award a reasonable attorney's fee in a case that is brought under 42 U.S.C. § 1983, like this one. The statute provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." The parties agree here that Doe is a prevailing party and that he is entitled to a reasonable attorney's fee. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (explaining that a party is a prevailing party if it "succeed[s] on any significant issue in litigation which achieves some of the benefit [plaintiff] sought in bringing suit").

In order to determine the proper amount of a fee award, the court first calculates the lodestar figure by multiplying the number of reasonable hours expended by a reasonable billing rate. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014). In doing so, the court may also adjust the figure based on the so-called *Johnson* factors, first set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226

n.28 (4th Cir. 1978).[4]  *McAfee*, 738 F.3d at 89–90 (explaining the interplay of the lodestar amount and the *Johnson* factors).

After determining the appropriate lodestar amount, the court should subtract hours spent in the litigation of unsuccessful claims "unrelated to successful ones."  *Id.* (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)).  Then, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the prevailing party.  *Id.*; *see also Sergeant v. Acol*, No. 15-cv-2233, 2018 WL 276431, at *8–9 (D. Md. Jan. 3, 2018) (explaining and applying standards).

Before turning to the objections, the court first sets forth the total amount of fees sought. As explained by the report, Doe employed two law firms: Gentry Locke (GL) and the Center for Individual Rights (CIR).  Combined, the two seek reimbursement for the services of ten attorneys and one paralegal, although almost 90% of the total hours requested were incurred by two GL attorneys (Paxton and Tobias) and two CIR attorneys (Rosman and Scott).

Doe's attorneys have divided their work on the case into "phases" and have supported each amount sought with invoices containing specific dated time entries.  Phases I through VI contain time entries from the time the two firms were retained up until March 31, 2017.  Phase VII contains time from April 1, 2017, through May 12, 2017, the date the fee petition was filed.

---

[4]  The twelve *Johnson* factors are:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88 n.5.

The supplemental phase contains hours for work performed after May 12, 2017, through the date of the filing of the reply, which was largely work performed as part of the reply in further support of the fee petition. As discussed in more detail herein, in addressing the reasonableness of the hours expended, the court treats Phases I through VI differently from Phase VII and the supplemental phase.

Using the documents provided by the declarations of Paxton and Rosman, Doe seeks the following amounts in fees for the various phases:

| Name | Firm | Hourly Rate | Hours in Phases I through VI[5] | Hours in Phase VII + supplemental fee petition[6] = subtotal | Total Hours | Total Fee Sought |
|---|---|---|---|---|---|---|
| W. David Paxton | GL | $375 | 862.20 | 41.8 + 20.1 = 61.9 | 924.1 | $346,537.50 |
| Cynthia D. Kinser | GL | $400 | 9.9 | | 9.9 | $3,960.00 |
| Greg J. Haley | GL | $350 | 11.1 | | 11.1 | $3,885.00 |
| Justin M. Lugar | GL | $260 | 27.1 | | 27.1 | $7,046.00 |
| Abigail E. Murchison | GL | $200 | 19.5 | | 19.5 | $3,900 |
| Scott A. Stephenson | GL | $170 | 31.5 | | 31.5 | $5,355.00 |
| Bradley C. Tobias | GL | $170 | 796.5 | 38.5 + 4.5 = 43.0 | 839.5 | $142,715.00 |
| Cindy T. Bates | GL | $125 | 225.0 | 21.9 + 4.9 = 26.8 | 251.8 | $31,475.00 |
| Michael E. Rosman | CIR | $350 | 487.6 | 20.9 + 32.1 = 53.0 | 540.6 | $189,210.00 |
| Michelle A. Scott | CIR | $300 | 743.8 | 1.1 + .6 = 1.7 | 745.5 | $223,650.00 |
| Christopher J. Hajec | CIR | $260 | 26.5 | | 26.5 | $6,890.00 |
| **Totals** | -- | -- | 3,240.7 | 186.4 | 3,427.1 | $964,623.50 |

---

[5] The information in this column is found in Paxton's First Declaration, Attachment J, Dkt. No. 180-2, at 39 of 124, and Rosman's Statement, Exhibit 4, Dkt. No. 180-6, at 19 of 102.

[6] The information in this column is found in Paxton's First Declaration, Attachment J, Dkt. No. 180-2, at 40 of 124, and Rosman's Statement, Exhibit 4, Dkt. No. 180-6, at 19 of 102, as to Phase VII; and in Paxton's Second Declaration, Attachment I, Dkt. No. 187-1, at 117 of 119, and Rosman's Reply Statement, Dkt. No. 187-2, ¶ 5 and Attachment A, Dkt. No. 187-2, at 10 of 10.

The court turns now to the parties' objections to the report.

**B. Plaintiff's Objections**

### 1. The award for hours spent on the fee petition and fee reply will be reduced to a flat rate.

As noted, the report made a 25% reduction in hours related to the preparation of the fees motion, a reduction to which Doe does not object. The report also made a 75% reduction in hours related to reviewing the opposition and preparation of the reply as to fees. In his first objection, Doe contends that the report incorrectly analyzed and calculated the time devoted to the reply papers for the fee request and that the magistrate judge erred in reducing the hours claimed for work on Doe's reply papers by 75%. He suggests that, "[i]f there is to be a reduction [for the reply papers], there is no reason why any larger reduction than the 25% recommended for those initial papers should be adopted." (Pl.'s Objs. 6–7.)

Defendants also raise an objection to the reasonableness of the hours spent on the fees petition and reply. (Defs.' Objs. 17, Dkt. No. 194.) They point out that the report recognizes that plaintiff overworked and overbilled the case with regard to the fee petition. Although the report reduced the fee to $28,738 for 105.9 hours of work, defendants ask the court to cap the fees for all work related to both the fee petition and the reply at $10,000. Because they are related, the court addresses both of these objections together.

The Fourth Circuit has repeated the Supreme Court's admonition that "petitions for attorneys' fees should not result 'in a second major litigation.'" *E. Associated Coal Corp. v. Dir., Office of Workers' Comp. Programs*, 724 F.3d 561, 577 (4th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437)). In recognition of this statement, district courts in this circuit have used various approaches to reduce excessive fees sought for work on fee petitions, including reducing work on a fee petition to a flat amount, as correctly noted in the report. (R. & R. 33–35

(collecting and discussing both Fourth Circuit and out-of-circuit authority embracing various approaches).)  As with every portion of the lodestar calculation, the court must exercise its discretion "to determine exactly what amount would compensate the party sufficiently for the time spent on the fees phase of a lawsuit," *Trimper v. City of Norfolk*, 58 F.3d 68, 77 (4th Cir. 1995), and to determine what a reasonable number would be.

Because a number of entries in Phase VII and the supplemental fee petition do not relate to the preparation of the fee petition or the reply, however, the court will separately award fees for those entries, rather than treating them as part of the fees portion of the case.[7]  This includes the following time entries:

| Name | Hours in Phase VII not related to preparation of fee petition or reply | Hours in supplemental phase not related to preparation of fee petition or reply |
|---|---|---|
| W. David Paxton | <ul><li>.40 hr on 5/1/17 receipt and review court's decision on remedies</li><li>.20 hr on 5/1/17 receipt and review court's order on remedies</li><li>.20 hr on 5/3/17 bill of costs</li><li>.40 hr on 5/5/17 bill of costs</li></ul> | <ul><li>.20 hr on 5/16/17 bill of costs</li><li>.10 hr on 5/26/17 appeal extension issue</li><li>.10 hr on 5/26/17 emails re: lack of notice of appeal</li><li>.10 hr on 6/1/17 bill of costs</li></ul> |
| Bradley C. Tobias | <ul><li>.10 hr on 4/13/17 receive correspondence from clerk and conduct search for document</li><li>1 hr on 4/25/17 receive and review mem op and final judgment order from court</li><li>.5 hr on 4/25/17 draft email to client re case result</li><li>.10 hr on 4/25/17 review email from client re case result</li><li>.30 hr on 4/26/17 email w/Davidson re outcome</li></ul> | <ul><li>.20 hr on 5/23/17 appeal convo</li><li>.20 hr on 5/23/17 appeal convo</li><li>.10 hr on 5/23/17 appeal extension</li><li>.20 hr on 5/24/17 appeal extension convos</li></ul> |

---

[7]  The magistrate judge engaged in a similar process, reallocating to the "merits" portion of the case the time spent on matters other than the fee petition in Phase VII and the supplemental phase.  Which specific entries were reallocated was not made clear in the report.  The court recognizes that its own review results in different numbers, but it provides the specific dates and hours and summarizes the text or gives a topic for each entry that it is not allocating to fees.  This should allow the parties and any reviewing court to evaluate whether treating any time entry as time unrelated to fees was proper.

To be clear, the court considered entries regarding the possible settlement of fees as part of the work on fees.  Additionally, where a time entry was a block entry, for which a portion related to the fee petition and a portion did not, the court left the entire entry in the fees phase and did not separate it.  Examples of this are Tobias's entries on 4/21/17 and 4/24/17, which reference both the attorneys' fee motion *and* the bill of costs, and Rosman's 1.5 hours on 4/25/17, which included a number of different tasks, including "extension to file motion for atty fees."  Similarly, if the court could not tell whether an entry related to the fee petition or not, it left the entry in the fees phase and did not separate it.  An example of this is the Tobias entry on 5/3/17 referencing a "phone conference with the Doe family re next steps."

| Name | Hours in Phase VII not related to preparation of fee petition or reply | Hours in supplemental phase not related to preparation of fee petition or reply |
| --- | --- | --- |
| Cindy T. Bates | <ul><li>2.40 hrs on 5/1/17 bill of costs</li><li>1.50 hrs on 5/2/17 "added travel/lodging/meals expenses while attending hearings and depos to bill of cost itemization chart"</li><li>1 hr on 5/2/17 bill of costs</li><li>.80 hr on 5/2/17 bill of costs</li><li>2 hrs on 5/2/17 entering copying expenses</li><li>.50 hr on 5/3/17 bill of costs</li><li>.50 hr on 5/3/17 bill of costs</li><li>.30 hr on 5/3/17 bill of costs</li><li>1.20 hrs on 5/3/17 continued entering expenses</li><li>3.20 hrs on 5/4/17 bill of costs</li><li>.60 hr on 5/4/17 bill of costs</li><li>1.10 hrs on 5/4/17 review of all charges to identify receipts and/or expenses not listed on client invoices</li><li>1.60 hrs on 5/5/17 bill of costs</li><li>.30 hr on 5/8/17 bill of costs</li><li>1.50 hrs on 5/8/17 bill of costs</li><li>.10 hr on 5/9/17 "per Tobias, retrieved PACER docket sheet for Facchetti v. Bridgewater re: Title IX matter"</li><li>2.40 hrs on 5/10/17 bill of costs</li></ul> | <ul><li>.90 hr on 5/16/17 bill of costs</li></ul> |
| Michelle A. Scott | <ul><li>.30 hr on 4/25/17 review order on remedies, emails re next steps</li></ul> | |

After a consideration of each of those individual entries, the court believes that they are each fully compensable.[8] The court thus treats these amounts differently from other merits hours. The court notes, however, that it has specifically examined these entries and finds that they are reasonable for the stated tasks and do not suffer from the same deficiencies as entries in the merits phase (block billing, duplication of efforts, etc.). Indeed, almost 80% of these hours were billed by Bates, a paralegal, and no attorney was duplicating her work. Additionally, most relate to the preparation of the bill of costs, which is being awarded in full. Thus, no reduction will be made to those entries.

---

[8] Through this exercise, the court is not suggesting that each and every time entry must—or should—be examined and addressed individually. Indeed, the court's approach elsewhere in this opinion, in which it makes across-the-board deductions to the merits phase hours, makes this clear. But the court had to review these entries individually to determine whether they were fees-related work and, in doing so, has reached the conclusion that they are fully compensable, without reduction.

As to the amounts incurred in preparation of the fee petition and reply, however, the court does not find that the full amounts sought are reasonable. The court acknowledges that the fee petition and response here were perhaps more complicated than a typical fee petition, both because of the volume of billing documents that had to be gathered and because Wayne G. Travell's declaration, submitted by defendants, was detailed and required some effort by Doe's attorneys to understand and respond to it. But the hours sought by Doe for this work nonetheless are unreasonable. There is simply no reason that it should have required more than 150 hours of time (by all timekeepers collectively) to prepare and defend Doe's fee petition. Furthermore, while the court agrees that the preparation of the legal memorandum and declaration in support are compensable as part of a fee award, the hours spent here are far beyond a reasonable amount of hours for those tasks. The court also finds Travell's opinion persuasive that attorneys do not typically bill paying clients for the review and revisions to pre-bills or for the preparation of bills. Clearly, some of the time billed—both with regard to the merits and fees portions of the case—was spent reviewing pre-bills (*see, e.g.*, Paxton time entries on 11/16/16, 11/17/16, 3/13/17, and 5/8/17), and Doe has not met his burden of showing that the time was reasonable.

For these reasons, and for some of the reasons also set forth in the report regarding the excessiveness of the fees, the court will award a flat rate of $15,000 for the fees portion of the case. As discussed, the court will also separately award fees for the additional entries in Phase VII and the supplemental phase that were unrelated to preparation of the fee petition and reply, including time spent only on the bill of costs. Thus, the total amount awarded for Phase VII and the supplemental phase will be $18,924.00, which consists of $15,000 for the hours related to the fee petition and reply and $3,924.00 for the time entries specified above, as shown in the following chart:

12

| Name | Firm | Hourly Rate | Hours in Phase VII + supplemental phase unrelated to preparation of fee petition or reply | Total amount of award for hours from Phase VII & supplemental unrelated to work on fee petition |
|---|---|---|---|---|
| W. David Paxton | GL | $375 | 1.2 + .5 = 1.7 | $637.50 |
| Bradley C. Tobias | GL | $170 | 2.0 + .7 = 2.7 | $459.00 |
| Cindy T. Bates | GL | $125 | 21 + .9 = 21.9 | $2737.50 |
| Michelle A. Scott | CIR | $300 | .3 | $90 |
| **Totals** | -- | -- | | $3924.00 |

2. **The cost of meals incurred while traveling was adequately supported and should be reimbursed.**

As noted, the report recommends denying $1,396.20 for costs incurred by attorneys while traveling, a recommendation to which Doe objects. The court agrees with Doe that meals are an allowable expense for attorneys while they travel, and one routinely billed to a paying client. *See, e.g.*, *In re Microstrategy, Inc. Secs. Litig.*, 172 F. Supp. 2d 778, 791 (E.D. Va. 2001) (allowing an award that includes "costs typically billed by attorneys to paying clients" and including "travel, meals, and lodging" within that category); *Hargrove v. Ryla Teleservs., Inc.*, No. 2:11-cv-344, 2013 WL 1897027, at *7 (E.D. Va. Apr. 12, 2013), *adopted by* 2013 WL 1897110 (May 3, 2013) (recommending an award of fees, including reimbursement for expenses "related to attorneys' travel, such as flights, rental cars, hotel rooms, parking, and meals"). Thus, the court will allow reimbursement for the full amount of meals sought while traveling, insofar as the amount is supported by documentation.[9]

---

[9] Doe has been unable to provide supporting documentation for a meal charge of $233.77, and so he is no longer seeking reimbursement for that expense. (Pl.'s Reply 18, Dkt. No. 187; R. & R. 6.) *See also supra* n. 1.

**3. The court will not award interest on the award.**

In his third objection, Doe requests that the court award prejudgment interest on the award. He claims that the interest is necessary to ensure that he will be made whole because of the delay in payment of the fees and expenses since they were incurred. He also points out that another alternative for ensuring that he will be made whole is to use current billing rates, instead of historical rates. And he notes that in his fees request, where there is a difference between the two, he has used the lower historical rates for the timekeepers, rather than the current, higher rates.

The court recognizes that it has the discretion to award prejudgment interest, *see Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030–31 (4th Cir. 1993), but it declines to award that interest here. While there have been some delays in the resolution of this case, many of those delays have been the result of the time spent by the court to resolve pending motions, including the motion for fees. Moreover, the case was filed in 2015, and so has been pending only for about three years. The fees have been incurred throughout the litigation and spread throughout the phases identified by Doe. So, the court does not believe that prejudgment interest is required to make plaintiff whole. The court also notes that the amount it is awarding, although less than Doe sought, is still a very substantial award of fees for a case of this nature. In short, the court does not believe that an additional amount is required to adequately compensate Doe.

**C. Defendants' Objections**

**1. The hours expended were unreasonable and will be reduced.**

In determining the lodestar amount, the court first must determine a reasonable rate for each of the timekeepers. The magistrate judge determined that the rates sought were reasonable, and he further explained that *Johnson* factors two, three, five, and nine support the rates

14

requested. (R. & R. 8.) Notably, defendants did not argue before the magistrate judge that the hourly rates were unreasonable, and they do not object to the report's conclusion that the rates charged were reasonable. (*See id.* at 6–9 (containing analysis of the issue).) Thus, the court reviews this aspect of the magistrate judge's report only for clear error. That is, a court must review de novo "those portions of [the report] or specified proposed findings or recommendations to which objection has been made." 28 U.S.C. § 636(b)(1)(C). As to the portions to which there is no objection, the court "need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Finding no clear error, the court will use the rates sought in the fee petition to determine the lodestar amount.[10]

The court thus turns to the second portion of the lodestar calculation, the reasonableness of the number of hours expended. As the magistrate judge did,[11] the court will use the phases delineated by Doe. With regard to work on Phases I through VI, which the court will refer to as the "merits" portion of the case—although that is an imprecise nomenclature—the court has considered the submissions of the parties and concludes that not all of the hours included by Doe in his lodestar request for those phases are reasonable. The court's conclusion is based on several factors.

---

[10] Although the court leaves undisturbed the report's conclusion that the rates were reasonable, it nonetheless notes that the highest rates charged in this case for the most experienced of the attorneys (which include hourly rates of $400, $375, and $350) are at or near the top end of any reasonable range of rates for a case of this nature in the Harrisonburg market.

[11] The report contained a chart broken down by timekeeper that divided the hours by "hours on merits" and "hours on petition." (R. & R. 10.) Several entries that were deemed unrelated to the preparation and defense of the fee petition were moved to the merits phase of case. (*Id.* at 10 & n.6.) As already noted, rather than follow that exact format, the court simply treats as a separate category those entries from Phase VII and the supplemental phase that were unrelated to the preparation and defense of the fee request.

The merits portion contained pre-filing work and essentially all the work performed through March 31, 2017.  The court first notes that the report recommended a number of specific reductions and Doe does not object to many of them.  Specifically, Doe does not object to the report's recommendations of (1) reducing Scott's and Rosman's time in the merits phases by 20% and 5% respectively to account for block billing; (2) reducing four hours for Tobias's travel time in attending depositions; and (3) reducing travel time by Tobias and Paxton to half of their respective hourly rates.  Finding those recommendations to be sound and well supported, and there being no objection to them, the court will include these reductions in its final award. It will reduce the total lodestar amount pursuant to those recommendations first, and then, as discussed next, will reduce the remaining fees on a percentage basis to render the fee reasonable.

As to the reasonableness of the hours expended, the court acknowledges that a substantial amount of time actually expended by various timekeepers has not been sought in the fee petition. (First Paxton Decl. ¶¶ 33–36, Dkt. No. 180-1.)  These deductions are relevant in that they show the exercise of some billing judgment.  But even the hours actually sought, which total 3,427.1 hours—expended by eight time-keepers for GL and three by CIR—are not reasonable for this particular case, which did not involve a trial and was not an overly complicated case from a factual standpoint.  Seeking compensation for the work of ten attorneys and one paralegal for a case of this nature, on its face, is excessive.  In making this determination, the court has considered the declaration of Travell, submitted by defendants in their opposition to the fee petition, although it has given that declaration only limited weight.

The court finds that many of Travell's opinions are not well supported or explained, for the same basic reasons set forth by the magistrate judge.  For example, the court does not agree that Doe's utilizing the services of two firms necessarily led to unreasonable hours expended.

Furthermore, the court agrees with the report that the discovery conducted by Doe, although extensive, was not entirely unreasonable in its scope. In particular, while the prior case brought by a JMU student may not have been related to an element of Doe's claim, it was part of Doe's theory of the case and explanation as to why JMU acted as it did toward him. To spend at least some time exploring the topic in discovery was not unreasonable.

The court agrees in general terms, however, with Travell's assessment that the hours sought by plaintiff are unreasonable because of overstaffing, duplication, and inefficiencies. As another judge of this court has explained, "[a]wards for time expended by two or more counsel are proper, provided they reflect the distinct contribution of each lawyer to the case." *Hudson v. Pittsylvania Cty.*, No. 4:11-cv-43, 2013 WL 4520023, at *6 (W.D. Va. Aug. 26, 2013). But where there is a duplication of efforts or evident overstaffing, the fees expended can be unreasonable. *See, e.g.*, *Goodwin v. Metts*, 973 F.2d 378, 384 (4th Cir. 1992) (holding that the case was overstaffed where four attorneys billed for a task that could have been accomplished by two); *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) ("[O]verstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.").

The court substantially agrees with the analysis of the magistrate judge explaining that some duplication of work occurred in this case. (R. & R. 27–28.) As the report explained, there was some duplicated effort because of the extensive review of other attorneys' work, occasional billing for all four attorneys to participate in conference calls, and frequent communication between the attorneys. (*Id.* at 27.) While having four or more attorneys regularly review and edit written submissions may improve the end product, the court does not find that to be a reasonable use of all four attorneys' time. This case was staffed primarily with two attorneys

that would typically be described as senior partners (Rosman and Paxton), one mid-level partner (Scott), and one associate (Tobias). The court agrees with defendants that a sophisticated client paying monthly legal bills would almost certainly balk at some of the duplication of efforts that occurred here. The court also agrees that, given the fact that the attorneys such as Paxton and the two CIR attorneys are experienced counsel and experienced in civil rights litigation, some of the hours they expended on tasks should not have taken as many hours as they did.

In short, while the court does not believe it is unreasonable for a plaintiff to use the services of two firms, there should be some appreciable benefit in terms of efficiencies as a result of expertise. Here, rather than efficiencies, the court sees unreasonable numbers of hours spent on tasks. For example, based on its review of the lodestar hours requested here, the court believes some of the hours billed for research and writing of motions were not reasonably expended. The court also finds that Tobias's presence at depositions he was not taking was not necessary, despite Paxton's explanation that he needed Tobias to assist with documents during the depositions. (First Paxton Decl. ¶ 35(h); Second Paxton Decl. ¶ 30(e) & n.1.) While the court appreciates that Doe has not requested reimbursement for Tobias's travel time and that Paxton has written off his own time at the depositions that Tobias took, the court does not believe that, in a case of this nature and with the fact witnesses involved, the attendance of two attorneys at depositions was necessary. Instead, a single attorney—especially one with Paxton's level of experience—should have been able to handle the depositions of various fact witnesses without assistance during the deposition itself, even if there were a substantial number of documents.

Additionally, the amount of hours spent on summary judgment briefing by all of the attorneys is further evidence that this case was not handled efficiently by plaintiff's attorneys. Notably, on Phase IV of the case, which consisted almost entirely of the briefing on summary judgment and preparing for and attending the summary judgment hearing, GL and CIR combined to spend approximately 560 hours—the equivalent of fourteen forty-hour weeks. (Dkt. No. 180-2 at 36; Dkt. No. 180-6 at 19.)  This amount of hours is not reasonable for that task, particularly in light of the fact that some of the same legal issues were already addressed at the motion to dismiss stage and the factual issues were not particularly complicated.

Based on the conclusion that there was duplication of effort, the report recommended an across-the-board reduction of 10% to all hours worked by each timekeeper during the merits portion of the case.  The court's assessment of the duplication, however, is that it warrants more than a 10% reduction of all hours worked by each attorney and paralegal during the merits portion of the litigation.

The court also agrees with defendants, to some degree, that the number of hours was unreasonable on a number of tasks, given that plaintiff's primary counsel were very experienced attorneys.  Such experienced attorneys should have been familiar with a number of the issues raised in this case.  Although some of the issues were novel and could have required substantial research, others were commonplace in due process cases generally.  But as already noted, there were a relatively high number of hours devoted to legal research.  That much research, particularly expended in an area of the law that is mostly straightforward and where Doe's attorneys are experienced in civil rights litigation, is not reasonable.

Finally, in considering a reasonable lodestar amount, the court believes that *Johnson* factor twelve, which looks at awards in other similar cases, supports a reduction in overall hours

here. In particular, the case of *Doe v. Rector & Visitors of George Mason University*, 132 F. Supp. 3d 712 (E.D. Va. 2015) (*Doe v. Rector*), was substantially similar to this case, although not identical. The opinion on the fee award in that case is *Doe v. Rector & Visitors of George Mason University*, No. 1:15-cv-209, 2016 WL 3480947 (E.D. Va. June 21, 2016), and there, the court approved a fee award of approximately $280,000. The fact patterns in that case and this one were extremely similar, and the cases followed strikingly similar procedural paths, involved many similar motions (motion to dismiss, motion to proceed by pseudonym, motion for summary judgment), and were decided on summary judgment with the proper remedy addressed separately. The court acknowledges that the two cases are not exactly alike. For example, more discovery was conducted here, plaintiff's counsel in this case attended FERPA hearings, and there were two motions to dismiss in this case instead of one. The *Doe v. Rector* case also appeared to have fewer factual disputes.

So, the court is not basing its reduction solely (or even primarily) on the award in *Doe v. Rector*, but it is a factor that supports the court's conclusion that the amounts sought here are unreasonable, particularly when one looks at the disparity. The amount recommended by the report here is more than three times the amount awarded in *Doe v. Rector*, and the total amount sought by Doe here is almost four times the amount awarded, and that is *after* his attorneys deducted for hours based on their exercise of billing judgment.

In addition to the *Doe v. Rector* case, the court is also familiar with more typical types of fee awards in civil rights cases involving both due process claims and other type of claims, based on its own experience in defending such cases while in private practice—which ended only shortly before this case began. *Cf. Project Vote/Voting for Am., Inc.*, 887 F. Supp. 2d 704, 713 n.7 (E.D. Va. 2012) (relying on court's "own over thirty (30) years of practice and judicial

experience" to determine reasonableness of rates). The amount sought here—more than $1 million—is unreasonable on its face, for a case in this court that involved a single claim and did not go to trial.

The court has already discussed some of the *Johnson* factors above, including time and labor expended (factor one), the novelty and difficulty of the questions raised (factor two), and fee awards in similar cases (factor twelve). With regard to factor eight, the amount in controversy and results obtained, it is true that Doe did not seek or obtain a monetary recovery. But that is often the case in a civil rights case, and Doe nonetheless obtained much of the relief he sought. So, with regard to calculating the lodestar, the court does not believe factor eight should result in an adjustment one way or the other.

The court also agrees with much of the report's analysis regarding the other *Johnson* factors. For example, GL experienced opportunity costs in pressing this case (*Johnson* factor four), particularly in the loss of another case offering an opportunity to defend a Title IX case because of a perceived conflict of interest. Counsel also believed it would be a short-lived representation, and the case would progress quickly and with minimal risks, and so factor six, the attorney's expectations at the outset of the litigation, support a higher award here, because counsel was required to devote years and substantial time to the litigation and had not anticipated doing so.

*Johnson* factor ten, the undesirability of the case within the legal community in which the suit arose, does not greatly favor one party or the other. Although Doe claims that there are few attorneys in Harrisonburg willing to take on JMU, he never attempted to utilize a Harrisonburg attorney. Even if undesirable among the local bar, however, Doe has not shown that this type of case is "undesirable." In fact, this court's own docket has had at least three similar cases filed in

the past few years.  So, there are certainly attorneys willing to take these cases.

*Johnson* factor three, the skill required to properly perform the legal services rendered, is fairly neutral or perhaps favors defendants.  Again, while novel issues were presented, this was not a difficult patent case, complex commercial case, or a case involving the need to obtain expert testimony on scientific or medical issues.  That balances, however, against *Johnson* factor nine, the experience, reputation, and ability of Doe's attorneys, which the court finds favors Doe.  For example, Doe's attorneys (particularly Paxton, Rosman, and Scott) were experienced counsel in this type of case.

Several of the other *Johnson* factors do not play any significant role in this case.  These include the nature and length of the professional relationship between attorney and client (factor eleven) and the time limitations imposed by the client or circumstances (factor seven).

To account for all of these factors discussed above: the duplication, the relative expertise of plaintiff's attorneys which should have resulted in fewer hours expended, not more, and to take into consideration the *Johnson* factors, the court will reduce the overall hours in the merits phases by 35%.  Thus, for Phases I through VI, the court will first deduct the hours for block billing and make the unobjected-to changes and reductions recommended by the report with regard to travel time.  Then, it will deduct an additional 35% from that figure.  These calculations result in an initial lodestar amount of $555,941.20 for Phases I through VI.  This lodestar amount will be further adjusted as discussed in the context of defendants' third objection.  The court's calculations are reflected in the following table:

| Name | Firm | Hourly Rate | Hours in Phases I through VI[12] | Reduced Hours (after block billing adjustment or time omitted by report) | Hours Allowed After 35% Reduction | Total Fee Awarded for Phases I through VI (Hours after reduction x hourly rate) |
|---|---|---|---|---|---|---|
| Paxton | GL | $375 | 818.6 | | 532.09 | $199,533.75 |
| Paxton Travel | GL | $187.50 | 43.6 | | 43.6 (No reduction) | $8,175 |
| Kinser | GL | $400 | 9.9 | | 6.44 | $2,576 |
| Haley | GL | $350 | 11.1 | | 7.22 | $2,527 |
| Lugar | GL | $260 | 27.1 | | 17.62 | $4,581.20 |
| Murchison | GL | $200 | 19.5 | | 12.68 | $2,536 |
| Stephenson | GL | $170 | 31.5 | | 20.48 | $3,481.60 |
| Tobias | GL | $170 | 796.5 | | 517.73 | $88,014.10 |
| Tobias Travel | | $85 | 8 | 4 | 4 (no reduction) | $340 |
| Bates | GL | $125 | 225.0 | | 146.25 | $18,281.25 |
| Rosman | CIR | $350 | 487.6 | 463.22 5% reduction | 301.09 | $105,381.50 |
| Scott | CIR | $300 | 743.8 | 595.04 20% reduction | 386.78 | $116,034 |
| Hajec | CIR | $260 | 26.5 | | 17.23 | $4,479.80 |
| **Totals** | -- | -- | 3240.7 | | 2013.21 | $555,941.20 |

## 2. The burden of proof remains with Doe to show that the fees requested are reasonable.

The report correctly noted that Doe bears the burden of showing the reasonableness of the fee sought. (R. & R. 6.) Defendants claim, though, that the report's language elsewhere, and its overall approach, actually placed the burden on defendants to disprove reasonableness. Although the report was structured as addressing defendants' specific arguments, the magistrate explained that he focused on defendants' arguments because examination of them "inherently

---

[12] The information in this column is found in Paxton's First Declaration, Attachment J, Dkt. No. 180-2, at 39 of 124, and Rosman's Statement, Exhibit 4, Dkt. No. 180-6, at 19 of 102.

requires an assessment of whether Doe met his burden in proving reasonableness." (*Id.*)  Thus, although the language used in the report may at times have been imprecise, the court believes that the report was faithful to the proper placement of the burden on plaintiff.  Accordingly, the court overrules this objection.  In any event, given the court's consideration de novo of the overall reasonableness of the fee, this objection is effectively moot.

### 3. A further slight reduction in the lodestar amount is warranted to account for Doe's degree of success.

The court also agrees with defendants that a further reduction is warranted to account for Doe's degree of success, the third step in determining the total fee award.[13]  Doe was successful in establishing defendants' liability, and he also obtained much of the equitable relief he sought.  Some of that relief was admittedly significant, including the vacating of the finding of responsibility for sexual misconduct and the sanctions imposed, as well as the vacating of the no-trespass order against Doe.  The court also required an expungement of records relating to the charge against him.  The court further required that he be permitted to withdraw from JMU, and, if he did so, JMU could not process the charge against him further.

But one of the main disputes at the remedy phase was whether JMU could hold another appeal hearing with different procedures if Doe did not withdraw (or if he re-enrolled).  Indeed, in the court's opinion on remedies, it noted that it was "arguably the most important" area of disagreement between the parties (April 25, 2017 Mem. Op. 4, Dkt. No. 173), and it was certainly an issue that garnered the attention of the parties and the court in briefing and during argument.  Doe argued vigorously that the court should prohibit any such appeal process, even if Doe chose not to withdraw from, or chose to re-enroll at, JMU.  That portion of the remedy sought was denied by the court.  (*Id.* at 4–8.)  If the court had ruled in Doe's favor on that issue,

---

[13]  Neither the report nor any party has suggested that a change be made to the lodestar amount at the second step, *i.e.*, to account for "unsuccessful" claims unrelated to successful ones.  (R. & R. 44–45.)

he could have returned to JMU without the concern of having to face an appeal on these same allegations. Because the court denied that relief, he was unlikely to return to JMU (and in fact has not), although his counsel expressed that he wanted to attend JMU. Accordingly, the court cannot agree with the report that failure to win on this issue was a "minor exception" to obtaining full relief, (R. & R. 45 n. 15).

Based on this failure to obtain full relief, the court finds that an overall reduction in the amount of fees is warranted. But here, because the plaintiff was largely successful, the reduction should be modest. Thus, the court will reduce the overall lodestar fee as already modified by the court, but only as to the merits portion of the case, by an additional 10% to account for Doe's failure to obtain the full relief he sought.

Thus, the lodestar amount as to the merits phases will be adjusted to 90% of $555,941.20, or an amount of $500,347.08. Given the court's award of a flat fee of $15,000 for the work on the fee petition and reply, the court will not reduce that award further. It will also award, as already noted, an additional $3,924.00 for non-fee related work in Phase VII and the supplemental fee phase that it concludes is fully compensable and not subject to any reduction. Adding together these three amounts, the court will award a total amount in fees of $519,271.08.

**4. Defendants' request to stay payment of any award pending appeal is premature.**

As the report notes, defendants requested in their briefing that the payment of the award not be required until exhaustion of any appeal of the award of fees and expenses. (R. & R. 5.) They do not raise this issue in their objections. As the report correctly reasoned, however, if an appeal is noted by either side, the proper method to postpone payment of the fee award would be to post a supersedeas bond pursuant to Rule 62(d). (*Id.* at 45–46.) At this point, the court does

not even know if there will be an appeal, although defendants have indicated that there likely will be. (Defs.' Opp'n to Petition for Fees 15, Dkt. No. 183.) Thus, this request is premature.

## III. CONCLUSION

Based on the above rulings, the court will adopt in part and deny in part the report and recommendation. The court will award a total amount of $574,180.03 to Doe, without any prejudgment interest, for fees, expenses, and costs, itemized as follows:

Fees: $519,271.08

Expenses: $41,408.15

Costs: $13,500.80

A separate order will issue.

Entered: September 27, 2018.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge